UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| WAYSIDE CHURCH, ET AL., )<br>         Plaintiffs, )<br> )<br>-v- )<br> )<br>COUNTY OF VAN BUREN & )<br>KAREN MAKAY, )<br>         Defendants. )<br>_____) | No. 1:14-cv-1274<br><br>HONORABLE PAUL L. MALONEY |

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION TO DISMISS UNDER RULE 12(b)(6)**

This matter is before the Court on Defendants' Motion to Dismiss (ECF No. 7) and Plaintiffs' Motion for Summary Judgment. (ECF No. 15.) Both parties filed responses and replies to the motions. (ECF Nos. 10, 13, 24, 26.) The Court also granted Defendants leave to file a supplemental brief with respect to the Motion to Dismiss (ECF No. 34), and Plaintiffs filed a surreply. (ECF No. 35). The Court held oral argument on both motions on November 5, 2015 (ECF No. 37); for the reasons stated on the record and below, Defendants' Motion to Dismiss is **DENIED** with respect to Rule 12(b)(1), but **GRANTED** with respect to Rule 12(b)(6).

**I.  BACKGROUND**

In 1999, the State of Michigan enacted Public Act 123 (the General Property Tax Act, or GPTA), becoming a tax-deed state. The procedural mechanisms in Michigan are very complex; however, the statute essentially provides that real property itself is subject to forfeiture and foreclosure for non-payment of the tax on that property—after adequate notice and a right of redemption lapses. Thereafter, a state circuit court foreclosure judgment enters, and the title to the real property vests with the County. From that point, the County can choose to keep or sell the property, subject to governmental rights of first refusal.

1

In this case, three Plaintiffs allege that the County, pursuant to the GPTA, sold their tax-forfeited properties well in excess of the respective "minimum bids," which represent all taxes, interest, and fees owed. In the case of Wayside Church, the parcel's "minimum bid" was set at $16,750, but Van Buren County sold the property for $206,000; in the case of Myron W. Stahl, the parcel's bid was set at $25,000, but it sold for $68,750; in the case of Henderson Hodges, the parcel's bid was set at $5,900, but it sold for $47,750. (ECF No. 1 at PageID.6–8.)

Plaintiffs in this action specifically disclaim any due process arguments regarding the statute itself. Instead, they allege that Michigan's application of the GPTA to the Plaintiffs is unconstitutional:

> Plaintiffs respectfully request this Honorable Court to issue its declaratory judgment declaring and adjudging that the Defendants . . . retention, use and takings of the surplus proceeds constitute a taking of private property for public use without just compensation in violation of the Fifth Amendment to the United States Constitution.

(ECF No. 1 at PageID.16.) Plaintiffs further allege violations under 28 U.S.C. § 1983 and seek class action status on the same grounds. Finally, Plaintiffs also allege a pendant state law claim that the State Circuit Court did not enter judgment in accordance with the statute, and thus, the redemption period should have been tolled.

Defendants argue first, that the Court lacks subject-matter jurisdiction, and second, that Plaintiffs have failed to establish a Takings Clause claim because Michigan does not recognize a delinquent taxpayer's property interest in surplus equity at the time of the tax sale.

## II.    LEGAL FRAMEWORK

A complaint must contain a short and plain statement of the claim showing how the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The complaint need not contain detailed

factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Twombly*, 550 U.S. at 555 (2007).

A defendant bringing a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) "can either attack the claim of jurisdiction on its face, [as in this case,] in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which the . . . court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004).

A defendant bringing a motion to dismiss for failure to state a claim under Rule 12(b)(6) tests whether a cognizable claim has been pled in the complaint. *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). To survive Rule 12(b)(6) motion, the plaintiff must provide sufficient factual allegations that, if accepted as true, are sufficient to raise a right to relief above the speculative level, *Bell Atl.*, 550 U.S. at 555, and the "claim to relief must be plausible on its face" *Id.* at 570. "A claim is plausible on its face if the 'plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). When considering a motion to dismiss, a court must accept as true all factual allegations, but need not accept any legal conclusions. *Ctr. for Bio-Ethical Reform*, 648 F.3d at 369.

The Court must first consider Defendants' Motion to Dismiss under Rule 12(b)(1) to decide whether it has jurisdiction before proceeding under Rule 12(b)(6). *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) ("[W]e are bound to consider

the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction.").

## III. ANALYSIS

### A. Rule 12(b)(1): Ripeness & <u>Williamson County</u>

The Court must first determine whether it has jurisdiction over this matter. First, Defendants argue that Plaintiffs' claims do not survive the ripeness test for a takings claim against a state governmental unit.

The Supreme Court has held that before a Takings Clause claim is ripe for adjudication in federal court, the plaintiff must show that (1) "the government entity charged with implementing the regulations has reached a final decision"; and (2) the plaintiff sought "compensation through the procedures the State has provided," which must be "reasonable, certain and adequate . . . at the time of the taking." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186, 194 (1985).[1]

The first prong is indisputably satisfied; the decision to take the deed pursuant to the GPTA, and keep all proceeds of a subsequent sale, is a final one. Thus, the only dispute is whether the Michigan actually provides "reasonable, certain and adequate [procedures] . . . at the time of the taking" to seek compensation. *See id.*

A court in the Eastern District of Michigan recently addressed this very issue, and held that "before a taking claim may be considered ripe for adjudication in [federal] [c]ourt, Plaintiffs must first bring an inverse condemnation claim in [Michigan] state court, seeking to recover their forfeited surplus equity." *Rafaeli, LLC v. Wayne County*, No. 14-13958, 2015 WL 3522546, at *9 (E.D. Mich. June 4, 2015). The Court respectfully disagrees with that conclusion.

---

[1] The claims in *Williamson County* sounded in eminent domain, which is an important distinction that the Court will address later.

4

The Court does not find that Michigan provides an avenue to bring an inverse condemnation claim in the context of the GPTA or Michigan's Constitution. First, the statute does not provide a remedy at all for any "surplus equity"—to the extent that can be established as a property interest; second, the state constitution does not provide "reasonable, certain and adequate [procedures] . . . at the time of the taking" to seek compensation for the "surplus equity" that is retained by the County under the GPTA and state constitutional power to tax.

As Plaintiffs note, the only cause of action permitted by the GPTA is one for lack of notice (due process); specifically, the law allows a cause of action against a county treasurer for monetary damages *only* when a property owner "claims that he or she did not receive any notice required under this act." Mich. Comp. Laws 211.781. The statute grants the Michigan Court of Claims exclusive and original jurisdiction over such a claim. Mich. Comp. Laws 211. 781(2); *see* Mich. Comp. Laws 600.6419. However, a different statutory section provides that "[n]o claimant may be permitted to file a claim in [the Court of Claims] against the state nor any department, commission, board, institution, arm or agency thereof who has an adequate remedy upon his claim in the federal courts." Mich. Comp. Laws 600.6440. Thus, Plaintiff aptly notes:

> This procedural paradox must perplex, confuse and arrest the efforts of any lawyer contemplating a substantively non-existent action for inverse condemnation seeking just compensation for the taking from the people of surplus proceeds resulting from a tax foreclosure sale auction in a state forum. In the first instance, the advocate may explore attempting to eschew the Tax Collection Statute's grant of "original and exclusive jurisdiction" to the Court of Claims in order to commence the action in the state Circuit Court rather than resorting to the "federal courts." However, such an attempt becomes immediately frozen by common law which confirms that, "An inverse-condemnation action is a claim ex contractu over which the Court of Claims has exclusive jurisdiction." *Gleason v. Michigan Department of Transportation*, 256 Mich. App 1, 2; 662 N.W.2d 822, 823 (2003).

5

> In fact, the lawyer has no reasonable, certain and adequate choice. . . . The lawyer may commence the substantively non-existent state takings claim in the state Court of Claims and risk being told that it has no subject matter jurisdiction because there exists an adequate Fifth Amendment takings claim in the federal courts; or commence the 5th Amendment takings claim in federal court and risk being told it has no subject matter jurisdiction for the contrary reason."[2]

(ECF No. 11 at PageID.74–75.)

Further, *Williamson County* simply affirms the notion that "the State's action is not 'complete' in the sense of causing a constitutional injury 'unless or until the State fails to provide an adequate postdeprivation remedy for the property loss.'" *Williamson Cty.*, 473 U.S. at 195 (quoting *Hudson v. Palmer*, 468 U.S. 517, 532, n.12 (1984)). Here, there is no debate that (1) the statute does not provide a remedy to seek surplus equity, (2) the Michigan Court of Claims has exclusive and original jurisdiction over claims under the GPTA against the County Treasurer, and (3) Michigan absolutely divests jurisdiction from the Michigan Court of Claims where a plaintiff "has an adequate remedy upon his claim in the federal courts."

Defendant also argues that the Michigan Constitution creates a cause of action for "inverse condemnation," and thus, under *Williamson*, the present case is not ripe for adjudication in federal court. The available case law suggests that an "inverse condemnation" cause of action, which is the vehicle for a constitutional claim, is only available for property taken through eminent domain or a regulatory taking. *See, e.g, Merkur Steel Supply v. Detroit*, 680 N.W.2d 485 (2004).

A closer analysis of *Merkur* confirms that an "inverse condemnation" cause of action falls wholly within the context of eminent domain—and not taxation:

---

[2] It is true that Plaintiffs could have brought a facial constitutional challenge to the statute itself in state circuit court, but, again, Michigan law does not provide any avenue to seek a refund of equity that Plaintiffs assert that they are entitled to. Thus, the only plausible relief that Plaintiffs could seek in state circuit court is a declaratory judgment that the statute itself violated the United States Constitution.

6

> Eminent domain is an inherent right of a state to condemn private property for public use. . . . When exercising its power of eminent domain, the state, or those to whom the power has been lawfully delegated, must pay the owner just compensation . . . An inverse condemnation suit is one instituted by a private property owner whose property, while not formally taken for public use, has been damaged by a public improvement undertaking or other public activity . . . Inverse condemnation is "a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant, even though no formal exercise of the power of eminent domain has been attempted by the taking agency.

*Merkur*, 680 N.W.2d at 494–95. The Court in *Merkur* goes onto discuss the Uniform Condemnation Procedures Act (UCPA) and regulatory takings. The parties do not cite to—and the Court is unable to locate—a single case in Michigan since the GPTA was enacted where a Plaintiff successfully stated an "inverse condemnation" cause of action for "surplus equity" after a tax sale.[3] Indeed, because the GPTA foreclosed the ability to seek the surplus equity, a cause of action would be a contrarian roundabout to the duly-enacted GPTA. Simply put, Michigan does not provide for a remedy to seek any "surplus equity" after a tax sale under the GPTA itself or under a constitutional "inverse condemnation" cause of action.[4]

Defendants also cite to *Macene v. MJW, Inc.*, 951 F.2d 700, 704 (6th Cir. 1991), in which the Sixth Circuit held a Takings Clause claim against the State of Michigan not ripe because the Plaintiff did "not attempt[] to use Michigan's inverse condemnation procedure or establish the inadequacy of the procedure." However, *Macene* dealt with a land licensure issue and an alleged due process violation. Further, the statute at issue here, GPTA, did not come into effect until

---

[3] The Court in *Rafaeli* cites *Merkur* for the assertion that "Michigan courts clearly recognize the right to bring an inverse condemnation claim." *Rafaeli,* 2015 WL 3522546 at *9. At oral argument, Plaintiffs provided the Court with a copy of the Summary Disposition Opinion and Order in the subsequent action filed in state court, *Rafaeli, LLC et al. v. Oakland County et al.*, No. 15-147429-CZ (Mich. Cir. Ct. Oct. 8, 2015) [hereinafter *Rafaeli II*]. After a review of that decision, it is clear to the Court that the Michigan Circuit Court found no cause of action for "inverse condemnation" in this context.

[4] As Plaintiffs note, where Michigan takes property through its constitutional power to tax, including any subsequent surplus, it is not required to pay just compensation. *See* Mich. Const. Art. X § 2 ("Eminent domain; compensation").

1999, and fundamentally altered Michigan's process for collecting delinquent taxes. Thus, *Macene* is not on point for this case, and the Court finds that the State of Michigan, at the very least, does not provide "reasonable, certain and adequate [procedures] . . . at the time of the taking" to seek compensation." *Williamson Cty.*, 473 U.S. at 186, 194. Thus, the principles embodied in *Williamson County* provide no bar to Plaintiffs' claims in federal court.

### B. Rule 12(b)(1): Tax Injunction Act & Principles of Comity

In a supplemental brief, Defendants also argue that the Court does not possess jurisdiction because of the Tax Injunction Act and principles of comity. The Court in *Rafaeli* partially relied upon these grounds in dismissing that action.

The plain text of the statute itself states that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341.

The Sixth Circuit recently held that the Tax Injunction Act barred federal court jurisdiction over an Equal Protection claim regarding state tax assessments because Tennessee "provides a plan, speedy and efficient remedy . . . [s]ince state courts [can] address [Plaintiff's] constitutional challenges regardless of whether the claims may be characterized as 'facial' or 'as applied' constitutional challenges." *Colonial Pipeline Co. v. Morgan*, 474 F.3d 211, 218 (6th Cir. 2007). The Seventh Circuit also held that a similar Equal Protection claim was barred by the Tax Injunction Act where plaintiff sought a "refund [of] the price he paid for [tax liens]." *Wright v. Pappas*, 256 F.3d 635, 637 (7th Cir. 2001). The Circuit held that "[a] lien sale is a mode of tax collection; and so an action to enjoin it, or declare it illegal, or rescind it, or perhaps even just obtain damages on the ground of its illegality would be barred."[5] *Id.*

---

[5] A similar taking without just compensation claim was allowed to proceed in Federal District Court. In *Coleman through Bunn v. D.C.*, the Court found that because the plaintiff only sought the surplus equity that remained after

8

Similarly, comity provides an independent bar to jurisdiction in most cases challenging state tax systems. In *Fair Assessment in Real Estate Ass'n v. McNary*, the Supreme Court held:

> [O]ur comity cases have thus far barred federal courts from granting injunctive and declaratory relief in state tax cases . . . [W]e decide today that the principle of comity bars federal courts from granting damages relief in such cases. . . .
>
> [W]e hold that taxpayers are barred by the principle of comity from asserting § 1983 actions against the validity of state tax systems in federal courts.

454 U.S. 100, 107, 116 (1981); *see Rafaeli*, 2015 WL 3522546, at *6. Thus, "[t]he federal common-law principle of comity embodied in *Fair Assessment* 'reflects some of the same concerns that led Congress to enact the Tax Injunction Act," but "stands on its own bottom and extends to cases seeking monetary damages as well as injunctive or other equitable relief." *Rafaeli*, 2015 WL 3522546, at *6 (citing *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 541 (6th Cir. 2004).

However, the Supreme Court did clarify the reach of *McNary* in *Hibbs v. Winn*, 542 U.S. 88 (2004) by noting that *McNary* did "not hold that state tax administration matters must be kept entirely free from lower federal-court 'interference.'" *Hibbs*, 542 U.S. at 90. Indeed, if states do not provide an adequate remedy, there is no reason to bar federal courts from hearing claims pursuant to federal question jurisdiction under the United States Constitution.[6]

The Court in *Fair Assessment* held that "taxpayers must seek protection of their federal rights by state remedies, provided of course that those remedies are plain, adequate, and

---

unpaid taxes, fees, and interest were satisfied, no "tax" would be taken from the District's coffers, and thus, the Tax Injunction Act did not bar the claim. 70 F.Supp.3d 58 (D.D.C. 2014); s*ee Rafaeli*, 2015 WL 3522546, at *17. The Court in *Rafaeli* distinguished the legal and factual issues in the District of Columbia from those in Michigan, but this Court is not persuaded by that analysis. *Id.*

[6] Nonetheless, the Court also noted that *McNary*—and other cases—"involved plaintiffs who mounted federal litigation to avoid paying state taxes (or to gain a refund of such taxes). Federal-court relief, therefore, would have operated to reduce the flow of state-tax revenue." *Id.* at 91. That is arguably true here, there is little question that Plaintiffs seek to upend Michigan's procedure to collect property taxes owed. If the Court were to rule that the statute violated the Fifth Amendment, it may immediately neuter the State's ability to collect tax revenue owed and deter delinquent taxpayers. The fatal flaw to Plaintiffs' case, however, is their asserted "property interest."

complete." *Fair Assessment*, 454 U.S. at 116. Likewise, the Tax Injunction Act only "withdraws from the federal courts jurisdiction to 'enjoin, suspend or restrain the assessment, levy or collection' of state taxes (including local taxes . . .)" [if] *the taxpayer lacks an adequate state remedy*." *Id.* (internal citations omitted).

However, in this case, Michigan law grants the Court of Claims "exclusive and original jurisdiction" over claims under the GPTA—but then bars jurisdiction when plaintiffs have a remedial avenue in federal courts. Since Plaintiffs here allege a taking without just compensation under the U.S. Constitution, the Court clearly enjoys federal question jurisdiction—so long as that jurisdiction is not divested under the Tax Injunction Act and principles of comity, or Takings Clause ripeness doctrine. All of those sources of law generally stand for the proposition that federal courts enjoy jurisdiction over federal constitutional claims *unless the state provides an adequate and certain or complete remedy*.

Since the Court finds that Plaintiffs do not have a viable alternative state remedy for the alleged constitutional violation of taking surplus equity without just compensation, the Court finds that it enjoys jurisdiction over this matter. Accordingly, Defendants' Motion to Dismiss under Rule 12(b)(1) is **DENIED**.

### C. 12(b)(6): Failure to State a Takings Clause Claim

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth . . . provides that private property shall not 'be taken for public use, without just compensation.' As its text makes plain, the Takings Clause 'does not prohibit the taking of private property, but instead places a condition on the exercise of that power.'" *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005).

The vast majority of Takings Clause claims arise through the eminent domain or regulatory takings contexts.[7] The Supreme Court has "long recognized that 'the power of taxation should not be confused with the power of eminent domain.'" *Koontz v. St. Johns River Water Mgmt. Dist.*, 133 S. Ct. 2586, 2602 (2013) (citing *Houck v. Little River Drainage Dist.*, 239 U.S. 254, 264 (1915)). And the Supreme Court has long given deference to the tax powers of Congress and the States alike; time after time, the Court has deflected challenges to the "breadth of [the] power to tax." *See, e.g., Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566 (2012).

With respect to Congress, the Supreme Court has stated that the due process clause of the Fifth Amendment "is not a limitation upon the taxing power conferred upon Congress by the Constitution; in other words, that the Constitution does not conflict with itself by conferring, upon the one hand, a taxing power, and taking the same power away, on the other, by the limitations of the due process clause." *Brushaber v. Union Pacific R. Co.*, 240 U.S. 1, 24–25 (1916).

Nonetheless, "on more than one occasion the Supreme Court has adverted to the possibility that a law, although denominated a taxing statute, might not be a taxing statute at all, but one which on its face has crossed the boundary from the classification 'tax' to the classification 'taking,' so as to become subject to the limitations of the Fifth Amendment to the Constitution." *Acker v. C.I.R.*, 258 F.2d 568, 574 (6th Cir. 1958); *see Quarty v. United States*,

---

[7] There is intense scholarly debate regarding the power to tax and the Takings Clause. Nonetheless, in the Court's view, the power to tax should be given deference:

> The constitutional doctrine defining the state's power to tax is so entrenched that it is nearly axiomatic. In contrast, Takings Clause jurisprudence is characterized by nothing if not the confusion and intense disagreement it generates. Between the alternatives of using a novel and contentious takings theory to shatter the broad consensus surrounding the constitutional jurisprudence of taxation, on the one hand, and finding a way to accommodate a disjointed and weakly theorized takings law into the deeply rooted status quo surrounding taxation, on the other, the latter, at least as a practical matter, is clearly the preferable route.

Eduardo Moisés Peñalver, *Regulatory Taxings*, 104 COLUM. L. REV. 2182, 2186 (2004).

170 F.3d 961, 969 (9th Cir. 1999) (citing *Brushaber*, 240 U.S. at 24, 36) ("Levying of taxes does not constitute a Fifth Amendment taking unless the taxation is so 'arbitrary as to constrain to the conclusion that it was not the exertion of taxation, but a confiscation of property.'")

In the context of land-use charges, the Supreme Court recently noted, "We need not decide at precisely what point a land-use permitting charge denominated by the government as a 'tax' becomes 'so arbitrary . . . that it was not the exertion of taxation but a confiscation of property.'" *Koontz*, 133 S. Ct. at 2602 (citing *Brushaber*, 240 U.S. at 24, 36).

Thus, to the extent that the "surplus equity" was a property interest taken in satisfaction of taxes, Plaintiffs' "claim to relief [could] be plausible on its face." *Bell Atl.*, 550 U.S. at 570.[8]

However, it is axiomatic that a takings claim identifies the property interest at issue. "Property interests . . . are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to the benefits." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

The Sixth Circuit recently "recognized the well-established proposition that a government's act of taxation is not a 'taking' of private property under the Constitution" in rejecting an "argument that [a] tax credit to which the [Plaintiffs] claim entitlement represents an intangible property right." *Laborde v. City of Gahanna*, 561 Fed. App'x 476, 479 (6th Cir. 2014). Similar to that case, Plaintiffs here argue that they enjoy a property right to the "surplus equity"—after the property forfeits to, and the deed divests with, the County for failure to pay taxes. Plaintiffs allege the following in their complaint:

---

[8] That would still be a close call because, to the Court's awareness, no plaintiff has successfully challenged a state tax regime on the basis that a state's mechanism for the collection of taxes was actually a confiscation of property under the United States Constitution.

> In consequence of the non-payment of the 2011 real property taxes due upon the Church Parcel on April 25, 2014, pursuant to Foreclosure Judgment of the Van Buren County Circuit Court then entered in its File . . . under the aforesaid Tax Collection Statute, Van Buren County Defendants were, by its putative terms, vested absolutely with good and marketable title to the Church Parcel and the Church was divested of the same by Defendants Van Buren County.

(ECF No. 1 at PageID.5.) Thereafter, as an example, Plaintiffs allege: "The surplus proceeds arising from the foreclosure sale of the Church Parcel, to wit, $189,250.00 are personalty, constitutes the Church's equity in the Church Parcel." (*Id.*) However, this is a plain misstatement of Michigan law. Both the statute itself and the case law assert that to the extent "surplus proceeds arising from the foreclosure sale are personalty," that surplus reflects *the County's equity in the property*.[9] Thus, it is at this juncture that Plaintiffs' case fails.

Michigan law does not provide a *delinquent taxpayer* a property interest in the surplus equity—after the deed to the property has been forfeited to the County. Here, Plaintiffs argue that "Michigan jurisprudence has long recognized a private property interest in the surplus money produced by a tax sale." (ECF No. 35 at PageID.400.) In support of that assertion, Plaintiffs cite to a nineteenth-century case:

> The surplus money produced by the tax sale, *is the property of the person who has legal title to the land at the time of the sale*, and the moment the amount is ascertained and passed to his credit in the books of the treasurer, it is as absolutely his as though it were in his own keeping.

---

[9] Plaintiffs claim that "[t]he common law of the State of Michigan recognizes that any surplus proceeds arising from a mortgage foreclosure sale are personalty and a person with an ownership interest in, or who succeeds to a n ownership interest in the foreclosed real property, has a right to claim ownership of the personalty." (ECF No. 1 at PageID.13.) However, nothing in state common or statutory law establishes that a person who forfeits his property in the tax context has a property interest. The State Circuit Court in *Rafaeli* also recognized the lack of a property interest in this context. *See Rafaeli II*, No. 15-147429-CZ, at *3 ("Plaintiffs did not have a property interest in the excess proceeds received in the tax sale because full forfeiture had already occurred.").

*People ex rel. Seaman v. Hammond*, 1 Doug. 276, 281 (1844) (emphasis added). Since the enaction of the GPTA, however, this case law[10] cuts *against* Plaintiffs because the County "has legal title to the land at the time of the sale," and thus retains "surplus money produced." *Id.* In other words, the County possesses the title in fee simple at the time of the sale, and consequently, there is no "taking" of any property interest without just compensation at the time of a subsequent tax sale.[11]

Plaintiffs, as delinquent taxpayers, have no "property interest" under state law for any "surplus equity" at the time of the tax sale. Rather, the County possesses the "property interest" in equity when judgment becomes final and the deed vests with the County. Because Plaintiffs do not have a property interest in the pleaded "surplus equity" at the time of the tax sale, they fail under Rule 12(b)(6) to state a claim under the Takings Clause of the Constitution upon which relief can be granted.

### III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss with respect to Counts I and II, and **DECLINES** to exercise jurisdiction over the pendent state law claim in Count III. (ECF No. 7.)

---

[10] Further, the statute itself specifically provides that the County is entitled to keep any surplus.

[11] The Wisconsin Court of Appeals similarly "consider[ed] whether the [plaintiffs] had a property interest in the excess proceeds of the foreclosure sale" and, upon concluding that they did not under Wisconsin law, denied their Takings Clause Claim. *Ritter v. Ross*, 558 N.W.2d 909, 912–13 (Wisc. Ct. App. 1996).

## **ORDER**

For the reasons contained in the accompanying Opinion, Defendant's Motion to Dismiss with respect to Counts I and II is **GRANTED**. Having declined to exercise jurisdiction over the pendent state law claim in Count III, that claim is **DISMISSED**.

Further, the Court **DISMISSES AS MOOT** Plaintiffs' Motion for Summary Judgment (ECF No. 15) and Motion to Certify Class (ECF No. 18). Judgment will soon enter in favor of Defendants and against Plaintiffs.

**IT IS SO ORDERED**.


Date:   November 9, 2015                          /s/ Paul L. Maloney
                                                 Paul L. Maloney
                                                 United States District Judge