1

1       IN THE UNITED STATES DISTRICT COURT

2       FOR THE WESTERN DISTRICT OF MICHIGAN

3       SOUTHERN DIVISION

4

5   WAYSIDE CHURCH, ET AL.,

6           Plaintiffs,

7    v.                                CASE NO:  1:14-CV-1274

8   COUNTY OF VAN BUREN &
    KAREN MAKAY,
9
            Defendants.
10
    _____/
11

12

13                      * * * *

14              MOTION HEARING

15                      * * * *

16

17

18   BEFORE:  THE HONORABLE PAUL L. MALONEY
             United States District Judge
19           Kalamazoo, Michigan
             November 5, 2015
20

21

22

23

24

25

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

2

1    APPEARANCES:

2

     APPEARING ON BEHALF OF THE PLAINTIFF:
3

         RONALD W. RYAN
4        Lewis Reed & Allen, P.C.
         136 East Michigan Avenue, Suite 800
5        Kalamazoo Michigan  49007

6        JAMES SHEK
         225 Hubbard Street, Suite B
7        P.O. Box A
         Allegan, Michigan  49010
8

9    APPEARING ON BEHALF OF THE DEFENDANT:

10       THOMAS G. KING
         Kreis Enderle Hudgins & Borsos, P.C.
11       One Moorsbridge
         P.O. Box 4010
12       Kalamazoo, Michigan  49003

13

14

15

16

17

18

19

20

21

22

23

24

25

3

1          Kalamazoo, Michigan

2          November 5, 2015

3          at approximately 1:34 p.m.

4              PROCEEDINGS

5      THE COURT:  This is File Number 14-1274; Wayside

6   Church, et al. vs. Van Buren County and Karen Makay.  This

7   matter is before the Court for oral argument on the defendants'

8   motion to dismiss and the plaintiffs' motion for summary

9   judgment.

10         The record should reflect that Attorneys Shek and

11   Ryan are here on behalf of the plaintiffs.  Attorney Tom King

12   is here on behalf of the defendant.

13         The Court's had the benefit of the briefing in this

14   matter, and I appreciate the quality of the submissions.  What

15   I would like to do is I would like to divide the argument into

16   the (b)(1) issues and the (b)(6) issues, and if we could

17   proceed on the 12(b)(1) issues first, and then we will go from

18   there.

19         Mr. King.

20         MR. KING:  Thank you very much, your Honor.

21         Your Honor, we are here before the Court today on a

22   three-count Complaint wherein the plaintiffs have alleged in

23   Counts One and Two taking claims, Count One of the Fifth

24   Amendment and Count Two under 42 U.S.C. Section 1983, and Count

25   Three, what I would refer to as a pendant state claim for

4

1   construction of the statute.  The first two counts are alleged

2   to be based on federal jurisdiction, that is the claim of

3   jurisdiction here.  And as the Court has pointed out, we are

4   here today on my clients', Van Buren County and Karen Makay's,

5   motion, to dismiss for lack of jurisdiction based on ripeness,

6   the (b)(1) claim, and then subsequently we will be arguing the

7   (b)(6) claim, which is a motion to dismiss for failure to state

8   a claim.

9          Specifically, the plaintiffs do not challenge the

10   notice that was given or make any allegations with regard to

11   the notice and due process.  What they challenge, they seek to

12   challenge only one thing, and that is that after the

13   foreclosure has occurred and the treasurer has taken title to

14   the property based upon the foreclosure process, and if there

15   is a subsequent sale, and that sale then results in greater

16   funds than the original amount of the taxes, that somehow they

17   are entitled to the funds from the treasurer's subsequent sale

18   after foreclosure.

19          This--  These claims kind of misconstrue the statute

20   and what it is.  Michigan is a deed state as opposed to a lien

21   state.  And what that means, your Honor, is the process that

22   was adopted, I believe in 1999, and then amended somewhat in

23   2001, provides for a foreclosure of the title to the property

24   in exchange for the delinquent taxes, so when taxes become

25   delinquent, there's a lengthy process, it takes about three

5

1  years to go through the process from the time the treasurer

2  obtains-- the county treasurer obtains the taxes that are

3  delinquent until the running of the redemption period.  Through

4  that process, there are multiple notices, of course, that are

5  sent to the taxpayer, and we are not here to-- because they are

6  not challenging that they didn't get notice.  Once that process

7  occurs, there is also a court proceeding whereby there is a

8  foreclosure hearing, and from that foreclosure hearing, the

9  state court enters a judgment.  The judgment provides that in

10  the event that they don't redeem within the redemption period,

11  then the title vests in the treasurer.  And that's what makes

12  it different than your standard mortgage foreclosure, which is

13  a lien foreclosure.  This is a foreclosure whereby the property

14  is obtained in judgment against or with judgment against it and

15  obtained title to the treasurer based on nonpayment of taxes.

16      The redemption period runs typically on March 31st of

17  the year approximately three years after they are transferred

18  to the treasurer.  The judgment of foreclosure under the

19  statute is entered at the beginning, typically at the beginning

20  of February.  The hearing must occur within 30 dates before

21  March 1st, of that same year.

22      So once that occurs, then title to the property vests

23  absolutely in the treasurer's office and the treasurer.  Once

24  that occurs, then there are a number of things that can happen

25  to the property.  It can go to a land bank, which means that

6

1   the treasurer typically would keep title to the property, if

2   that's what the treasurer decides to do with it.  Local units

3   of government can request the property be used for public

4   purpose or the treasurer can subsequently sell it as excess

5   property.  And we are here because these properties were

6   subsequently sold as excess property after the treasurer had

7   obtained fee simple title to the parcels.  It's the position of

8   these plaintiffs that when that subsequent sale occurred, that

9   they were entitled to any proceeds from the sale that exceeded

10  the original amount of the taxes.  However, that is not the way

11  the foreclosure act or the foreclosure occurs, because in the

12  event that the treasurer obtains title to a parcel of property

13  that subsequently sells for less, there is no deficiency. It's

14  simply an exchange of the taxes owed are wiped out in exchange

15  for title to whatever title to the property that the taxes are

16  assessed upon, whatever the value of that property, however

17  contaminated it may be, and worthless it may be, or how ever

18  valuable it may be, and the treasurer doesn't know at the time

19  of the foreclosure, it doesn't know until the subsequent sale

20  whether or not the property is going to generate more money

21  than those taxes that were previously foreclosed and title was

22  received.

23      Our motion, based on Federal Rule of Civil Procedure

24  12(b)(1) is based upon a lack of jurisdiction of this Court

25  based on ripeness.  The standard of review is set forth in our

7

1   brief and the lack of jurisdiction is based upon the seminal

2   case of Williams County Regional Planning vs. Hamilton Bank,

3   found at 473 U.S. 172, a 1985 case, established a two-prong

4   test for determination of ripeness related to taking claims.

5        The first prong has to do with whether or not the

6   state in its process had reached the final decision conclusion

7   with regard to the alleged taking of the property.  For

8   purposes of our case, the prong one, we don't challenge that

9   that prong has been met.

10       The second prong of the Williamson rule is if a state

11   has an adequate proceeding for seeking just compensation, the

12   property owner cannot first come to federal court and claim

13   federal court violation of the Federal Constitution until it's

14   first gone through the state proceedings.  It's this prong that

15   we believe has not been met in this particular case.  Michigan,

16   of course, in it's Constitution, as cited in our brief in

17   Article 10 Section 2 has a provision that mirrors the Federal

18   Constitution with regard to taking of property without just

19   compensation.  In addition--  That's in the Michigan

20   Constitution of 1963.  That case has been-- or that

21   Constitutional provision has been held to be coterminous or

22   coterminous with the breadth and scope of the U.S.

23   Constitution's taking clause by the Michigan Supreme Court.

24   The General Property Tax Act has a provision providing a remedy

25   for somebody claiming money damages on a tax foreclosure being

8

1   MCL211-- 211.781 and also the Michigan has a statutory takings

2   statute, and the Michigan Supreme Court has recognized inverse

3   condemnation actions, and we have cited the caselaw for that in

4   our brief.

5        THE COURT:  Well, the inverse condemnation statute

6   applies to eminent domain takings, correct?

7        MR. KING:  But it's been deemed in the caselaw to

8   also apply to actions with regard to takings-- regulatory

9   takings in the State of Michigan as well and--

10       THE COURT:  This case isn't a regulatory taking, is

11  it?

12       MR. KING:  It's akin.  It's a statutory proceeding

13  taking.  It's akin to a regulatory taking.  It's akin to a

14  taking whereby the state has taken the property based upon a

15  statute or regulation, and it's alleged that it's been taken

16  without just compensation.  I would suggest that the Sixth

17  Circuit Macene vs. MJW, Inc., 951 F.2 700, a 1991 case, and

18  Merkur Steel Supply vs. Detroit are two cases that would

19  suggest that inverse condemnation is appropriate and applicable

20  to this type of situation.

21       THE COURT:  Merkur was an imminent domain case,

22  wasn't it?

23       MR. KING:  It was.  It was.

24       THE COURT:  In Section 78 L, which you referred to

25  earlier, provides for damage action, but it can only be-- by

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

9

1   its terms can only be based on lack of notice, correct?

2         MR. KING:  It does indicate that it's based on lack

3   of notice.  Interestingly enough, doesn't--

4         THE COURT:  It doesn't say anything else other than

5   that?

6         MR. KING:  No, it does not, your Honor.

7         THE COURT:  So how does that statute apply to this

8   case where plaintiff is seeking just compensation for not based

9   on notice, but based on something else?

10        MR. KING:  We believe it's more appropriate under the

11   inverse condemnation case, and the proof is actually kind of in

12   the pudding, your Honor, the Rafaeli case out of the Eastern

13   District that we cited to the Court, that case is currently

14   pending in the Michigan Court of Claims on just such that type

15   of claim.  And that is after the opinion that we cited from

16   Judge Berg on the Eastern District which dismissed the-- an

17   identical case in the Eastern District for a lack of ripeness

18   on that side.

19        As I indicated, Judge Berg has recently had occasion

20   to review a case with the same types of taking claims as this

21   one and has dismissed-- I know that case isn't binding on this

22   Court, but it construes the exact same statute, so we thought

23   it might be instructive, your Honor.  Judge--  In fact, Judge

24   Berg specifically found that Michigan had inverse condemnation

25   cause of action.  He contrasted it with the principal case

10

1    cited by the plaintiffs in this, which is the Coleman case out

2    of the DC circuit, and quite frankly, there are a couple of

3    things going on in that case, one is directly in it and one

4    could be read between the lines.  The first one directly going

5    on is that it's in the District of Columbia.  The District of

6    Columbia doesn't have a Constitution, in fact, uses as its

7    Constitution the Constitution of the United States of America,

8    and so there isn't any similar Constitutional prohibition

9    against taking in the District of Columbia, and the Court said

10   so, and that was the way the Court got by the-- in the District

11   of Columbia case, the Coleman case got by the fact that there

12   was a claim of lack of ripeness.

13          In addition, that case there was a-- that case was

14   pending during an amendment of the statute, and if you read the

15   case very closely, the delay in that matter would have allowed

16   the plaintiffs to apply under the statute and possibly get some

17   of those proceeds back because the statute was in the process

18   of being amended and had been amended and it had been awaiting

19   taking effect.

20          The justification in Judge Berg's case for the

21   Michigan Constitution of 1963 Article 10 Section 2 providing a

22   remedy is that the opinion, in that case on Page 18 and 19, and

23   based on that case, the Williamson, and the Williamson case

24   Judge Berg found that the-- that the second prong of the

25   Williamson case had not been met and dismissed, as I indicated,

11

1   virtually identical cases, it had some additional claims, but

2   it had our claims in it and it was construing the exact same

3   statute, dismissed it for lack of ripeness under 12(b)(1).

4          We believe that that is consistent with the

5   Williamson case and it's progeny and the other cases we cite in

6   our brief, and we believe that that is the appropriate action

7   to take on the 12(b)(1) claim.

8          Does the Court have further--

9          THE COURT:  I don't have any questions at this point,

10  Mr. King.  Thank you.

11         Let me hear from Mr. Ryan.  Go ahead, Mr. Ryan.

12         MR. RYAN:  Thank you, your Honor.

13         The Court is correct in pointing out that inverse

14  condemnation arrises out of an exercise of the eminent domain

15  powers.  Whereas here essentially the plaintiffs are saying

16  hey, we've overpaid our taxes.  The taking has arisen here out

17  of the taxing power of the Court, and they would like a refund

18  for their taxes that have been paid.  The county treasurers

19  have been satisfied.  They have received a windfall here, and

20  the plaintiffs here are saying the equity in the property is

21  ours, we are entitled to it back.  The treasurers are saying--

22  they raise Williamson.  Williamson has two prongs, the finality

23  prong, which they do not dispute, but also it says that if

24  there is an adequate remedy at state law, you first have got to

25  go and exhaust those administrative remedies.  In this case,

12

1   clearly there is no reasonably certain and adequate provisions

2   provided in order to pursue those remedies.  So let me back

3   up.

4        The second prong states that if the state provides an

5   adequate remedy, no claim may be made in federal court until

6   that remedy has been pursued.  Our argument here is that there

7   is no remedy provided in this statute for the equity that

8   remains after the tax foreclosure sale.  If there was, we would

9   certainly follow it, but there isn't.  And so for that reason

10  alone, you can stop right there.  Williamson is in apposite and

11  the matter remains ripe.

12       Now, the treasures point out well, there is a case

13  called Rafaeli where the same kind of thing happened.  And that

14  occurred in June over in the Eastern District Court.  And Judge

15  Berg there really kind of highlighted the issues.  I want to

16  read Footnote 2 from his opinion.  It says, "It cannot be

17  denied that the concept of the state confiscating all of the

18  equity of a citizen's property worth between $24,500 and

19  $70,000 and selling it and keeping the entire proceeds, all to

20  collect $8.41 in property taxes, and $277.40 in interest and

21  fees is a manifest injustice that should find redress under the

22  law.  Property taxes must be paid, but for the county treasurer

23  to reap such an overwhelming windfall by depriving a property

24  owner of his entire interest in a property and gains ten of

25  thousands of dollars, more than the tax bill ever was, looks

13

1   like an abuse of power-- more like an abuse of power than like

2   a local government's reasonable measures ensure the collection

3   of property taxes."  That's what Judge Berg said in Footnote 2

4   on Page 6 of his opinion.

5        The treasurers point out they say, well, some of the

6   property that they acquire on a tax sale is-- well, obviously

7   it's all deficient for tax reasons, but some of it is in-- it's

8   contaminated, some of it's undesirable property.  Other

9   property is obviously, as the plaintiffs have experienced in

10   this case, worth a lot of money, it's worth a lot of a windfall

11   to them.  Well, if that was the justification, it would

12   certainly have been set forth in the purpose of the statute,

13   and that's not here.  That's not founded here at all.  They are

14   making this up as they go, and that--

15        THE COURT:  Who is making it up as they go?

16        MR. RYAN:  The treasurers are.  Mr. King here stated

17   that some of this, this is all justified by the fact that some

18   property is undesirable and some property is represents a

19   windfall.

20        THE COURT:  Well, you are not suggesting there's been

21   a non-compliance with the statute, are you?

22        MR. RYAN:  No, I'm not.  I'm just saying the argument

23   is that it's disingenuous, because if that is the purpose of

24   the statute, it's not set forth that way.  That's all I'm

25   saying.

14

1        THE COURT:  Well, didn't the state legislature, and

2   presumably the governor who signed the bill, set forth some

3   purposes of the changes that they made in 1999?

4        MR. RYAN:  That's true, they did, but as we pointed

5   out in our brief--

6        THE COURT:  Why should I disagree with them about

7   that?

8        MR. RYAN:  You don't have to disagree with them at

9   all.

10        THE COURT:  Those are the policy choices of the

11   legislature; is that correct?

12        MR. RYAN:  That's entirely correct.  And I'm not

13   asking you to disagree with what they said.  We pointed out in

14   our brief that this was probably something that wasn't really

15   contemplated at the time the statute was written.  We've had a

16   balloon in property values through the years.  We have had tax

17   system that was in place from I think 1899 until 1999 or 1893

18   to 1999 that didn't even contemplate the item of a surplus.  So

19   it's really just kind of a-- we are here today and other

20   plaintiffs are here in the state requesting the same relief

21   because it just--

22        THE COURT:  Why is Judge Berg wrong?

23        MR. RYAN:  Why is Judge Berg wrong?

24        THE COURT:  You quoted quite appropriately, as I

25   would expect you would from Footnote 2, so you like that part

15

1  of the opinion, but I presume you don't like the rest of it.

2  So why is Judge Berg wrong in his legal analysis?

3      MR. RYAN:  Primarily because the Rafaeli case is

4  founded upon a notice issue, and this is certainly we are not

5  alleging any due process violation here whatsoever.  Rafaeli

6  says that he didn't get the notice and sets forth in great

7  detail how they didn't get notice.  We are not saying that here

8  at all.  But let me play the record forward, if I could.

9      THE COURT:  So if I understand what you just said,

10  you view Rafaeli as a notice case?

11      MR. RYAN:  Yes, it is yes.  Yep.

12      But Mr. King represented that the Rafaeli case was

13  before the Court of Claims in the State of Michigan, it's not,

14  your Honor, and in fact.

15      THE COURT:  Is it in front of the circuit, because I

16  recognize that, you know, the non-prevailing party before Judge

17  Berg might have wanted to appeal, we couldn't find an appeal of

18  Judge Berg's decision.

19      MR. RYAN:  Correct.  I found it, and I have it here,

20  I would like to present it to you, if I could.

21      THE COURT:  Present me with what?

22      MR. RYAN:  Well, this is an order from the-- summary

23  disposition order-- opinion and order from the Circuit Court

24  for the County of Oakland, it's dated October 8, 2015.  The

25  matter in Rafaeli was dismissed by Judge Berg in June.  The

16

1  plaintiffs there had a pending action for which Judge Berg

2  recognized there was injunctions in place, the plaintiffs had

3  already sought and obtained some local state remedies, that

4  case then played forward to this opinion dismissing the case in

5  October.

6          THE COURT:  All right.  The briefing didn't inform me

7  of that, right?

8          MR. RYAN:  Well, this is October 8, yes.

9          THE COURT:  So come under the category of breaking

10  news, right?

11          MR. RYAN:  Correct.

12          THE COURT:  Fair enough.

13          MR. RYAN:  We are not trying to hide the ball here.

14          THE COURT:  I understand.  If you want to hand that

15  to Ms. Cavazos, I'll take a look at it.

16          MR. RYAN:  Thank you.

17          MR. KING:  Do you have an extra copy of that?

18          MR. RYAN:  I do, give me a second here.

19          THE COURT:  Mr. King, have you seen this?

20          MR. KING:  I have not seen it.  I have been regaled

21  with tales of its existence, and if I said Court of Claims, I

22  apologize, it is Oakland.

23          MR. RYAN:  Yes, Mr. Shek informs me this was arose

24  out of a new filing by the plaintiffs in Oakland County Circuit

25  Court.  First of all, let me back up, and remind the Court that

17

1  you don't have to go this far, if you don't want to.  You can

2  stop at Williamson and recognize that there is no adequate

3  proceeding in state court to follow, that there is no-- as

4  Williamson says, you can go-- you have to go to state court if

5  there is a reasonable, certain, and adequate remedy in state

6  court.  We are saying that there isn't here.  The statute does

7  not provide for a refund of an overpayment of taxes.  It does

8  not provide for inverse condemnation.  It provides for nothing,

9  other than the damages claim that you recognized under Section

10  78 L where this was a lack of notice.  That's all that it

11  provides.  So you can stop the analysis there.  But if you feel

12  that you need to-- that there is a reasonable, certain, and

13  adequate remedy, you can recognize that the plaintiffs in the

14  Rafaeli decision are also encompassed as plaintiffs in your

15  case under our class action claim, and they have received the

16  remedy in state court which says, and I think it's on Page 6 of

17  that opinion, she addresses Judge Langford Morris addresses

18  Count Three and dismisses it saying-- stating that the taking

19  amounted to a forfeiture.  And that, if the Court wants further

20  briefing on forfeiture, I'm more than happy to provide it.  But

21  I do want to point out a couple of things, one is MCL 600.310

22  says that "Personal property used in crimes is abated as a

23  nuisance or forfeited to the state."  And my question is, are

24  we going so far as to call what occurred here a crime.

25         There is provisions for forfeitures of buildings at

18

1   MCL 600.3825.  Real property used through a violation of

2   controlled substances can be forfeited pursuant to MCL

3   333.7521.  Those are enumerated crimes.  Certainly there is not

4   an enumerated crime in this situation at all.  It simply

5   amounts to an overpayment of taxes for which there is no state

6   remedy.  The matter remains ripe for your review.  Williamson

7   does not apply for those reasons.

8        THE COURT:  Mr. King, go ahead.

9        MR. KING:  Your Honor, the General Property Tax Act

10   at MCL 211.78 talks about first forfeiture and then

11   foreclosure, and hence, there is a provision the way the

12   process works it's the property is forfeited and then

13   subsequently foreclosed and it's a two-step process as part of

14   the provisions of the Tax Forfeiture Foreclosure Act, and as a

15   result citing some other statute that talks about forfeiture

16   for a crime is just kind of ignoring the very statute that we

17   have that has provisions in it that talks about forfeiture.

18        And I suspect Judge Morris used the term forfeiture

19   because that is the term used in the statute for the first step

20   of the process.  There is a notice of forfeiture, and then

21   after the forfeiture, then there is a foreclosure proceeding.

22   It also shows that these plaintiffs apparently abandoned their

23   claims in this particular, as I was reading this particular

24   judgment, it talks about the fact that they had abandoned

25   certain claims including their Counts Four through Seven, which

19

1   are some of their claims under this.  The Judge does go on to

2   indicate that the, as you see at the bottom of Page 3 of the

3   order, which is our principal argument, is that all redemption

4   rights expire on March 31st after entry of the judgment.  So

5   there is a judgment of foreclosure after the forfeiture, there

6   is a judgment of foreclosure, and then there's a redemption

7   period.  And the redemption period then expired, and the

8   treasurer is then vested with title to the property, and after

9   that, the property interest was lost by the prior owner of the

10   property.  And as a result, they had forfeited their interest

11   in it based upon the process having been completed and the

12   title having gone to the treasurer.  The subsequent sale is a

13   sale just like a sale from any other owner of a fee title

14   interest and whether it generates more funds than the fee title

15   holder paid for it or less funds, it's not excess proceeds of

16   the fax foreclosure because there are no proceeds of the tax

17   foreclosure, there is a deed.

18         THE COURT:  I think we are getting into the (b)(6)

19   argument here, let's return for the moment to why or why not

20   Judge Berg was right.  I mean the Merkur case appears to say

21   that inverse condemnation actions are only available in the

22   context of eminent domain.  Am I right about that, from your

23   perspective?

24         MR. KING:  I don't think that it limits them to

25   that.  It does say-- it was an inverse condemnation.

20

1        THE COURT:  Let me ask the question a different way.

2   Is there any case out there that says that a cause of action

3   for surplus proceeds is justiciable under the inverse

4   condemnation provisions?

5        MR. KING:  Only the opinion of Judge Berg.  Since

6   this is the first time that this case has gotten this high in

7   the courts, your Honor.  There are no cases on this issue

8   related to tax foreclosures because of that.

9        THE COURT:  Let me synthesize where I'm at.  If I

10   disagree with judge Berg, and Section 78 L only applies to

11   notice, then why isn't this case ripe?

12        MR. KING:  Because just like under Bivins in the

13   federal context, Michigan has a Constitutional provision that

14   prohibits this and claims can be made under the Constitutional

15   provision under Section 10.

16        THE COURT:  Article 10 Section 2.

17        MR. KING:  Article 10 Section 2.  And so that would

18   be the claim that could be made even if you-- if you suggest

19   that the inverse condemnation is limited to other types of

20   actions.  There's been no case on these types of tax claims,

21   because it just hasn't gotten into the courts, your Honor.  But

22   the Constitutional--  A violation of the Constitutional

23   provisions of the Michigan Constitution of 1963 is actionable

24   and damages can occur based on that.  And so just like in the

25   Bivins case, which always makes me smile because it's what,

1  Bivins vs. Six known un-named agents of the--

2       THE COURT:  Six unknown agents, I believe.

3       MR. KING:  Unknown named I thought it was.  So they

4  knew their names, but they didn't know them for purposes of the

5  filing.

6       But anyway, so I would suggest that Judge Berg's

7  opinion is correct that there is, in fact, a remedy in this

8  case.

9       THE COURT:  Well, Judge Berg doesn't cite Article 10

10  Section 2 of the Constitution, does he?

11       MR. KING:  I believe he does, yes, at the top of Page

12  19.

13       "Unlike Coleman, Michigan State Constitution provides

14  that private property shall not be taken for public use without

15  just compensation, therefore first being secured in a manner

16  prescribed by law.  Compensation shall term and in proceedings

17  in a court of record.  Michigan Constitution Article 10,

18  Section 2."  He does cite it.

19       THE COURT:  But the vehicle for filing a lawsuit

20  pursuant to that Constitutional provision is set forth in the

21  next sentence where it talks about the inverse condemnation

22  claim, correct?

23       MR. KING:  That is the vehicle that he cites.  I

24  would suggest to the Court that he's also said that the State

25  Constitution says that there is-- the compensation can be

22

1  secured for violation of a Michigan Constitution.  And as we

2  learned in Bivins, the fact that there is no statute doesn't

3  necessarily mean that the Constitution-- a violation of the

4  Constitution is not actionable, and I would suggest it's the

5  same way in Michigan as it is under the federal law.

6          THE COURT:  Is there any Michigan appellate

7  authority, either on the Court of Appeals level or at the

8  Supreme Court, that says that Article 10 Section 2 of the

9  Michigan Constitution provides its own basis for cause of

10  action?

11          MR. KING:  I don't know one way or the other, your

12  Honor.

13          THE COURT:  All right.  Thank you.

14          MR. KING:  Uh-huh.

15          THE COURT:  Mr. Ryan, did you have anything more on

16  this issue?  Go ahead, sir.

17          MR. RYAN:  I wanted to reiterate what the Court has

18  said and recognized, that this matter is ripe, I think that's

19  what the Court was alluding to, that it is ripe.  This is not

20  an exercise of eminent domain power for which inverse

21  condemnation claim could be founded.  This is exercise of

22  taxing power, and when there is, as I pointed out in Phillips

23  vs. Commissioner where there is a tax statute in place, it

24  needs to provide for a refund in the event of overpayment.

25  When you don't have that, you've got what we allege amounts to

23

1  a taking, and for which we feel the matter is ripe at this

2  point.

3       THE COURT:  All right.  Well, for purposes of hearing

4  argument on the (b)(6) portion of the argument, let's proceed

5  under the assumption that I believe the case to be ripe.  I'm

6  not at all sure that the defendants' arguments as it relates to

7  Williamson or Judge Berg's opinion in his Rafaeli case carry

8  the day, so at least that's my preliminary view as I sit here

9  right now, so let's proceed to the (b)(6) argument.

10      Go ahead, Mr. King.

11      MR. KING:  Thank you, your Honor.

12      With regard to the (b)(6) argument, it's an argument

13  based on failure to state a claim as the Court is aware, and

14  the plaintiffs have an obligation to set forth sufficient

15  factual matter, that if accepted is true, state a claim for

16  relief that is plausible in its facts and it's Iqbal and

17  Twombly, which I'm sure this Court has visited many times since

18  their issuance.

19      THE COURT:  That's an understatement.

20      MR. KING:  Every judge I've talked to smiles a little

21  bit when Iqbal and Twombly are mentioned.

22      Plaintiffs have claimed a deprivation of property

23  that by taking without just compensation, and the only claim

24  they make is that because where a tax deed statute and the

25  foreclosure is foreclosure for the deed instead of the--

24

1    instead of a lien process whereby we bid in the taxes that

2    somehow that deprives them of their property.  That is the same

3    kind of situation that was before the United States Supreme

4    Court in Nelson vs. City of New York.  And in fact, I know that

5    that case indicates that there was some sort of a process that

6    they didn't follow that may have allowed them to get proceeds,

7    but the Court-- the Supreme Court said that in the event that

8    they-- the mere fact that the amount of a subsequent sale of a

9    property, the proceeds from that property exceeded the amount

10   owed in and of itself, which is what they are arguing in and of

11   itself, does not violate the takings clause of the

12   Constitution.  And if you take a look at Footnote 1 of that

13   case, it's a lengthy footnoot, it indicates that the New York

14   statute is a tax deed statute that they are relying on because

15   if you look in the middle of that it says, the prescribed

16   notice is to the effect that unless the amount paid, and I

17   won't read the whole sentence, but right at the end of it, and

18   directing execution of a deed conveying an estate in fee simple

19   absolute to the city.  It was the exact same process that we

20   have here, where there was a substitution for the property for

21   whatever it was that was owed to the government.

22       THE COURT:  How do you read-- and I appreciate the

23   reference to Footnote 1-- How do you read Footnote 10 as it

24   relates to potentially distinguishing the Nelson case from this

25   case?  And I'm directed, and the reason why I'm pointing this

25

1   out is that there appears to be some fairly strong language,

2   which you have already directed me to.

3       MR. KING:  I didn't want to keep it from your Honor.

4       THE COURT:  We hold that nothing in the Federal

5   Constitution prevents this, meaning the taking of-- the

6   retention of the entire proceeds of the sale, nothing in the

7   Federal Constitution prevents this where the record shows

8   adequate steps were taken to notify the owners of the charges

9   due and the foreclosure proceedings, which is basically a

10   notice provision.  And there is no issue here in regard to

11   notice.

12       MR. KING:  Right.

13       THE COURT:  Contrast that language with the language

14   right after Footnote 9, which says, "But we do not here have a

15   statute which absolutely precludes an owner from obtaining the

16   surplus proceeds of a judicial sale."  It then cites the

17   Chapman Docks case and gets me to Footnote 10, which I just

18   directed you to.  It would appear to me that Footnote 10 does

19   provide some mechanism for a property owner to seek

20   distribution or other disposition of the proceeds of the sale.

21   That is not consistent with Michigan law, correct?

22       MR. KING:  No.  There is no right to subsequently

23   file an action, which is what I read that as to, within the

24   redemption period to file an action, that's what that says.

25   Within the redemption period you can file an action, claiming

26

1  that there's some problem with the sale.  And among those

2  problems in the excess proceeds, but it says, "and any defense

3  or objection to the foreclosure."  So they can file a defense

4  of an objection to the foreclosure, and also apparently they

5  could make a claim that this is a very valuable piece of

6  property.  That was apparently what the New York process

7  allowed.

8       THE COURT:  And the plaintiffs here can't do that,

9  correct?

10      MR. KING:  No.  What they can do is within the

11  redemption period come in and redeem the property, and all of

12  the notices indicate that the property will be lost if, in

13  fact, they don't redeem.

14      THE COURT:  I guess the purpose of my question is

15  that the portion of the Nelson opinion that I read earlier

16  regarding the we hold portion would appear to be a pretty

17  powerful statement of law, which if not read in the context of

18  the facts of the New York statute would appear to apply to this

19  case, but indeed in certain respects Nelson is distinguishable

20  from the Michigan statutory scheme.  Would you agree with

21  that?

22      MR. KING:  That's not the position that's been taken

23  by the Second Circuit Court of Appeals.

24      THE COURT:  I certainly agree with that.  I mean the

25  Minor opinion, funny you got to that, because I've got a yellow

27

1  sticky on that case on the bench.

2       MR. KING:  Yes.

3       THE COURT:  And I appreciate that's what the Second

4  Circuit says.

5       MR. KING:  Yes.

6       THE COURT:  And Judge Cabranes is an excellent

7  appellate judge, but the circuit opinion appears to ignore the

8  other portion of the opinion a paragraph before and ignore the

9  footnote.

10      MR. KING:  I don't know that we can say that the

11 judge ignored that.  It's not in the opinion.  He may have

12 concluded it wasn't important for the decision, as I'm

13 asserting, it wasn't important for the decision in Nelson vs.

14 New York.  And also, there is another case, Zackery vs. Clinton

15 County New York.  That is the U.S. District Court for the

16 Northern District of New York that holds the same thing, cites

17 Nelson.  It's 2003 Westlaw 24197685 and, of course, the Supreme

18 Court summarily reversed the Seventh Circuit in Balthazar vs.

19 Mari Limited, 396 U.S. 14, and the argument is well, if a

20 summary of reversal is not a decision on the merits, but it

21 would seem since the Illinois process is similar to the

22 Michigan process, that it would have given-- that had that

23 footnote been in-- that you had to read those two together and

24 it was a limiting factor, as the Court is suggesting, and that

25 the last sentence doesn't stand on its own, that the Supreme

28

1  Court wouldn't have done that.

2      So and there isn't any caselaw except for-- except

3  for the Coleman decision, which appears to be a case that is

4  looking for a particular result.  I hate to say that, but it

5  does appear to be that.  And it goes a long distance to get to

6  a particular result down the line, and when it-- all it had to

7  have said was, well gee, at least with regard to the (b)(1)

8  claim, gee, there is no Constitution.  But it goes out of its

9  way to provide a remedy and I believe it's based upon the

10  footnote that says gee, they've amended the statute and if we

11  can only hang on a little longer, he is going to get his

12  remedy.  And so I suggest that that is the case that's a little

13  bit out in the wilderness, if you will, from all of these other

14  cases that come right along and follow Nelson, and say that the

15  mere claim that there are, as they call them, excess proceeds,

16  I don't believe they are proceeds from a tax sale, quite

17  frankly, because remember the foreclosure results in a deed,

18  and the deed then results in fee title, and the fee title is

19  either subsequently kept, it's subsequently transferred to

20  other governmental units, it's subsequently sold by the

21  treasurer based on being the fee owner of the property.  And I

22  would suggest that where they really go off the rails is to say

23  that the proceeds of that sale was, what is in essence an

24  excess property sale is, in fact, excess proceeds of the tax

25  foreclosure.  I don't believe that is the case.  I don't

29

1  believe that that is the way the statute is set up, and if it

2  were, we would be tax lien state where we would bid in our

3  lien, just like you do in a real estate foreclosure case.  If

4  you've got a mortgage, you bid in your lien, and the excess

5  proceeds then are to the extent that the property is sold for

6  more than that, then they go to the prior owner or other lien

7  holders, of course.  So I would suggest that Nelson says what

8  Nelson says, and that sentence means what it says, and it's not

9  modified before, because if it were, Bathazar wouldn't have

10  come out the way it did, Minor wouldn't have come out the way

11  it did, Zachery would not have come out the way it did, Rafaeli

12  would not have come out the way it did.  And so all of the

13  cases line up on one side of the issue, except for the Coleman

14  case, your Honor.  Thank you.

15      THE COURT:  Thank you, sir.

16      Mr. Ryan.

17      MR. RYAN:  That's a pretty big basket to put all of

18  those cases in one location, I think.

19      Let me point out Nelson and talk about that.  And

20  there the citizen, the New York citizens were made aware of

21  their rights, yet for a period of seven weeks, yet took no

22  action to enforce those rights for a period of seven weeks.

23  And that's pretty much the foundation upon which the result is

24  in Nelson.  They had the ability to do something for seven

25  weeks, yet they didn't.  The Nelson court really struggles with

30

1   this and points out U.S. vs. Lawton in the 110 U.S. 146, which

2   states, "To withhold the surplus from the owner would be to

3   violate the Fifth Amendment to the Constitution and deprive--

4   and to deprive him of his property without due process of law

5   or to take his property for public use without just

6   compensation."  And that's on Page 109 and 110 of the Nelson

7   vs. New York opinion.

8       THE COURT:  All right.  But the Nelson panel or the

9   Nelson court clearly says that the Lawton case was a matter of

10  statutory construction and not a Constitutional case.

11      MR. RYAN:  Correct.  That is correct, yes.  But the

12  analysis is still there.  But I can't leave it without pointing

13  out that as Nelson court does, almost in the first paragraph,

14  it states, "However, appellants," and goes with the citizens

15  here appealing, "the appellants took no action during the seven

16  weeks allowed for redeeming the property through payment of

17  back charges nor during the 20 additional days allowed for

18  answering the City's complaint.  I think that has as much to do

19  with the result here as anything in Nelson.  The same thing

20  holds true with Balthazar.  And there it went that way where an

21  owner failed to redeem his property, the purchaser of the tax

22  lien may obtain the property and gain a windfall of all the

23  surplus.  That is the holding of Balthazar.  But the common

24  thing between Nelson and Balthazar is where have you an owner

25  who fails to redeem, fails to redeem.  You have those in both

31

1   situations here.

2        Here as we pointed out in our brief, we've got a real

3   backwards analysis with redemption here.  We've got redemption

4   occurring before judicial sale where the surplus is then

5   realized, and it's a really backwards analysis of the whole

6   situation.

7        THE COURT:  I don't understand, backwards analysis.

8        MR. RYAN:  Well, in the situation, that the tax

9   allows for the taking to occur, the foreclosure to occur.  The

10   redemption period expires before the taking occurs, is that

11   kind of it-- before the sale occurs, then the sale occurs after

12   the redemption period.

13        THE COURT:  The redemption period expires and the

14   deed goes over to the treasurer.

15        MR. RYAN:  Right.  Right.

16        THE COURT:  And then the sale occurs.

17        MR. RYAN:  Correct.

18        THE COURT:  All right.  Let me ask this question:

19   What if the county chose not to sell one of your client's

20   parcels and just let it sit there?

21        MR. RYAN:  The taking would occur here when there is

22   a surplus that's realized by the treasurer that's not refunded

23   after satisfaction of the taxes.  And we are not arguing here

24   that the taxes shouldn't be paid.  We are saying that the taxes

25   should be paid.  We are even acknowledging that the property--

32

1   the process of taking property to satisfy taxes should occur.

2   We are saying the taking occurring.  There is no right--

3   there's no fundamental right that the treasurer has to keep the

4   surpluses.

5       THE COURT:  So the taking is the equity which is post

6   deed transfer to the county treasurer, is that your argument?

7       MR. RYAN:  Just to add one more, it's the retention

8   of the proceeds.  It's the fact they have retained the proceeds

9   after satisfaction of the underlying tax.

10      THE COURT:  But it's post deed moving to the county

11   treasurer?

12      MR. RYAN:  Entirely correct, the right.

13      THE COURT:  What is the source of state law that says

14   that a property owner has an interest in that equity?

15      MR. RYAN:  It goes all the way back to 1844, Seaman

16   vs. Hammond, I can give you the cite.

17      THE COURT:  I'm not at all sure that case helps you

18   now in light of the status of Michigan law.  And I appreciate

19   the fact that prior to 1999 perhaps Michigan handled things

20   differently, but.

21      MR. RYAN:  The only other references I can make are

22   to the taxation of personal property, which states that if

23   there is an excess surplus that the surplus is returned.  I can

24   reference the Court to our mortgage foreclosure statute, which

25   permits for the excess surplus to be returned to the mortgagor.

33

1  Those are the fundamental precepts that Michigan law has in

2  place.  I don't have a case here to say to the Court well, we

3  have a fundamental right to these proceeds.

4      THE COURT:  In light of that, I mean the Coleman case

5  that you've quite appropriately directed me to because it helps

6  you--

7      MR. RYAN:  Right.

8      THE COURT:  --there is no question about that, but

9  even the Coleman case says that the right to the equity has got

10  to be grounded in state law.  And in the absence of any

11  authority that says that Michigan gives a property owner under

12  these circumstances the right to the equity, isn't that fatal

13  to your argument?

14      MR. RYAN:  I don't think it's fatal, because there is

15  no-- the flip side is not true either.  There is no authority

16  that allows the treasurer to keep it, to a windfall.  All we

17  can reference here--

18      THE COURT:  But the treasurer-- the treasurer cannot

19  sell the property, correct?

20      MR. RYAN:  Well, then the taxes aren't satisfied

21  either, are they?  And the taxes at some point there has to be

22  a sale that occurs in order to satisfy those taxes.

23      THE COURT:  All right.  And the only way the sale

24  occurs is after the time that the deed vests in the county

25  treasure, correct?

34

1       MR. RYAN:  Correct.

2       THE COURT:  So the language that you pointed me to in

3   the 1844 case clearly says that the right to the excess

4   proceeds shall be given to the owner, and at the time that this

5   property gets-- that your client's gets sold, the county

6   treasurer is the owner of the property, aren't they?

7       MR. RYAN:  No, no.  The owner in reference to Seaman

8   vs. Hammond is the prior owner who owed the taxes, and we are

9   saying the analysis is the same here.

10      THE COURT:  But that was-- wasn't the 1844 case under

11   a different statutory scheme?

12      MR. RYAN:  It was, it was.  But the precepts are

13   there.  And--

14      THE COURT:  Well, the precepts can't be there unless

15   the statutory scheme is the same, right?

16      MR. RYAN:  Well, that's true.  But the flip side is

17   also incongruous, that just before lack of that, that the

18   county treasurer can keep the proceeds.  Just for lack of some

19   fundamental right for the homeowner to have an interest in the

20   surplus.

21      THE COURT:  But the state has the authority, the

22   policy making authority to set forth in statutes the interests

23   of property in the state, correct?

24      MR. RYAN:  That's true, and they have, but not in

25   this.

35

1        THE COURT:  In essence, aren't you asking me as a

2   member of the judiciary and the federal judiciary to basically

3   engraft that onto Michigan State law?

4        MR. RYAN:  I think its there, its already there.  It

5   just hasn't--

6        THE COURT:  Where?

7        MR. RYAN:  It's in the personal property tax.

8        THE COURT:  But there is plenty of reasons why a

9   state legislature and the executive branch of government in the

10   state might choose to deal with mortgage foreclosures or

11   mortgage liens and personal property taxes in a different

12   fashion, isn't there?

13        MR. RYAN:  I think that the concepts are the same.

14   You've got a satisfaction of a mortgage, you have a

15   satisfaction of taxes on personal property, and then you have

16   an excess.  But you don't have anything permitting the excess.

17   What you do have is a satisfaction of taxes to which there is

18   an entitlement to a refund.  And that's kind of the essence

19   here, is that you now have overpaid your taxes, and there is no

20   justification for keeping the proceeds.

21        THE COURT:  How do you read Footnote 12 of Judge

22   Sullivan's opinion, which is referencing a Wisconsin decision,

23   the Ritter decision?

24        MR. RYAN:  I am familiar with that, and in fact, I

25   have a copy of the Ritter decision here.  The Ritter reference,

36

1  I think, makes reference to Illinois-- or I'm, sorry Wisconsin

2  law, which as the Court points out, gave the taxpayer a right

3  to the proceeds, did it not?  I think that's kind of what

4  you're-- on page, let's see here.

5        THE COURT:  I think it's exactly the opposite.  The

6  Wisconsin Court of Appeals said that they didn't have an

7  interest in the proceeds.

8        MR. RYAN:  Yes, I see that here.  It says, the

9  takings clause comes into play only if the state Constitutional

10  tax statutes create a property interest in the surplus.  Ritter

11  at 9, 10, and 12.  Wisconsin Court of Appeals considered

12  whether the plaintiffs had a property interest in the excess

13  proceeds of a foreclosure sale, and upon concluding that they

14  did not, Wisconsin law denied their takings claim.  All I can

15  say there is that we don't have any kind of promulgation from

16  the legislature or the Michigan courts that says that our

17  taxpayers do have a right here.  I have to recognize to the

18  Court that we don't have that I don't have a case to show.  All

19  I can respond to that is to say that there is-- the opposite is

20  not there either, that once taxes are satisfied, there is no

21  justification for the treasurer to keep the proceeds.

22        THE COURT:  But that's a public policy argument,

23  correct?  I mean it's not a legal or anything.

24        MR. RYAN:  There is no foundation that they keep it.

25  There is no foundation-- equally there is no foundation that

1    the taxpayer has that they are entitled to the proceeds.

2         THE COURT:  Doesn't the statute say that the county

3    treasurer gets to keep the proceeds of the sale?  I mean I

4    think it says that in black and white, doesn't it?

5         MR. RYAN:  It does say that.  It says under Paragraph

6    78 M it goes to the general fund, yes.  But to a surplus, to

7    all the problems that we have here that we have raised that is

8    a takings, that this violates the Fifth Amendment.

9         THE COURT:  But the-- and I appreciate the reference

10   to the Con-- the Fifth Amendment of the U.S. Constitution, but

11   the United States Constitution protects property interests, it

12   doesn't creates them, correct?

13        MR. RYAN:  That is correct.  That is correct

14   entirely.

15        THE COURT:  All right.  Thank you, Mr. Ryan.

16        Mr. King.

17        MR. KING:  Just a couple of responses, your Honor.

18        What we have here really is a misconception by

19   plaintiffs of the process and how it works.  They keep going

20   back to the process that it occurs in lien states and occurs

21   with personal property.  There isn't any deed when the

22   treasurer seizes and sells personal property that goes to the

23   treasurer first.  It's the old lien situation, and it's the

24   same way with mortgage foreclosures as the Court pointed out.

25        Quite frankly, with regard to the language the Court

38

1   cited me out of Nelson at the top of-- well, on-- at the end of

2   the next to the last paragraph of the opinion where it says

3   that what the City of New York has done to foreclose real

4   property for charges four years delinquent and in the absence

5   of timely action to redeem or to recovery-- or to recovery it

6   says, any surplus retain the property the entire proceeds of

7   the sale.  That's simply a reference to the New York statute

8   and what the statute provided.  It provided for two options

9   there.  And so the Court's absolutely right.  The Nelson court

10  took the statute as it found it and said these are the options

11  under the statute.  Under the Michigan statute, under the

12  Illinois statute, under the Second Circuit's decisions and

13  those cases, those options aren't available, because what

14  happens is the property is first foreclosed, the foreclosure

15  results in a deed.  There is a redemption period.  The

16  redemption period is extinguished before the deed gets to the

17  treasurer, and so if the statute had only read in New York

18  action to redeem and didn't have a recovery of the surplus

19  provisions, I would suggest to the Court that the only

20  difference in that section would have been what the City of New

21  York has done to foreclose real property for charges four years

22  delinquent and in the absence of a timely action to redeem, or

23  the entire proceeds of the sale.  I mean it would take out the

24  section that talks about recovery of surplus, because it simply

25  isn't in the statute.

39

1          And remember, there are notices that occur.  And the

2    notices say exactly what is going to happen.  It's not--  There

3    is no surprises here.  There is a regulatory statutory

4    procedure that takes three years to complete once the

5    delinquency has occurred with multiple, multiple notices, not

6    only of the delinquency of the taxes, not only of the

7    forfeiture, not only of the-- there is a show cause hearing,

8    there's the foreclosure, and all the way along the process the

9    notices say you are going to lose your property if you don't

10   redeem or pay the taxes.  And they don't, and the deed gets

11   issued, and then the treasurer is the owner of the property,

12   subsequently sells the property, the few parcels that are

13   sold.  You can see from what was filed in this case that it's

14   not even close to every parcel, most of the parcels that have

15   value get redeemed, your Honor.  That's very surprising to me,

16   but--

17          THE COURT:  That's an interesting question.  How--

18   and I don't know whether there are any stats on this or not,

19   but what percentage of the sales by the treasurer's, pursuant

20   to this statute, result in amounts being paid for property in

21   excess of what the taxes are due.  Is there any body of

22   information out there on that?

23          MR. KING:  The only thing that I saw was in the class

24   certification materials, they said in certain counties there

25   are these many that had excess proceeds, and they were a fairly

40

1   small number of the overall amounts out of that county's total

2   sales-- total foreclosures, excuse me.  So I would refer to

3   their documents.

4       THE COURT:  Let me test the limits of your argument,

5   Mr. King.  And this is a very extreme example, but let's say

6   the unpaid property taxes are $1.98 and the statutory

7   provisions are fulfilled, the deed goes over to the county

8   treasurer, the sale is done, the sale price of the property is

9   a million dollars.  Does there come a point where the exercise

10   of the taxation power becomes something other than that?

11       MR. KING:  We don't have a separate process for

12   wealthy individuals with big houses and for poor individuals

13   that don't have any equity in their property.  We have one

14   process, and it's for everybody, your Honor, and the treasurer

15   never knows, quite frankly, until after the fact whether or not

16   the treasurer has caught a whale or a minnow, if you get my

17   drift, your Honor, and I understand that you get the whole--

18       THE COURT:  At some point doesn't it become

19   confiscation?

20       MR. KING:  No more so than if this Court entered an

21   order saying that if you came in and purged yourself of

22   contempt you won't be fined, but if you don't do something, I'm

23   going to fine you a large amount of money per day and I don't

24   do anything, and then subsequently the Court fines me.  Gee, I

25   mean, hindsight is always 20/20.  You look back and say gee, if

41

1   you had only done this he would have paid the $1.98, the taxes

2   would have been satisfied, that's not the way the system works

3   at all, your Honor.  The system simply says unpaid taxes, you

4   are going to lose your property for the unpaid taxes, here's

5   the amount of the unpaid taxes, please come in and pay them.

6   Please do that.  And it's multiple notices that same-- and

7   remember there's no argument that the notice is bad here,

8   that's not what we are talking about.  That says what the

9   result is going to be, and now after the result occurs, they

10   come in and say well, we know that the deed's been issued, but

11   even though there is a deed, we still have an interest, your

12   Honor.  That's not what the statute says, that's not what basic

13   real estate law says, it's not what any law says.  But it just

14   ain't fair, it just ain't fair, your Honor, that is the

15   argument here.  And they are not going to come in here if the

16   property taxes were, you know, $10,000 and the treasurer got

17   $10,000 and one penny.  They are going to come in here and show

18   you the cases, the few cases, that the treasurer caught the

19   whale, so to speak, if you will.  And I don't think the dollar

20   amounts should be the driving factor in the opinion.  It's not

21   the dollar amounts.  We don't have a separate set of laws for

22   big dollar amount cases and a separate set of laws for small

23   dollar amount cases, and it is really the principles rather

24   than the dollar amounts that control.  Thank you.

25        THE COURT:  Thank you.

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

42

1       Go ahead, Mr. Ryan.

2       MR. RYAN:  Thank you, your Honor.

3       I really appreciate the Court's challenge with regard

4  to the Ritter vs. Ross footnote there in the Coleman decision.

5  I went back to my file and was able to find a case from New

6  Hampshire Thomas Tool Services Inc. vs. Town of Croyden, 145

7  New Hampshire 218, 2000.  Granted, not binding on this Court,

8  but there is an element there I would like to reference here.

9       Keeping in mind that the U.S. Constitution cannot

10  create a right, it only protects rights.  It says from that

11  decision in New Hampshire, all property taken requires just

12  compensation because the right to property is a fundamental

13  right in this state, all subsequent grants of power, including

14  the taxing power are limited as to how they adversely affect

15  it.  If the Court needs, I can find caselaw or even reference

16  to the Michigan Constitution that states that the right to

17  property is a fundamental right here in the State of Michigan,

18  which gets around the problem posed by the Court and raised in

19  Ritter vs. Ross.  Thank you.

20       THE COURT:  All right.  Thank you.

21       Well, I'll tell you where I'm going.  I'm going to

22  issue a written opinion in this case.  I do believe that the

23  portions of the motion pursuant to (b)(1), that is, the

24  defendants' assertions that the case is not ripe are not

25  meritorious and I intend to deny the (b)(1) portion of the

43

1    motion, because I do believe the case is cued up.  I don't

2    think the second prong of Williamson is satisfied here, nor do

3    I believe that the inverse condemnation provision or the state

4    Constitutional provision satisfy the plaintiffs' need for an

5    adequate procedure to raise the claims that are raised in this

6    case.  So I'll deny on the basis of (b)(1).  However, I think

7    I've flagged my thought process during the course of the

8    questioning on the (b)(6) issue, I think the county treasurer

9    clearly has the better of the argument here.  The bottom line

10   is that the plaintiffs cannot show me a source of law under

11   Michigan law that creates the property interests that they seek

12   to enforce here, that is the equity in the-- or that is the

13   amount of money that the county treasurer receives at a sale

14   post deed transfer to the county treasurer.  There just is no

15   authority under Michigan state law and Michigan state law

16   creates the property interests here, not the U.S. Constitution,

17   there is no property interest demonstrated here.

18          So in the Court's judgment, for the reasons that I

19   will more fully explain in my opinion, the (b)(6) motion is

20   meritorious, the plaintiff has failed to state a claim.

21   Accordingly, I intend to dismiss Counts One and Two, and will

22   not continue jurisdiction over Count Three, because I believe

23   that raises pendant state claims, and I don't intend, having

24   dismissed the federal claims, I don't intend to exercise

25   jurisdiction over Count Three.  So I'll issue an opinion and

44

1    order consistent with what I've just said.  I don't know how

2    long it will be, but I'll get out as soon as I can.

3          Thank you, gentlemen.

4          MR. KING:  Thank you, your Honor.

5          COURT CLERK:  All rise.

6          Court is adjourned.

7          (At 2:48 p.m., proceedings were concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050

45

1

2

3

4                          REPORTER'S CERTIFICATE

5

6

7          I, Kathleen S. Thomas, Official Court Reporter for

8     the United States District Court for the Western District

9     of Michigan, appointed pursuant to the provisions of Title

10    28, United States Code, Section 753, do hereby certify

11    that the foregoing is a true and correct transcript of

12    proceedings had in the within-entitled and numbered cause

13    on the date hereinbefore set forth; and I do further

14    certify that the foregoing transcript has been prepared by

15    me or under my direction.

16

17

18                 /s/

19                 _____
                   Kathleen S. Thomas, CSR-1300, RPR
                   U.S. District Court Reporter
20                 410 West Michigan
                   Kalamazoo, Michigan   49007
21

22

23

24

25

KATHLEEN S. THOMAS, U.S. District Court Reporter
410 West Michigan Avenue, Kalamazoo, Michigan  49007
(269)385-3050