**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed:  February 10, 2017

Mr. William H. Horton
Giarmarco, Mullins & Horton
101 W. Big Beaver Road, 10th Floor
Troy, MI 48084

Mr. Thomas G. King
Kreis, Enderle, Hudgins & Borsos
P.O. Box 4010
Kalamazoo, MI 49003

Mr. Daniel Benjamin Kohrman
AARP Foundation Litigation
601 E Street, N.W., Fourth Floor
Washington, DC 20049

Mr. Steven Charles Liedel
Dykema Gossett
201 Townsend Street, Suite 900
Lansing, MI 48933

Ms. Christina M. Martin
Pacific Legal Foundation
8645 N. Military Trail
Suite 511
Palm Beach Gardens, FL 33410

Mr. Owen Dennis Ramey
Mr. Ronald William Ryan
Lewis, Reed & Allen
136 E. Michigan Avenue, Suite 800
Kalamazoo, MI 49007

Mr. James Shek
P.OI Box A
Allegan, MI 49010

      Re:   Case Nos. 15-2463/2525, *Wayside Church, et al v. Van Buren Cty., et al*
              Originating Case No. : 1:14-cv-01274

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                              Yours very truly,

                              Deborah S. Hunt, Clerk


                              Cathryn Lovely
                              Deputy Clerk

cc:  Mr. Thomas Dorwin

Enclosures

Mandate to issue.

RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0030p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

WAYSIDE CHURCH, an Illinois Not-For-Profit (Ecclesiastical) Corporation; MYRON W. STAHL; HENDERSON HODGENS, individually and on behalf of a class of all others similarly situated,

   *Plaintiffs-Appellants/Cross-Appellees*,

  *v.*

VAN BUREN COUNTY, in its individual Michigan municipal capacity and on behalf of a class of all other Michigan counties similarly situated; KAREN MAKAY, in her individual official capacity as Treasurer of Van Buren County and on behalf of a class of all other Treasurers of Michigan counties similarly situated,

   *Defendants-Appellees/Cross-Appellants*.

Nos. 15-2463/2525

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:14-cv-01274—Paul Lewis Maloney, District Judge.

Argued: October 20, 2016

Decided and Filed: February 10, 2017

Before: CLAY, KETHLEDGE, and DONALD, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Owen Dennis Ramey, LEWIS, REED & ALLEN PC, Kalamazoo, Michigan, for Appellants/Cross-Appellees. Thomas G. King, KREIS, ENDERLE, HUDGINS & BORSOS, P.C., Kalamazoo, Michigan, for Appellees/Cross-Appellants. **ON BRIEF:** Owen Dennis Ramey, Ronald W. Ryan, LEWIS, REED & ALLEN PC, Kalamazoo, Michigan, James Shek, Allegan, Michigan, for Appellants/Cross-Appellees. Thomas G. King, KREIS, ENDERLE, HUDGINS & BORSOS, P.C., Kalamazoo, Michigan, for Appellees/Cross-Appellants. Christina

M. Martin, PACIFIC LEGAL FOUNDATION, Palm Beach Gardens, Florida, Steven C. Liedel, Ted Seitz, DYKEMA GOSSETT PLLC, Lansing, Michigan, William H. Horton, GIARMARCO MULLINS & HORTON P.C., Troy, Michigan, Daniel B. Kohrman, AARP FOUNDATION LITIGATION, Washington, D.C., for Amici Curiae.

CLAY, J., delivered the opinion of the court in which DONALD, J., joined. KETHLEDGE, J. (pp. 14–17), delivered a separate dissenting opinion.

## OPINION

CLAY, Circuit Judge. Plaintiffs Wayside Church, Myron Stahl, and Henderson Hodgens (collectively "Plaintiffs") appeal the district court's order granting Defendants' motion to dismiss the complaint, which asserted that Defendant Van Buren County and its Treasurer, Defendant Karen Makay (collectively "Defendants"), violated Plaintiffs' Fifth Amendment rights by taking their property without just compensation. Defendants filed a cross-appeal arguing that the district court erred in determining that it could exercise jurisdiction over this case. For the reasons set forth below, we **VACATE** the judgment of the district court and **REMAND** with instructions to **DISMISS** the case for lack of subject matter jurisdiction.

## BACKGROUND

Plaintiffs each owned real property in Van Buren County, Michigan in 2011 but failed to pay property taxes for that year. On March 1, 2012, pursuant to the General Property Tax Act (the "GPTA"), Mich. Comp. Laws § 211.1 *et seq.*, these properties became subject to forfeiture and foreclosure. On April 24, 2014, the Van Buren County Circuit Court issued a foreclosure judgment, and title to these properties passed in fee simple absolute to the Defendant County.[1] A few months later, Defendant Makay, the treasurer for the Defendant County, sold these properties at an auction, pursuant to Michigan Compiled Laws § 211.78m. The minimum bid for each of the properties was calculated by totaling "[a]ll delinquent taxes, interest, penalties, and

---

[1] The GPTA provides that, after a hearing and a determination that foreclosure is warranted, the county's circuit court shall issue a foreclosure order specifying, *inter alia*, "[t]hat fee simple title to property foreclosed by the judgment will vest absolutely in the foreclosing governmental unit," with only limited exceptions. Mich. Comp. Laws § 211.78k(5)(b); *see also id.* § 211.78k(5)(d) (explaining that "the foreclosing governmental unit has good and marketable fee simple title to the property").

fees due on the property" plus the "expenses of administering the sale, including all preparations for the sale." Mich. Comp. Laws § 211.78m(16)(a). Plaintiff Wayside Church's former property had a minimum bid of $16,750, but at the public auction held on August 5, 2014, the property was sold for $206,000, meaning Defendant Van Buren County received surplus proceeds of $189,250. The minimum bid for the property formerly owned by Plaintiff Stahl was $25,000, but the property was sold at the same auction for $68,750, resulting in a surplus of $43,750. Finally, the property that had once been owned by Plaintiff Hodgens required a minimum bid of $5,900, but was sold for $47,750 at the same auction, meaning the Defendant County received $41,850 in surplus proceeds.

In this suit, Plaintiffs seek return of the surplus funds because they allegedly possessed a cognizable property interest in each of their foreclosed properties and in the surplus proceeds generated by the sales, in connection with which Defendants were required to pay just compensation pursuant to the Fifth Amendment. Plaintiffs did not seek to challenge the process by which these asserted interests were taken; instead, Plaintiffs sought a declaratory judgment from the district court that, by not returning the surplus funds to the former owner-Plaintiffs, Defendants effectuated a taking without just compensation in violation of the Fifth Amendment.

On December 11, 2014, Plaintiffs initiated this suit in federal court by filing a complaint against Defendants asserting the following claims: Count I asserted that Defendants violated Plaintiffs' rights under the Fifth Amendment by taking their property without just compensation; Count II asserted that Plaintiffs were entitled to monetary damages, pursuant to 42 U.S.C. § 1983, for the violation of their Takings Clause rights alleged in Count I; and Count III sought a declaratory judgment that the Michigan Circuit Court failed to enter judgment in accordance with a state statute and, thus, that the redemption period should have been tolled. In addition to asserting these claims against Defendants on their own behalf, Plaintiffs also sought to represent a class of former Michigan property owners who had lost title to their property for non-payment of taxes but whose former properties were sold for significantly more than the taxes owed.

On January 7, 2016, Defendants filed a motion to dismiss the complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), respectively. On November 9, 2015, the district

court issued an opinion denying the motion to dismiss for lack of subject matter jurisdiction but granting the motion for failure to state a claim.[2]

Plaintiffs filed a timely appeal on November 30, 2015, arguing that the district court erred in dismissing its claims pursuant to Rule 12(b)(6). This appeal was docketed as No. 15-2463. On December 9, 2015, Defendants filed a cross-appeal, docketed as No. 15-2525, challenging the district court's order denying its motion to dismiss for lack of jurisdiction.

## DISCUSSION

We are "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

### A.   Standard of Review

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Nat'l Rifle Ass'n of Am. v. Magaw*, 132 F.3d 272, 279 (6th Cir. 1997) (citing U.S. Const. art. III, § 2). This command requires us to dismiss cases that are not ripe for review. "Ripeness is more than a mere procedural question; it is determinative of jurisdiction. If a claim is unripe, federal courts lack subject matter jurisdiction and the complaint must be dismissed." *Arnett v. Myers*, 281 F.3d 552, 562 (6th Cir. 2002) (quoting *Bigelow v. Mich. Dep't of Nat. Res.*, 970 F.2d 154, 157 (6th Cir. 1992)).

"Challenges to subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) 'come in two varieties: a facial attack or a factual attack.'" *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 440 (6th Cir. 2012) (quoting *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 330 (6th Cir. 2007)). "A facial attack on the subject-matter jurisdiction"—like the one Defendants make here—"questions merely the sufficiency of the pleading." *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)). "When reviewing a facial attack, a district court takes the allegations in the

---

[2]The district court reached the opposite conclusion on the jurisdictional question as the district court in *Rafaeli, LLC v. Wayne County*, No. 14-13958, 2015 WL 3522546 (E.D. Mich. June 4, 2015), which found that the Tax Injunction Act and the comity doctrine bar plaintiffs from challenging the GPTA in federal court.

complaint as true," just as in a Rule 12(b)(6) motion. *Id.* (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325). This Court reviews facial challenges to subject matter jurisdiction *de novo*. *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004) (citing *Cob Clearinghouse Corp. v. Aetna U.S. Healthcare, Inc.*, 362 F.3d 877, 880 (6th Cir. 2004)).

A factual attack, on the other hand, raises a factual controversy requiring the district court to "weigh the conflicting evidence to arrive at the factual predicate that subject-matter does or does not exist." *Gentek Bldg. Prods., Inc.*, 491 F.3d at 330 (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 325). "Where a trial court's ruling on jurisdiction is based in part on the resolution of factual disputes, a reviewing court must accept the district court's factual findings unless they are clearly erroneous." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996) (citing *Ohio Nat'l Life Ins. Co.*, 922 F.2d at 326) (additional citations omitted). "However, review of the district court's *application of the law* to the facts is *de novo*." *Id.* (citing *Ynclan v. Dep't of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991); *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).

Because the district court treated the challenge as a facial attack and made no factual findings in reaching its decision, the appeal is treated the same way. *See DLX, Inc.*, 381 F.3d at 516. This Court thus reviews the judgment of the district court *de novo*. Moreover "where subject matter jurisdiction is challenged under Rule 12(b)(1), as it was here, the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

    **B.**    **Analysis**

Defendants argue that we lack jurisdiction for two reasons: (1) Plaintiffs' claims are not ripe for review; and (2) the Tax Injunction Act and principles of comity prevent jurisdiction from being exercised in federal court. We address these arguments in turn below.

    **1.**    **Ripeness of Takings Clause Claims**

"Applicable to the States through the Fourteenth Amendment, the Takings Clause of the Fifth Amendment 'provides that private property shall not be taken for public use, without just

compensation.'" *Wilkins v. Daniels*, 744 F.3d 409, 416 (6th Cir. 2014) (quoting *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005)). "As its text makes plain, the Takings Clause 'does not prohibit the taking of private property, but instead places a condition on the exercise of that power.'" *Lingle*, 544 U.S. at 536 (quoting *First English Evangelical Lutheran Church of Glendale v. Cty. of Los Angeles*, 482 U.S. 304, 314 (1987)). The Takings Clause's purpose is "not to limit the governmental interference with property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *Id.* at 537 (quoting *First English Evangelical Lutheran Church of Glendale*, 482 U.S. at 315). Consequently, "a State does not violate the Takings Clause 'until it refuses to compensate the owner.'" *Wilkins*, 744 F.3d at 417 (quoting *Hensley v. City of Columbus*, 557 F.3d 693, 695–96 (6th Cir. 2009)). Such compensation is not required to be "paid in advance of, or contemporaneously with, the taking." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 194 (1985). Therefore, a takings claim is not ripe "unless or until the State fails to provide an adequate postdeprivation remedy for the property loss." *Id.* at 195 (quoting *Hudson v. Palmer*, 468 U.S. 517, 532 n.12 (1984)).

In *Williamson County*, the Supreme Court established a two part test to determine when a takings claim is ripe. "A federal court may hear a takings claim only after: (1) the plaintiff has received a 'final decision' from the relevant government actor; and (2) the plaintiff has sought 'compensation through the procedures the State has provided for doing so.'" *Wilkins*, 744 F.3d at 417 (quoting *Williamson Cty.*, 473 U.S. at 186, 194–95). For plaintiffs to be obligated to seek redress in the state courts before litigating in federal court, the state procedures must be "reasonable, certain, and adequate . . . at the time of the taking." *Williamson Cty.*, 473 U.S. at 194 (quotation omitted).

This Court has previously acknowledged that the *Williamson County* test is not strictly jurisdictional but only "prudential," and need not be followed "when its application 'would not accord with sound process.'"[3] *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 541 (6th Cir. 2010) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1012 (1992)).

---

[3]The dissent makes much of the fact that the test set forth in *Williamson County* is only prudential. Dissent Op. at 14–15. However, the Tax Injunction Act, discussed *infra* at 12–13, utilizes substantially the same test and is jurisdictional, rather than prudential.

However, the requirement that aggrieved parties first seek compensation for the alleged taking in state court before bringing suit in federal court "will often serve important federalism interests." *Wilkins*, 744 F.3d at 418.  These interests are especially strong where, as here, the case "turn[s] on whether the plaintiff has a property interest as defined by state law." *Id.*  Therefore, we engage in the *Williamson County* analysis to determine whether jurisdiction is proper.  *See Miles Christi Religious Order*, 629 F.3d at 541 (continuing to follow *Williamson County* test after acknowledging that it is not jurisdictional because the Court "fail[ed] to see why this prudential requirement should be ignored here").

Defendants do not contest here that the first part of the test is satisfied and, instead, only appeal the district court's determination that no adequate state procedures existed in which Plaintiffs could challenge the alleged taking.  Defendants claim, as they did before the district court, that Plaintiffs could have challenged the tax law on constitutional grounds in state court or brought an inverse condemnation action.  The district court, however, found that such avenues of relief were foreclosed by the text of the GPTA.

Specifically at issue is the provision in the GPTA that addresses actions seeking monetary damages after foreclosure, codified as Michigan Compiled Laws § 211.78*l*.  This section provides as follows:

> If a judgment for foreclosure is entered under section 78k and all existing recorded and unrecorded interests in a parcel of property are extinguished as provided in section 78k, the owner of any extinguished recorded or unrecorded interest in that property who claims that he or she did not receive any notice required under this act shall not bring an action for possession of the property against any subsequent owner, but may only bring an action to recover monetary damages as provided in this section.

Mich. Comp. Laws § 211.78*l*(1).  These actions must be brought in a special court, called the Court of Claims, as "[t]he court of claims has original and exclusive jurisdiction in any action to recover monetary damages under this section."  *Id.* § 211.78*l*(2).  That court, however, cannot hear actions brought against the state of Michigan or any arm thereof if the claimant "has an adequate remedy upon his claim in the federal courts."  *Id.* § 600.6440.  Therefore, according to Plaintiffs, there is no adequate state forum for their claims, as they are required to seek redress in

the Court of Claims; but that court cannot hear cases where a federal remedy exists. Consequently, Plaintiffs contend that federal court is the only forum where they can seek relief.

The district court agreed with Plaintiffs and found that "the only cause of action permitted by the GPTA is one for lack of notice (due process); specifically, the law allows a cause of action against a county treasurer for monetary damages *only* when a property owner 'claims that he or she did not receive any notice required under this act.'" (R. 38, PageID #409 (quoting Mich. Comp. Laws § 211.78*l*).) The court went on to note that the Court of Claims was the only court that could hear any challenges to the GPTA, but that federal claims were barred in that forum. The district court concluded that because the "Michigan Court of Claims has exclusive and original jurisdiction over claims under the GPTA against the County Treasurer," and because "Michigan absolutely divests jurisdiction from the Michigan Court of Claims where a plaintiff 'has an adequate remedy upon his claim in the federal courts,'" the state had failed to provide an adequate remedy. (*Id.* at 410 (quoting Mich. Comp. Laws § 600.6440).) Based on this analysis, the court concluded that the claim was ripe for review under the *Williamson County* test.

This analysis, however, suffers from two fatal flaws. First, and most importantly, in reading the above quoted section, the district court read subsection (1) to bar all actions challenging the GPTA except those challenging the notice procedures. However, the plain language of the text does not require such a restrictive reading. Instead, the statute limits a plaintiff to monetary damages when two conditions are present: (1) the former owner's rights have been extinguished by foreclosure proceedings for failure to pay property taxes; *and* (2) the former owner is challenging whether he received the notice required by other provisions in the GPTA. While the first condition is undoubtedly present in the case at bar, Plaintiffs here have stated explicitly that they are *not* challenging the notice provided to them, either on statutory or constitutional grounds. Because Plaintiffs' Takings Clause claim does not meet both criteria, the restrictions on relief do not apply to this action.

Second, the district court erred in determining that the Court of Claims has exclusive jurisdiction over *all* claims challenging the GPTA. In arriving at that conclusion, the court conflated the terms "section" and "act." It is clear from the text that the Michigan legislature

used the term "act" to refer to the entire GPTA and the term "section" to refer to the more specific provisions in the act.  For example, in providing definitions for the GPTA, the text states that "[a]s used in this section and sections 78a through 155 . . . (a) 'Foreclosing governmental unit' means . . . [t]he treasurer of a county."  Mich. Comp. Laws § 211.78(8).  This language makes clear that "section" refers to individual parts of the general statute, and not the entire GPTA.  *See also id.* § 211.78*l* ("If a judgment for foreclosure is entered under section 78k, . . . .").  By contrast, when referring to the entire statutory scheme, the legislature clearly indicated so, as seen in the provision regarding the purpose of the GPTA, which states, "Therefore, the powers granted in this act relating to the return of property for delinquent taxes constitute the performance by this state or a political subdivision of this state of essential public purposes and functions."  *Id.* § 211.78(1).

By the plain reading of the language at issue in this case, then, it is apparent that the word "section" in the phrase limiting jurisdiction to the Court of Claims—"The court of claims has original and exclusive jurisdiction in any action . . . under this section"—the legislature was limiting jurisdiction for claims brought pursuant to § 211.78*l*, not claims brought pursuant to the entire GPTA.  As established above, § 211.78*l* only discusses claims by former owners challenging the notice provisions, which is not the case here.  Therefore, Plaintiffs were not required to bring their actions in the Court of Claims and therefore were not subject to the bar that "[n]o claimant may be permitted to file claim in [the Court of Claims] against the state nor any department, . . . arm or agency thereof who has an adequate remedy upon his claim in the federal courts."  *Id.* § 600.6440.  Consequently, the district court erred in concluding that the GPTA provided no remedy for Plaintiffs' constitutional claims.

Moreover, reading the statute in the way directed by the district court would mean the statute would be unconstitutional, which would violate the constitutional avoidance statutory construction rule.  *See Carey v. South Dakota*, 250 U.S. 118, 122 (1919) ("Where a statute is reasonably susceptible of two interpretations, by one of which it would be clearly constitutional and by the other of which its constitutionality would be doubtful, the former construction should be adopted." (citations omitted)); *see also In re Treasurer of Wayne Cty. for Foreclosure*, 732 N.W.2d 458, 462 (Mich. 2007) (requiring courts to "presume a statute is constitutional and

construe it as such, unless the only proper construction renders the statute unconstitutional" (citation omitted)). If the district court were right in its interpretation, the Michigan legislature would have created a statutory scheme by which plaintiffs were barred from asserting all but one federal right—due process notice—in state court. Such a scheme could not stand, as "[a] jurisdictional rule cannot be used as a device to undermine federal law, no matter how evenhanded it may appear." *Haywood v. Drown*, 556 U.S. 729, 739 (2009); *see also Felder v. Casey*, 487 U.S. 131, 138 (1988) ("Under the Supremacy Clause of the Federal Constitution, '[t]he relative importance to the State of its own law is not material when there is a conflict with a valid federal law,' for 'any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield.'" (quoting *Free v. Bland*, 369 U.S. 663, 666 (1962)). The Michigan Supreme Court also recognized the same limitation when discussing § 211.78*l* of the GPTA, and held that, in the context of a due process claim to the statute, "[b]ecause the Legislature cannot create a statutory regime that allows for constitutional violations with no recourse, that portion of the statute . . . is unconstitutional and unenforceable." *In re Treasurer of Wayne Cty.*, 732 N.W.2d at 463. We therefore conclude that § 211.78*l* of the GPTA does not bar Plaintiffs from filing their Takings Clause claims in state court.

Pursuant to *Williamson County*, we still must determine whether Plaintiffs are generally allowed to bring their Takings Clause and § 1983 claims in Michigan state court, independent of § 211.78*l* of the GPTA, or whether there were no "reasonable, certain, and adequate" procedures for challenging a taking, thereby allowing Plaintiffs to seek redress in federal court first. The Michigan Court of Appeals has previously held that "[t]he Court of Claims is the proper forum in which to seek redress where a plaintiff alleges an already accomplished inverse condemnation by the State of Michigan." *Lim v. Mich. Dep't of Transp.*, 423 N.W.2d 343, 345 (Mich. Ct. App. 1988) (citing *Hill v. State Highway Comm'n*, 170 N.W.2d 18 (Mich. 1969)) (additional citations omitted). Jurisdiction would normally lie in that court as it has exclusive jurisdiction over all claims "statutory or constitutional, liquidated or unliquidated, ex contractu or ex delicto, or any demand for monetary, equitable, or declaratory relief . . . against the state or any of its departments or officers notwithstanding another law that confers jurisdiction of the case in the circuit court." Mich. Comp. Laws § 600.6419(1)(a).

Plaintiffs' action, however, is not an action against the State of Michigan. Instead, Plaintiffs have sued Van Buren County and the county treasurer, as the county treasurer is the one responsible for effectuating the alleged taking of Plaintiffs' properties. *See* Mich. Comp. Laws §§ 211.78(8)(a), 211.78k(5). (*See also* R.16-2, Judgment & Order of Judicial Forfeiture, PageID #181–82.) Counties, however, "are never within the jurisdiction of the Court of Claims." *Doan v. Kellogg Cmty. Coll.*, 263 N.W.2d 357, 359 (Mich. Ct. App. 1977); *see also Cameron v. Monroe Cty. Probate Court*, 579 N.W.2d 859, 862 (Mich. 1998) (determining that the circuit court had jurisdiction over a complaint against a county court because "[t]he state was not made a party to the complaint, nor did the court attempt to order the state to pay the complaint"). Thus, *Lim* is inapplicable to Plaintiffs' case and does not require them to file in the Court of Claims. *See Lim*, 423 N.W.2d at 345.

Furthermore, the argument that the Michigan jurisdictional scheme essentially requires that all claims against political subdivisions of the state be litigated in federal court when there is an adequate federal remedy ignores the Michigan state courts' interpretation of its own jurisdictional statutes. In *Gordon v. Sadasivan*, 373 N.W.2d 258 (Mich. Ct. App. 1985) (per curiam), the Court of Appeals of Michigan addressed the situation where a circuit court dismissed a suit brought pursuant to § 1983 for lack of jurisdiction, as it thought the case belonged in the Court of Claims. *Id.* at 259–60. The *Gordon* court first recognized that "state courts exercise concurrent jurisdiction over § 1983 claims." *Id.* at 261. After determining that there was an adequate remedy that the plaintiff could have pursued in federal court, as his claim was not barred by the Eleventh Amendment, the Michigan Court of Appeals determined that the Court of Claims lacked subject matter jurisdiction over the claim pursuant to Michigan Compiled Laws § 600.6440. *Id.* However, the court further determined that the *circuit court* did, in fact, have jurisdiction over the plaintiff's § 1983 claims. *Id.* Put another way, the *Gordon* court noted that, while § 600.6440 may divest the Court of Claims of jurisdiction when there is a remedy available in federal court, the result is not that *no* remedy can be sought in state court; instead, the proper forum to litigate such claims is the circuit court.[4] *Id.* Based on this interpretation of

---

[4] Indeed, the circuit courts of Michigan routinely decide cases involving causes of action for which a remedy in federal court exists. *See, e.g.*, *Mudge v. Macomb Cty.*, 580 N.W.2d 845 (Mich. 1998); *Dampier v. Wayne*

the relevant jurisdictional statutes, we find that Plaintiffs were not barred from bringing their actions in the state circuit court and thus were not deprived of a state forum for vindicating their federal constitutional rights.

Because the clearer reading of the relevant statutes allows Plaintiffs to bring their cases, including their federal claims, in state court, and because this Court is required to read statutes to be constitutional if possible, we conclude that Plaintiffs have failed to establish that jurisdiction in federal court is proper because the state provided no "reasonable, certain and adequate [procedures] at the time of the taking." *Williamson Cty.*, 473 U.S. at 194 (quotation omitted). The district court thus erred in finding that it had jurisdiction to entertain this action.

### 2.     Tax Injunction Act and Comity

The district court also determined that the Tax Injunction Act does not bar jurisdiction here. That Act declares that "[t]he district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. This statute is jurisdictional, *Hedgepeth v. Tennessee*, 215 F.3d 608, 611–12 & n.4 (6th Cir. 2000), and prevents federal courts from awarding declaratory or injunctive relief to plaintiffs who challenge state tax laws. *Nat'l Private Truck Council, Inc. v. Okla. Tax Comm'n*, 515 U.S. 582, 586–87 (1995).

Another similar but distinct limitation on federal court jurisdiction over challenges to state tax laws is the principle of comity. This principle "prohibits 'taxpayers . . . from asserting § 1983 actions against the validity of state tax systems in [the lower] federal courts.'" *Chippewa Trading Co. v. Cox*, 365 F.3d 538, 541 (6th Cir. 2004) (alterations in original) (quoting *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981)). "While this comity principle reflects some of the same concerns that led Congress to enact the Tax Injunction Act, 28 U.S.C. § 1341, it stands on its own bottom, and extends to cases seeking monetary damages as well as injunctive or other equitable relief." *Id.* (footnote omitted) (citing *Fair Assessment*, 454 U.S. at 110). Only when the states do not provide a "plain, adequate, and complete" remedy

---

*Cty.*, 592 N.W.2d 809 (Mich. Ct. App. 1999); *Morden v. Grand Traverse Cty.*, 738 N.W.2d 278 (Mich. Ct. App. 2007) (per curiam).

in their courts should the federal courts be able to exercise jurisdiction despite the principle of comity. *Id.* (quoting *Fair Assessment*, 454 U.S. at 116).

Plaintiffs here brought an action for both a declaratory judgment and monetary damages, and, thus, both the Tax Injunction Act and comity are at play. Because the two doctrines only allow federal courts to exercise jurisdiction when states courts cannot provide "plain, adequate, and complete" remedies, only one analysis is required. *Fair Assessment*, 454 U.S. at 116 n.8 ("We discern no significant difference, for purposes of the principles recognized in this case, between remedies which are 'plain, adequate, and complete,' as that phrase has been used in articulating the doctrine of equitable restraint, and those which are 'plain, speedy and efficient,' within the meaning of § 1341." (citations omitted)). "[S]tate remedies are plain, adequate, and complete if they provide the taxpayer with a full hearing and judicial determination at which the taxpayer may raise any federal constitutional objections to the tax." *In re Gillis*, 836 F.2d 1001, 1010 (6th Cir. 1988) (footnote omitted). As has already been discussed above in the ripeness context, the district court and Plaintiffs erred in concluding that Plaintiffs could not challenge the GPTA on constitutional grounds in state court. In fact, such a plain, adequate, and complete avenue for redressing their claims was available. We therefore conclude that the district court erred in finding that the claims were not barred by the Tax Injunction Act and the doctrine of comity, and as a result, mistakenly determined that it could exercise subject matter jurisdiction over Plaintiffs' claims. Consequently, the district court lacked jurisdiction to entertain this action.

## CONCLUSION

For the foregoing reasons, we **VACATE** the judgment of the district court and **REMAND** with instructions to **DISMISS** the action for lack of subject matter jurisdiction.

---

**DISSENT**

---

KETHLEDGE, Circuit Judge, dissenting.  In this case the defendant Van Buren County took property worth $206,000 to satisfy a $16,750 debt, and then refused to refund any of the difference.  In some legal precincts that sort of behavior is called theft.  But under the Michigan General Property Tax Act, apparently, that behavior is called tax collection.  The question here is—or at least in my view should be—whether the County's action is a taking under the federal Constitution.

Our court declines to answer that question because it holds—under the Supreme Court's decision in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172 (1985)—that the plaintiffs here must seek a remedy in state court rather than federal.  I respectfully disagree with that conclusion.  To begin with first principles:  the federal courts indisputably have jurisdiction over this case, *see* 28 U.S.C. § 1331, and the federal courts "have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996).  But *Williamson County* singles out takings claims for disfavored treatment so far as the availability of a federal forum is concerned. Specifically, if a plaintiff alleges that a State has violated the federal Takings Clause, and state law provides a "reasonable, certain, and adequate" remedy for the violation, then the plaintiff must pursue that remedy in state court. *Williamson County*, 473 U.S. at 194.  As the majority points out, however, this doctrine is merely "prudential," which is to say discretionary and judge-created.  *See Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 733-34 (1997).  Thus we may dispense with it "when its application 'would not accord with sound process.'" *Miles Christi Religious Order v. Twp. of Northville*, 629 F.3d 533, 541 (6th Cir. 2010) (quoting *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1012 (1992)).

We have neither certainty nor sound process here.  Whether Michigan substantive law provides a remedy for the type of taking alleged here is hardly certain.  True, Michigan law provides a cause of action for so-called "inverse condemnations," in which the government takes

a property interest without a formal exercise of eminent domain.  *See Merkur Steel Supply, Inc. v. Detroit,* 680 N.W.2d 485, 495 (Mich. Ct. App. 2004).  And in adjudicating those claims the Michigan courts have recognized what they call "de facto" takings, for which "no exact formula" exists.  *Id*.  But the Michigan courts have not yet determined, as a matter of state law, whether a local government's appropriation of property pursuant to the taxing power generally, or to the General Property Tax Act in particular, is a taking to the extent the government takes property worth more than the amount of taxes owed.  Perhaps the Michigan courts will recognize this kind of inverse-condemnation claim as viable, not least because of the gross injustice—both equitably, and from the standpoint of the interests protected by takings law—caused by the kind of governmental action on display here.  (In the County's defense, the Michigan Act appears actually to *require* the County to short the taxpayer the difference between the value of the property forfeited and the amount of taxes and penalties owed.  *See* M.C.L. § 211.78m(8).)  But it overstates matters to say the Michigan courts' recognition of this type of inverse-condemnation claim is "certain."

Equally problematic is the jurisdictional uncertainty that awaits the plaintiffs in state court.  When they file their inverse-condemnation claim there, they must choose between two courts:  the state circuit court, which is a trial court of general jurisdiction, or the state court of claims, which (like its federal counterpart) has jurisdiction over monetary claims "against the state or any of its departments[.]"  *See* M.C.L. §§ 600.605 (circuit court), 600.6419 (court of claims).  But no matter which court the plaintiffs choose, they will face a strong argument that they chose wrongly.  The majority suggests the plaintiffs should file in circuit court, which is remarkable given the statute's plain statement that the court of claims's jurisdiction over monetary claims against the state or its departments "is exclusive[,]" M.C.L. § 600.6419(1), and given the Michigan Court of Appeals's plain holding that "[t]he Court of Claims is the proper forum in which to seek redress where a plaintiff alleges an already accomplished inverse condemnation[.]"  *Lim v. Mich. Dep't of Transp.*, 423 N.W.2d 343, 345 (Mich. Ct. App. 1988).  Perhaps, as the Majority suggests, the Michigan courts will distinguish *Lim* on the ground that the plaintiffs here are suing a subdivision of the State rather than the State itself.  But perhaps not, since counties are instrumentalities of the State.  *See, e.g., Wayne Cty. Bd. of Comm'rs v. Wayne Cty. Airport Auth.*, 658 N.W.2d 804, 828 (Mich. Ct. App. 2002); *Pomann, Callanan &*

*Sofen, P.C. v. Wayne Cty. Dep't of Soc. Servs.*, 419 N.W.2d. 787, 789 (Mich. Ct. App. 1988). And the Michigan Court of Appeals has held that a monetary claim against a county agency belongs in the court of claims, whose exclusive jurisdiction "encompasses all claims against the state and its instrumentalities for money damages." *Pomann, Callanan & Sofen*, 419 N.W.2d. at 789.

That said, the jurisdiction of the court of claims over this case is likewise uncertain: under another statutory provision, no claimant "who has an adequate remedy upon his claim in the federal courts" may bring suit against the state or its departments in the court of claims. M.C.L. § 600.6440. Given that the plaintiffs assert a federal constitutional claim and that the federal courts exist in part to provide a remedy for such claims, § 600.6440 seems to direct these plaintiffs to litigate their claims in federal court rather than state.

Thus, as read by the majority, *Williamson County* sends these plaintiffs to state court, while state law directs them back to federal. The majority resolves this dilemma by declaring the state jurisdictional regime unconstitutional to the extent it would require a federal constitutional claimant to bring suit in federal court. Maj. Op. at 9-12. And thus, contrary to what the Michigan statutes actually say, the majority opines that the plaintiffs may bring suit in the state circuit court.

At this point one senses we have lost our constitutional bearings. The plaintiffs have asked us to adjudicate a claim arising under the federal Constitution, which is the most important type of claim that we can adjudicate. The claim itself is substantial: that, when a state takes fee simple to property in satisfaction of a tax obligation, the state effects a taking to the extent the property is worth more than the taxes and penalties owed. Complaint ¶ 4. Congress has granted us jurisdiction over that claim. We have a strict duty to exercise that jurisdiction. Meanwhile, the state jurisdictional statute, specifically § 600.6440, expresses an affirmative preference that we adjudicate the claim. And yet—in the interest of "federalism," no less—we reject the State's preference, declare the state jurisdictional regime (as set forth by the statute's plain terms) unconstitutional as applied here, disregard our strict duty to exercise the jurisdiction assigned to us by Congress, and send the plaintiffs back to state court, where they face procedures that as a

Nos. 15-2463/2525        *Wayside Church, et al. v. Van Buren Cty., et al.*        Page 17

practical matter are "confusing and uncertain[.]" *Kruse v. Village of Chagrin Falls*, 74 F.3d 694, 698 (6th Cir. 1996). The result is not "sound process" but a welter of contradictions.

One further irony remains. The majority cites *Haywood v. Drown*, 556 U.S. 729 (2009), as support for its conclusion that Michigan's jurisdictional regime cannot, consistent with the federal Constitution, mean what its relevant jurisdictional provisions say. In *Haywood*, the Supreme Court held that state jurisdictional statutes that are designed to discriminate against "disfavored federal claim[s]" or that serve "as a device to undermine federal law" violate the Supremacy Clause. 556 U.S. at 738-39, 741. But here, in clear contrast to *Haywood* (which involved suits brought by inmates against corrections officers), there is no reason at all to think that, in directing federal takings claims to federal court, the State sought to undermine or discriminate against those claims in any way. Quite the contrary: if anyone has undermined the adjudication of federal takings claims against states and local governments, it is the federal courts—by the application of *Williamson County*.

I respectfully dissent.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Nos. 15-2463/2525

WAYSIDE CHURCH, an Illinois Not-For-Profit
(Ecclesiastical) Corporation; MYRON W. STAHL;
HENDERSON HODGENS, individually and on behalf
of a class of all others similarly situated,
    Plaintiffs - Appellants/Cross - Appellees,

v.

VAN BUREN COUNTY, in its individual Michigan
municipal capacity and on behalf of a class of all other
Michigan counties similarly situated; KAREN MAKAY,
in her individual official capacity as Treasurer of Van Buren
County and on behalf of a class of all other Treasurers
of Michigan counties similarly situated,
    Defendants - Appellees/Cross - Appellants.

FILED
Feb 10, 2017
DEBORAH S. HUNT, Clerk

Before:  CLAY, KETHLEDGE, and DONALD, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION WHEREOF, it is ORDERED that the judgment of the district court is VACATED and REMANDED with instructions to DISMISS the case for lack of subject-matter jurisdiction.

                            **ENTERED BY ORDER OF THE COURT**

                            _____
                            Deborah S. Hunt, Clerk