UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WAYSIDE CHURCH, et al.,                    No. 1:14-CV-1274

              Plaintiffs,                    Hon. Paul L. Maloney
v.

COUNTY OF VAN BUREN, et al.,

              Defendants.
_____/


**BRIEF IN SUPPORT OF CLASS REPRESENTATIVES' EMERGENCY MOTION FOR PROTECTIVE ORDER GOVERNING NON-PARTY SOLICITATIONS OF NAMED PLAINTIFFS AND CLASS MEMBERS**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES..................................................................................................... iii

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

    I.    Following eight years of complex litigation and extensive negotiations, the parties agree to a District-wide settlement........................................................................................ 2

    II.   In an obvious attempt to undermine the Settlement, Visser sends improper solicitations to Class Members, including named Plaintiffs known to be represented by Class Counsel.... 3

    III.  Visser's conduct in *Fox v. County of Saginaw* corroborates the inference that Visser is engaged in a widespread, improper solicitation campaign................................................... 5

ARGUMENT ...................................................................................................................... 7

    I.    This Court has the duty and authority to restrict abusive communications directed at class members by non-party counsel........................................................................................ 7

    II.   Visser's solicitations are abusive and violate Fed. R. Civ. P. 23. ....................................... 9

    III.  Visser's violations of Rule 23 warrant injunctive relief, curative notice, an accounting of solicitation activities, and the rescission of any agreements entered between Visser and Class Members. ................................................................................................................ 12

    IV.  Visser's communications also violate the Michigan Rules of Professional Conduct, providing another basis for the requested relief. ................................................................. 14

CONCLUSION................................................................................................................... 15

# INDEX OF AUTHORITIES

**Cases**

*Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D. 293 (N.D. Ill. 1997) ................................... 14, 15

*Bobbitt v. Acad. of Ct. Reporting,*
   No. CIV A 07-10742, 2008 WL 4298458 (E.D. Mich. Sept. 18, 2008).................................... 8

*Chalian v. CVS Pharmacy, Inc.,*
   No. 2:16-CV-8979-AB-AGR, 2020 WL 7347866 (C.D. Cal. Oct. 30, 2020)......................... 11

*Domingo v. New England Fish Co.*, 727 F.2d 1429 (9th Cir. 1984) ........................................... 11

*Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843 (2d Cir. 1980) ................................................... 9

*Fox v. Saginaw Cnty., Michigan*, 35 F.4th 1042 (6th Cir. 2022)................................... 7, 8, 12, 13

*Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758 (N.D. Ohio 2010)................................................ 8

*Georgine v. Amchem Prod., Inc.*, 160 F.R.D. 478 (E.D. Pa. 1995) ............................................. 11

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)........................................................................ 7, 8, 9

*In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005).............. 10

*In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239 (N.D. Cal. 2000)................. 10, 13

*In re Sch. Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988)............................................................... 8

*James v. Detroit Prop. Exch.*, No. 18-13601, 2019 WL 9098024 (E.D. Mich. July 11, 2019).... 13

*Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055 (W.D. Wash. 2019) ................................ 12

*Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019) ...................................................... 2

*Loatman v. Summit Bank*, 174 F.R.D. 592 (D.N.J. 1997)........................................................... 11

*Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891 (N.D. Cal. 2018) ........................................... 10

*McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635 (S.D. Miss. 2016) ........ passim

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344 (6th Cir. 2009) ........................................................ 13

*Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434 (Mich. 2020).................................................... 2

*Scott v. Chipotle Mexican Grill, Inc.,*
   No. 12-CV-08333 ALC SN, 2014 WL 4852063 (S.D.N.Y. Sept. 29, 2014) .......................... 15

*Tolmasoff v. Gen. Motors, LLC*,
  No. 16-11747, 2016 WL 3548219 (E.D. Mich. June 30, 2016) ................................................ 8

*Wayside Church v. Van Buren Cty.*, 847 F.3d 812 (6th Cir. 2017) ................................................ 2

**Other Authorities**

3 Newberg and Rubenstein on Class Actions § 9:10 (6th ed.) ................................................ 8

3 Newberg and Rubenstein on Class Actions § 9:7 (6th ed.) ................................................ 9

**Rules**

Fed. R. Civ. P. 23(d)(1) ................................................................................................................ 8

MRPC 4.2(a) ................................................................................................................ 14, 15

MRPC 7.1(a) ................................................................................................................ 15

## INTRODUCTION

Class Representatives seek emergency relief to stop the covert, abusive, and unethical solicitation of named Plaintiffs and Class Members by Visser and Associates, PLLC ("Visser").

After eight years of litigation, the parties in this action reached a proposed settlement, which will afford significant and immediate relief to Class Members.[1] To ensure that potential Class Members make an informed decision regarding whether to accept such relief, this Court has the authority to regulate communications with potential Class Members. Visser knows this because a judge in a separate action issued an order to show cause why Visser should not be sanctioned for apparently abusive solicitations of class members.

Nonetheless, after learning of this proposed settlement, Visser has commenced another improper solicitation campaign, with the plain purposes of poaching clients, seeking opt-outs, and undermining this Court's ability to efficiently manage this class action. Such correspondence includes misleading statements and omits material information regarding this case and the preliminarily approved settlement. Compounding the impropriety, Visser has solicited at least four named Plaintiffs, known to be represented by counsel, in blatant contempt for ethical rules.

Visser's campaign is abusive, unethical, and inexcusable. Protective relief is therefore warranted under Federal Rule of Civil Procedure 23 and the Court's inherent authority to regulate attorney misconduct.

---

[1] The Preliminary Approval Order defines the Settlement Class as: "All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by a County and which was sold during the Class Period by that County." (ECF No. 234, PageID.4133.). As the Preliminary Approval Order explains, "Eligible Property" means a parcel of real property foreclosed by a County for the non-payment of real-property taxes, and which was sold during the Class Period by a County for an amount in excess of the Minimum Sale Price. (*Id.*) The Class Period refers to the time for each County during which that County acted as a foreclosing governmental unit, beginning no earlier than January 1, 2013 and ending on December 31, 2020. (*Id.*)

## BACKGROUND

**I.      Following eight years of complex litigation and extensive negotiations, the parties agree to a District-wide settlement.**

This case has a complex procedural history. Plaintiffs filed their Complaint in 2014, seeking to recover surplus proceeds following a tax-foreclosure sale. (ECF No. 1.) Over the next several years, the matter bounced between this Court and the Sixth Circuit as landmark decisions altered the applicable law.[2]

During the latest appeal, the Sixth Circuit sent the case to mediation. (Declaration of David Fink ¶ 9, ECF No. 222, PageID.3719.) Beginning in June 2021 and continuing through December 2022, the parties conducted extensive negotiations through the Sixth Circuit Mediation Office. (*Id.*) During the mediation, the Mediation Office suggested inviting other counties in this District (the putative defendant class members) to participate. (*Id.* ¶ 10, PageID.3720.) And that is what occurred. (*Id.*) After extensive negotiations, the parties reached a framework for a settlement on a District-wide basis and obtained approval of the settlement agreement (the "Settlement") by County Boards of Commissioners in November and December 2022. (*Id.* ¶¶ 9-12, PageID.3719-3720.) Over the next several weeks, counties' counsel had to communicate with county representatives and insurance carriers before they could finalize the Settlement. (*Id.* ¶ 12, PageID.3720.)

---

[2] Between 2014 and 2020, this case was dismissed for failure to state a claim (ECF No. 38); appealed; remanded to dismiss for lack of jurisdiction, *see Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 822 (6th Cir. 2017); dismissed for lack of jurisdiction (ECF No. 45); and reopened but stayed pending *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162 (2019) and *Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434 (Mich. 2020). The *Knick* and *Rafaeli* decisions provided this case new life, prompting the Court to lift the stay. (ECF No. 93.) Defendants then moved to dismiss the action for various reasons. (ECF No. 94) This Court granted in part (and denied in part) Defendants' motion to dismiss. (ECF No. 140.) Defendants appealed (ECF No. 160), and the Court stayed the case again pending appeal (ECF No. 162).

Plaintiffs believe the Settlement is an extraordinary outcome for Class Members, given the risks of continued litigation. It is a claims-made settlement, which provides for the payment of 80% of the surplus proceeds, including claims dating back to 2013. On Friday, March 24, 2023, the Court granted preliminary approval of the Settlement and conditionally certified the Settlement Class and Sub-Classes. (ECF No. 234.)

## II.    In an obvious attempt to undermine the Settlement, Visser sends improper solicitations to Class Members, including named Plaintiffs known to be represented by Class Counsel.

After learning of the proposed Settlement, on December 12, 2022, Visser filed a motion to intervene in this matter on behalf of "numerous parties," complaining about the proposed Settlement. (ECF No. 166.) This Court quickly denied that motion, correctly observing that it was a procedurally improper attempt to oppose the proposed Settlement. (ECF No. 186, PagdeID.2745.) This did not end Visser's campaign to undermine the Settlement through improper means.

A few weeks later, Plaintiffs' counsel received notice that, since the proposed Settlement had become public, Visser had been soliciting Class Members—including at least four named Plaintiffs known to be represented by counsel—in willful disregard of the ethical rules, *see* Argument Section IV, *infra*.

Visser's correspondence states that the recipients have been identified as a taxpayer that may have been victimized "by a foreclosure for unpaid property taxes" and the retention of "surplus proceeds" by a county treasurer. (*See* Exhibit 1, January through March 2023 Visser Correspondence.) It further states that recipients "have a potential real claim to recover funds the county wrongfully withheld," and that, although "taxing authorities" have historically been "keep[ing] all the money," Visser "[n]ow . . . believe[s] there is relief available to those victims

3

and their estates or heirs." (*Id.*) The letter goes on to state that, if the recipients are "interested in knowing more about our claims process or are interested in pursuing a claim," they can contact Visser's office. (*Id.*)

Visser's solicitation is misleading in multiple respects. First, it omits the existence of this proceeding. That omission conveys that there is no pre-existing action designed to protect the interests of potential Class Members and frustrates their ability to make an informed decision about whether to proceed individually. Second, the solicitation does not disclose the existence of the proposed Settlement, which will afford significant, immediate relief. Rather, the correspondence obfuscates such relief by suggesting that Visser must be engaged to pursue its vague "belie[f] there is relief available." *Id.* Third, by suggesting that there exists a "claims process," Visser has improperly suggested that there exists a straightforward mechanism to recover surplus proceeds, which is untrue (except if Class Members file a claim under the Settlement), due to the risks of litigation. Finally, Visser's use of the phrase "our claims process" is misleading insofar as it suggests that retaining Visser may be necessary to secure relief.

Visser's sending misleading solicitations to Class Members is sufficient, in and of itself, to warrant protective action. But the need for judicial intervention is particularly acute because Visser has, outrageously, contacted at least four named Plaintiffs and proposed class representatives—Henderson Hodgens, Brandy L. Martin, Carl Waite, and Royce D. Covell—who Visser has known are represented by counsel.[3] *See McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635, 640 (S.D. Miss. 2016) (observing named plaintiff "was obviously a represented party").

---

[3] Other potential Class Members known by Plaintiffs' counsel to be in receipt of the misleading solicitations include Teresa Miller DeVos, Mary Panis, Lorna Carey, and Danielle Ahmadieh. (*See* Exhibit 1, January through March 2023 Visser Correspondence.)

In support of Visser's December 12, 2022 motion to intervene, Visser filed the proposed Settlement as an exhibit. (ECF No. 166-9.) The proposed Settlement identified Henderson Hodgens—a lead plaintiff in this action since 2014—as the proposed class representative for the Settlement Class and the Sub-Class related to Van Buren County, and it identified Brandy L. Martin, Carl Waite, and Royce D. Covell as the proposed class representatives for the Settlement Sub-Classes related to Eaton County, Dickinson County, and Newaygo County, respectively. (ECF No. 166-9, ¶¶ 3.4.12, 3.4.13, 3.4.35, PageID.2324-2325.) Then, on January 10, 2023, Plaintiffs filed a Second Amended Complaint, in which Martin, Covell, and Waite are named Plaintiffs. (See Second Am. Compl. ¶¶ 14-15, ECF 187, PageID.2747.) Visser has thus been aware, since at least December 2022, that these four Plaintiffs are represented by counsel. Nonetheless, Visser sent the misleading solicitations to these Plaintiffs after January 10, 2023. (*See* Exhibit 1, January through March 2023 Visser Correspondence.)

Given that Visser is soliciting even named Plaintiffs, it is likely that its misleading solicitation campaign is pervasive. And Visser's prior attempt to intervene in the case confirms that the purpose of this campaign is to poach Class Members and solicit opt-outs while depriving them of material information.

### III. Visser's conduct in *Fox v. County of Saginaw* corroborates the inference that Visser is engaged in a widespread, improper solicitation campaign.

Additional evidence that Visser is engaged in a far-reaching, improper solicitation campaign lies in the docket of *Fox v. County of Saginaw*, Case No. 19-cv-11887 (TLL) (E.D. Mich.), a class action involving similar claims.

In *Fox*, the lead plaintiff, Fox, filed a motion for a protective order that would, among other things, enjoin Visser from continuing to solicit members of the class. Fox claimed that Visser was

5

"improperly and inappropriately solicit[ing]" class members to pillage the class, including through sending "communications [that] contained misleading statements and omit[ted] material and crucial information." Mot. for Protective Order at 1, *Fox*, Case No. 19-cv-11887 (TLL) (E.D. Mich.), ECF No. 129, PageID.2542. Fox further claimed that Visser had violated the Michigan Rules of Professional Conduct by, among other misconduct, contacting class members known to be represented by counsel. Br. in Support of Mot. for Protective Order at 13-16, *Fox*, Case No. 19-cv-11887 (TLL) (E.D. Mich.), ECF No. 129, PageID.2563-2566. *Fox* further observed that Visser's campaign appeared vulturine, as Visser was "retaining class members for an excessive, if not outrageous 50% contingency fee." *Id.* at 4, PageID.2554. The undersigned reasonably infer that Visser is likely exacting the same excessive fees from individuals seeking to recover surplus proceeds here. (*See* Exhibit 2, Visser Retainer Agreement Filed in *Fox*.)

The court in *Fox* issued an order to show cause why a protective order should not be entered, observing that it "has the authority to control [abusive] communications with the class before and after class certification." Order to Show Cause, *Fox*, Case No. 19-cv-11887 (TLL) (E.D. Mich.), ECF No. 150, PageID.3341 (internal quotation marks and citations omitted). But then, following a purportedly transformative meet-and-confer with Visser, Fox represented that a protective order was no longer necessary because, in effect, Visser had admitted it made a mistake and learned its lesson. *See* Response to Show Cause Order, *Fox*, Case No. 19-cv-11887 (TLL) (E.D. Mich.), ECF No. 152. Fox represented that Visser "explained [its] perspective that this was [its] first in-depth encounter with complex class action procedure" and that Visser had been "under the misapprehension that class-wide relief was not viable." *Id.* ¶ 4, PageID.3347. But, now, according to Fox, Visser supposedly "underst[ood], agree[d], and support[ed]" that "[t]he Class mechanism [wa]s the only effective means of full and complete redress for victims of the

6

unconstitutional taking . . . ." *Id.* ¶ 5(a), PageID.3347. Accordingly, Fox stated, Visser had agreed to stop soliciting class members. *Id.* ¶ 2(a), PageID.3346.[4] As a result of these representations, the court decided that a protective order was not necessary. *See* Order, *Fox*, Case No. 19-cv-11887 (TLL) (E.D. Mich.), ECF No. 156.

Visser has nonetheless forged ahead with an improper, unethical campaign to undermine this class action, and its solicitations do not reflect its supposedly new-found understanding of— and appreciation for—the class action mechanism. *Contra* Response to Show Cause Order ¶¶ 4, 5(a), *Fox*, Case No. 19-cv-11887 (TLL) (E.D. Mich.), ECF No. 152, PageID.3347. Protective action is required to curb Visser's continued contempt for ethical rules and the class action procedure.

## ARGUMENT

**I.      This Court has the duty and authority to restrict abusive communications directed at class members by non-party counsel.**

Under the Federal Rules of Civil Procedure, this Court has "the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). That duty and authority extends to "restrict[ing] 'abusive' communications directed at class members." *Fox v. Saginaw Cnty., Michigan*, 35 F.4th 1042, 1049 (6th Cir. 2022) (quoting *Gulf Oil*, 452 U.S. at 101–02).

---

[4] Visser's agreement to stop soliciting *Fox* class members apparently came with some reward. On December 30, 2022, Visser filed an appearance as co-counsel in *Fox* with The Miller Law Firm, P.C., Philip L. Ellison, and Matthew E. Gronda. Notice of Appearance, *Fox*, Case No. 19-cv-11887 (TLL) (E.D. Mich.), ECF No. 302, PageID.7410. If Visser remains ignorant of the class action mechanism, the firm's co-counsel, who previously expressed outrage at Visser's improper actions in the Eastern District of Michigan, should be advising Visser of the impropriety of the firm's recent actions in this District.

7

Rule 23(d)(1) provides, in relevant part, that "the court may issue orders that: . . . (C) impose conditions on the representative parties or on intervenors . . . or (E) deal with similar procedural matters." Fed. R. Civ. P. 23(d)(1). The authority conferred under Rule 23(d)(1) is broad and "exists even prior to class certification." *Tolmasoff v. Gen. Motors, LLC*, No. 16-11747, 2016 WL 3548219, at *10 (E.D. Mich. June 30, 2016); *see also, e.g., Friedman v. Intervet Inc.*, 730 F. Supp. 2d 758, 765 (N.D. Ohio 2010) ("[N]umerous cases have approved of court limitations on communications prior to class certification.") (collecting cases); *Bobbitt v. Acad. of Ct. Reporting*, No. CIV A 07-10742, 2008 WL 4298458, at *2 (E.D. Mich. Sept. 18, 2008) ("[T]he court has the authority to control communications with the class before and after class certification[.]").

Rule 23 also gives the Court jurisdiction over non-party counsel solicitations. *Fox*, 35 F.4th at 1047 ("[A] court can control abusive communications of those—parties and nonparties alike— who threaten or interfere with a class action."); *McWilliams*, 176 F. Supp. 3d at 642, 644–45; 3 Newberg and Rubenstein on Class Actions § 9:10 (6th ed.) ("Courts employ the same *Gulf Oil* regime used for analyzing party communications when analyzing nonparty communications.").

Furthermore, "Rule 23(d) does not . . . require a finding of *actual* harm; it authorizes the imposition of a restricting order to guard against the '*likelihood* of serious abuses.'" *In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988) (quoting *Gulf Oil*, 452 U.S. at 104) (emphasis in original). Communications qualify as "abusive" if they "'pose[] a serious threat to the fairness of the litigation process, the adequacy of representation, and the administration of justice generally.'" *Fox*, 35 F.4th at 1047 (quoting *In re Sch. Asbestos Litig.*, 842 F.2d at 680). This could include "sharing misleading information, misrepresenting the nature of the class action, or coercing prospective class members to opt out of a class." *Id.*

8

The Sixth Circuit has further noted that "communications that are 'factually or legally incomplete, lack objectivity and neutrality, or contain untruths will surely result in confusion and adversely affect the administration of justice.'" *Id.* at 1049 (quoting *Erhardt v. Prudential Grp., Inc.*, 629 F.2d 843, 846 (2d Cir. 1980)). Thus, even in the absence of affirmative misstatements, the omission of material information will support a finding that a communication was abusive. *Id.* at 1048.

## II.     Visser's solicitations are abusive and violate Fed. R. Civ. P. 23.

Visser's correspondence to Class Members is "abusive" under the law of this Circuit—or at least demonstrates a "likelihood of serious abuses," *Gulf Oil*, 452 U.S. at 104—because it omits material information. In *Fox*, the Sixth Circuit held that a non-party's solicitations were abusive because they "undermined the goal of informed consent by engaging class members and then opting them out of the class action, all based on a one-sided presentation of the facts, without opportunity for rebuttal." 35 F.4th at 1048 (cleaned up).

That is what Visser is attempting to do here, as its solicitations do not disclose the existence of this class action proceeding or the proposed Settlement, which will afford Class Members significant and immediate relief. Visser's failure to "even tell[] [potential Class Members] about the class action" is "hallmark abusive communication." *Id.* at 1048; *see also* 3 Newberg and Rubenstein on Class Actions § 9:7 (6th ed.) ("[C]ommunications . . . that fail to convey the necessary context to allow potential class members to make informed decisions between individual and collective litigation . . . are often considered misleading by courts.").

Without knowledge of the existence of this action and the Settlement (let alone detailed information regarding either), Class Members lack the necessary context to make informed decisions about whether to remain members of the Class or proceed with Visser in an individual

capacity (for an extortionate fee). *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1239, 1245–46 (N.D. Cal. 2000) (issuing a protective order preventing solicitations by non-party counsel in part because "[t]he solicitations provide[d] an inadequate disclosure of the comparative costs and benefits of participating in a class action," including "the possibility of higher attorneys' fees"). Visser's self-serving omissions necessitate protective action by this Court. *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 252 (S.D.N.Y. 2005) (explaining that court must protect putative class members from communications that "omit[] critical information").

Moreover, Visser's correspondence does not simply omit material facts; it is misleading. By suggesting that there exists a "claims process" separate from the Settlement, Visser has falsely suggested that there is a simple mechanism for potential Class Members to recover surplus proceeds, which is untrue (except if they file a claim under the Settlement), due to the risks of litigation. And Visser cannot credibly dispute that this suggestion is misleading, as it previously represented to the *Fox* court that it "underst[ood], agree[d], and support[ed]" that "[t]he Class mechanism is the only effective means of full and complete redress for victims of the unconstitutional taking . . . ." Response to Show Cause Order ¶ 5(a), *Fox*, Case No. 19-cv-11887 (TLL) (PTM) (E.D. Mich.), ECF No. 152, PageID.3347.

Moreover, Visser's use of the phrase "our claims process" is misleading insofar as it suggests that retaining Visser may be necessary to secure relief. *See McWilliams*, 176 F. Supp. 3d at 641 (finding communications abusive in part because they suggested that "hiring [certain counsel] was the only way to recover damages"). Class Members should be protected from Visser's duplicity. *See Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 902–03 (N.D. Cal. 2018) (explaining that the "'the solicitation of direct representation of class members who are not formal parties'" and the "'solicitation of funds and agreements to pay fees'" are among the

10

communications that "'weigh[] in favor of restrictions'") (quoting *Domingo v. New England Fish Co.*, 727 F.2d 1429, 1441 (9th Cir. 1984)).

Another "disturbing aspect of the letter is that it fails to mention that [Visser] represents [potential Class Members] who are objecting to the settlement . . . ." *Georgine v. Amchem Prod., Inc.*, 160 F.R.D. 478, 492 (E.D. Pa. 1995); *see also id.* at 495 ("To make the problem worse, many of the letters and advertisements did not inform the reader that the author or his firm already had voiced objections to some aspects of the *Georgine* class action."); *Chalian v. CVS Pharmacy, Inc.*, No. 2:16-CV-8979-AB-AGR, 2020 WL 7347866, at *1–4 (C.D. Cal. Oct. 30, 2020) (ordering protective relief where attorneys representing attempted intervenors, who were opposed to settlement, were soliciting potential class members).

Finally, the abusive nature of Visser's communications is amplified because it has—in brazen disregard of the ethical rules, *see* Section IV, *infra*—contacted four named Plaintiffs (and Sub-Class representatives). *Chalian*, 2020 WL 7347866, at *4 (holding that solicitations "were also improper insofar as they are interfering with already represented parties"); *McWilliams*, 176 F. Supp. 3d at 640–41 (listing counsel's "attempt to poach the named plaintiff and class representative" among reasons solicitations violated Rule 23); *Loatman v. Summit Bank*, 174 F.R.D. 592, 602 (D.N.J. 1997) ("The obvious dangers relating to unsupervised communications with potential class members are magnified when the contact is directed personally to the named class representative."). Visser's attempt to poach these represented parties corroborates its intent to undermine the Settlement through improper means.

To be sure, the correspondence concludes by asking recipients to "disregard" the communication if they are already represented. But this request does nothing to remedy the confusion caused by the rest of Visser's letter, nor does it eliminate the impropriety of sending

misleading communications to represented parties. If anything, it merely tends to show that Visser knows its correspondence is improper.

### III.   Visser's violations of Rule 23 warrant injunctive relief, curative notice, an accounting of solicitation activities, and the rescission of any agreements entered between Visser and Class Members.

The court should fashion an order that "weigh[s] the need to protect class members against the restriction of a speaker's First Amendment rights." *Fox*, 35 F.4th at 1047. Visser's abusive communications warrant an order (1) enjoining Visser from any further communications with Class Members; (2) requiring a curative notice to Class Members solicited by Visser; (3) requiring an expedited accounting of all individuals Visser has solicited, to aid the issuance of such curative notice as well as expedited discovery into Visser's communications with Class Members; (4) permitting Class Members to rescind retainer agreements between them and Visser; and (5) scheduling a show-cause hearing after the expedited accounting is produced to determine whether Visser should be disqualified from representing Class Members.

In *Fox*, the Sixth Circuit held that enjoining a non-party from further communications with class members was proper where the record showed that the non-party was "willing and able to mislead class members." 35 F.4th at 1050. Given Visser's willful chicanery, similar relief is proper here. And, as other courts have recognized, once misleading correspondence has "been communicated to putative class members, that bell cannot be unrung." *Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1064 (W.D. Wash. 2019). Visser's correspondence may present the first instance in which many potential Class Members learn of the issues underlying this action, and "[t]here exists a serious risk that [they] . . . will be inclined to disregard further communications about them." *Kater*, 423 F. Supp. 3d at 1064. "Convincing class members to take the steps

12

necessary to secure recovery in a class action settlement . . . is often difficult." *Id.* A prophylactic rule preventing improper solicitations is thus appropriate.[5]

As to curative notice, courts frequently fashion such relief where a third party has sent misleading communications to class members. *E.g., Fox*, 35 F.4th at 1047; *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 353 (6th Cir. 2009) (affirming district court's corrective notice to "unwind the confusion" caused by improper communications); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d at 1246. The same relief is required to remedy potential confusion here.

The requested accounting, meanwhile, is necessary to help distribute the curative notice to affected parties. *E.g., McWilliams*, 176 F. Supp. 3d at 645.

As to the rescission of retainer agreements, the Sixth Circuit has stated that permitting class members to rescind retainer agreements is "not extraordinary," and that "[e]xamples of inherently abusive pre-certification agreements that might justify rescission are those solicited for the *purpose* of undermining a class action." *Fox*, 35 F.4th at 1050 & n.3. As discussed above, Visser is engaged in a widespread, misleading solicitation campaign, which includes the unethical solicitation of named Plaintiffs. Moreover, Visser has publicly announced its opposition to the Settlement by filing a procedurally improper motion to intervene. It is therefore plain that Visser has sought to enter into retainer agreements with the purpose of undermining this action, despite its previous recognition that "[t]he Class mechanism [wa]s the only effective means of full and complete redress for victims of the unconstitutional taking . . . ." Response to Show Cause Order ¶ 5(a), Fox,

---

[5] "Because the source of the Court's authority to enjoin abusive communications is Rule 23(d) rather than Rule 65 . . . , a party does not have to establish the four preliminary-injunction factors to obtain such an injunction." *James v. Detroit Prop. Exch.*, No. 18-13601, 2019 WL 9098024, at *10 (E.D. Mich. July 11, 2019) (internal quotation marks and citations omitted).

Case No. 19-cv-11887 (TLL) (PTM) (E.D. Mich.), ECF No. 152, PageID.3347. Permitting the rescission of retainer agreements reached with potential Class Members is thus warranted. *Fox*, 35 F.4th at 1050 & n.3.

Disqualifying Visser from any representation of objectors in this action may also be appropriate, depending on the breadth and willfulness of Visser's misconduct, which may best be determined through the accounting and associated discovery. *Blanchard v. EdgeMark Fin. Corp.*, 175 F.R.D. 293, 304 (N.D. Ill. 1997) (disqualifying counsel based on violations of Rule 23).

### IV. Visser's communications also violate the Michigan Rules of Professional Conduct, providing another basis for the requested relief.

In addition to violating Rule 23, Visser's solicitations violate multiple Michigan Rules of Professional Conduct ("MRPC"), providing another basis for the requested relief. *McWilliams*, 176 F. Supp. 3d at 645 (explaining that protective order was also necessary to "deter future violations of the Mississippi Rules of Professional Conduct"); *Blanchard*, 175 F.R.D. at 304 (N.D. Ill. 1997) (explaining that court was "fully empowered to order whatever sanctions it deem[ed] just and appropriate" based on violations of ethics rules). This Court has authority under Local Rule of General Practice and Procedure 2.3(a), (d).

Visser is well aware that Plaintiffs are represented by undersigned counsel. Indeed, one of the Plaintiffs it contacted, Hodgens, has been a lead Plaintiff since 2014. And because Visser represents attempted intervenors (and likely objectors), MRPC 4.2(a) prohibits Visser from "communicat[ing] about the subject of the representation with a person whom [Visser] knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so." MRPC 4.2(a). Despite this clear guidance, Visser covertly contacted at least four named Plaintiffs (and proposed Class and Sub-Class representatives) about

this case. *See McWilliams*, 176 F. Supp. 3d at 640 (observing that a named plaintiff "was obviously a represented party"); MRPC, Terminology ("A person's knowledge may be inferred from the circumstances").[6] This is a direct, indefensible violation of MRPC 4.2(a).

Visser's solicitations also violate MRPC 7.1(a), which provides that a lawyer's communications shall not "contain a material misrepresentation of fact or law, or omit a fact necessary to make the statement considered as a whole not materially misleading." MRPC 7.1(a). For the reasons discussed above, Visser's solicitations are materially misleading in multiple respects and therefore violate this Rule. Visser's violations of the MRPC provide an additional basis for enjoining future communications with Class Members, as well as "whatever sanctions [the Court] deems just and appropriate." *Blanchard*, 175 F.R.D. at 303.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court enter an order:

(a) Enjoining Visser from soliciting or otherwise communicating with Class Members, including through both written and oral communications;

(b) Requiring Visser to produce an accounting within ten days of all individuals Visser has solicited and the form of such solicitations;

(c) Authorizing Class Counsel to conduct discovery with responses due in 14 days related to the accounting and Visser's solicitation of Class Members;

---

[6] Even if Visser disclaims knowledge that these individuals were represented, "counsel cannot be excused from the Court's [finding of a violation of Rule 4.2] simply because of sloppy case management." *Scott v. Chipotle Mexican Grill, Inc.*, No. 12-CV-08333 ALC SN, 2014 WL 4852063, at *3 (S.D.N.Y. Sept. 29, 2014).

(d)      Permitting Class Counsel to send a corrective notice to all Class Members solicited by Visser, in a form approved by the Court, which discloses this Court's finding that Visser has been improperly soliciting Class Members;

(e)      Allowing Class Members to rescind retainer agreements between them and Visser if they were solicited by Visser;

(f)      Scheduling a show-cause hearing within 56 days to determine whether Visser should be disqualified from representing Class Members; and

(g)      Any other relief this Court deems just and proper.


Dated: March 29, 2023                              Respectfully submitted,

*/s/ David H. Fink*                                */s/ James Shek*
FINK BRESSACK                                      James Shek (P37444)
David H. Fink (P28235)                             *Co-Lead Class Counsel*
Nathan J. Fink (P75185)                            P.O. Box A
Philip D.W. Miller (P85277)                        Allegan, MI 49010
*Co-Lead Class Counsel*                            Tel: (269) 673-6125
38500 Woodward Ave., Suite 350                     jshekesq@btc-bci.com
Bloomfield Hills, Michigan 48304
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
pmiller@finkbressack.com


*/s/ Owen D. Ramey*
LEWIS REED & ALLEN, P.C.
Owen D. Ramey (P25715)
Ronald W. Ryan (P46590)
*Co-Lead Class Counsel*
136 East Michigan Ave., Suite 800
Kalamazoo, Michigan 49007
Tel: (269) 388-7600
oramey@lewisreedallen.com
rryan@lewisreedallen.com

16

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.3(b)(i), Counsel for Plaintiffs certifies that this brief contains 4,753 words, as indicated by Microsoft Word 2021, inclusive of any headings, footnotes, citations, and quotations, and exclusive of the caption, cover sheets, table of contents, signature block, any certificate, and any accompanying documents. Plaintiffs are filing a Motion for Leave to File Oversized Brief concurrently with this filing.

/s/ David H. Fink                
David H. Fink