# EXHIBIT 6

## SETTLEMENT AGREEMENT

As a result of mediation under the auspices of the Sixth Circuit's Mediation Office, the parties have reached this Settlement Agreement which sets forth the terms and conditions under which the Counties (as that term is defined below), on the one hand, and Plaintiffs Wayside Church, Myron W. Stahl, and Henderson Hodgens on the other, have agreed to seek to resolve the case of *Wayside Church, et al. v. Van Buren County, et al.*, Western District of Michigan Case No. 1:14-cv-01274, along with other related matters.

## RECITALS

In 2014, the Plaintiffs initiated this putative class action against Defendants Van Buren County and its current treasurer and a putative defendants class consisting of all the other Michigan counties. The Plaintiffs alleged that the Defendants violated their civil rights contrary to 42 U.S.C. § 1983 by failing to give Plaintiffs the proceeds from the sale of the tax-foreclosed properties formerly owned by Plaintiffs that exceeded the unpaid taxes, fees, and other costs associated with those properties. These claims have become known as "surplus-proceeds claims." Plaintiffs here were seemingly the first to assert surplus-proceeds claims in Michigan.

Early in the case, the Defendants prevailed on a motion to dismiss on the basis that the federal courts lacked jurisdiction to resolve Plaintiffs' surplus-proceeds claims. Plaintiffs appealed, but Defendants largely prevailed on appeal.

While the case was pending, developments in other cases including *Rafaeli, LLC v. Oakland County*, 952 N.W.2d 434 (Mich. 2020) created serious questions regarding whether the Counties' retention of surplus proceeds was lawful. If the Counties' actions were unlawful, each County faced significant liability.

On remand from the initial appeal, the Defendants moved to dismiss the remaining claims based on various forms of immunity. The parties agreed that the Plaintiffs' claims against the individual defendants were not viable, and the district court denied the Defendants' arguments for the application of sovereign immunity. The claims against the individual Defendants were dismissed. Defendants timely appealed the latter ruling.

On appeal, the Sixth Circuit Mediation Office undertook to mediate the dispute. Beginning in June 2021 and continuing through October 2022, the Mediation Office undertook more than 48 hours of mediation sessions including two lengthy in-person meetings with the parties to bring about a settlement. Early in the mediation, the parties invited attorneys representing other counties in the United States District Court for the Western District of Michigan to participate in the mediation. As the

1

mediation progressed, the Plaintiffs, Defendants, and the other counties' counsel agreed to attempt to negotiate a global resolution of all surplus-proceeds claims against all of the Western District of Michigan counties. After reaching a framework for a settlement, the counties' counsel then had to communicate with the various county representatives and insurance carriers before they could negotiate this Settlement Agreement.

The parties to this Settlement Agreement are aware of various risks. In the wake of the Sixth Circuit's initial decision in this Action, copycat lawsuits have been filed against various counties throughout Michigan in federal and state court. Each Michigan county is subject to at least two and sometimes many more lawsuits asserting surplus-proceeds claims, most of which are styled as putative class actions. These other lawsuits pose the risk of conflicting judgments and significant additional litigation expense for the counties.

There is also significant legal risk for Plaintiffs, Defendants, and the other counties. Although the *Rafaeli* decision resolved the issue under Michigan law as to whether the former owners of tax-foreclosed property had a property interest in any proceeds from the sale of the property, numerous other issues remain unresolved. These include whether the *Rafaeli* decision will be applied retroactively and to whom; the appropriate statute of limitations; the proper measure of damages or other remedies; how surplus proceeds are to be distributed among competing claimants where more than one person held an interest in a property; how to equitably address the claims asserted by lienholders and others who held an interest in a property at the time of foreclosure; and whether the Legislature's post-*Rafaeli* amendments to the foreclosure-and-sale process bar class claims. These unresolved issues create considerable uncertainty for the Parties.

Through the persistent efforts of the Mediation Office, the Parties were able to reach this Settlement which takes into account the various risks identified above and seeks to end for the Counties participating in the settlement what one court has referred to as the deluge of litigation arising from Michigan's tax-foreclosure laws.

## AGREEMENT

1. **Definitions**.  Unless otherwise defined throughout the document, capitalized terms shall have the meanings provided below:

    1.1.  "Action" means the class action captioned *Wayside Church et al. v. Van Buren County, et al.*, pending in the Court with the Case No. 1:14-cv-01274.

    1.2.  "Administration Costs" refer to the costs of the Claims Administrator, the costs associated with the Class Notice, and the costs of the Special Master.

    1.3.  "Agreement" means this Settlement Agreement.

1.4. "Amended Complaint" refers to the pleading attached to this Settlement as Exhibit 1 and which asserts claims related to the sale of tax-foreclosed properties by each County that has agreed to this Settlement.

1.5. "Appeal" means the case captioned *Wayside Church, et al. v. Van Buren County, Michigan*, pending in the United States Court of Appeals for the Sixth Circuit with the Case Number 21-1272.

1.6. "Authorized Claimant" means any Class Member who has submitted a timely and valid Claim to the Claims Administrator, whose claim for recovery has been approved for Payment from any Sub-Class settlement fund.

1.7. "Claim" means a completed and executed claims form that has been timely submitted to the Claims Administrator in accordance with this Settlement and any requirements established by the Court.

1.8. "Claims Administrator" means Kroll Settlement Administration.

1.9. "Class" refers to all persons who are included in the class definition in Paragraph 3.1 and who are not excluded under Paragraph 3.5.

1.10. "Class Member" means a person who is included in the Class.

1.11. "Class Period" refers to the time for each County during which that County acted as a foreclosing governmental unit, beginning no earlier than January 1, 2013 and ending on December 31, 2020, inclusive..

1.12. "County" and "Counties" refers to Van Buren County and any other Michigan counties that agree to this settlement. "County" and "Counties" includes the "County-Related Persons," which shall mean the Counties' predecessors, successors, assigns, and subsidiaries, as well as former and current affiliates, administrators, employees, elected officials (including, but not limited to, county treasurers), insurers, members, officers, directors, managers, employees, agents, servants, contractors (including, but not limited to, Title Check LLC), representatives, attorneys, associates, trustees, and volunteers.

1.13. "Court" means the United States District Court for the Western District of Michigan.

DocuSign Envelope ID: 3D893FE8-433F-4984-8A08-088F049A5125

1.14. "Defendants" refers to Van Buren County, Van Buren County Treasurer Trisha Nesbitt, and former Van Buren County Treasurer Karen Makay.

1.15. "Effective Date" is the date identified in Paragraph 11.

1.16. "Eligible Claimant" means a person who holds an Eligible Claim.

1.17. "Eligible Claims" means a claim submitted by a Potential Claimant to the Claims Administrator during the Claims Period that the Claims Administrator has approved as valid pursuant to the terms of the Settlement and any order of the Court.

1.18. "Eligible Property" means a parcel of real property foreclosed by a County for the non-payment of real-property taxes, and which was sold during the Class Period by a County for an amount in excess of the Minimum Sale Price.

1.19. "GPTA" means the Michigan General Property Tax Act, Mich. Comp. Laws § 211.78 et seq.

1.20. "Lead Counsel" means Fink Bressack, Shek Law Offices, and Lewis, Reed, & Allen PC.

1.21. "Maximum Liability" means, as to each County, 90% of the sum of the Surplus Proceeds for all Eligible Properties sold by that County during the Class Period.

1.22. "Minimum Sale Price" means the sum of all delinquent taxes, interest, penalties, fees, costs, and estimated pro rata expenses of administering the sale of an Eligible Property as calculated at the time of sale by the County.

1.23. "Notice" refers to the written document informing Potential Claimants of their rights, opportunities, and obligations under this settlement and discussed in Paragraph 6.4.1.

1.24. "Original Plaintiffs" refers to Wayside Church, Myron W. Stahl, and Henderson Hodgens.

1.25. "Parties" refers collectively to the Plaintiffs, the Defendants, and the Counties. "Party" means any one of the Parties.

1.26. "Person" means an individual, corporation, limited liability company, professional corporation, partnership of any kind, association, joint venture, estate, legal representative, trust, trustee, or any legal entity.

1.27. "Plaintiffs" are those persons who are identified in the Amended Complaint, and include Wayside Church, Myron W. Stahl, and Henderson Hodgens, as well as the sub-class representatives identified in Paragraph 3.4.

1.28. "Potential Claimant" means a person who held an interest in an Eligible Property at the time it was foreclosed by a County. Not all Potential Claimants are Class Members.

1.29. "Released Claims" means, collectively, any and all claims, demands, rights, liabilities, suits, debts, obligations, and causes of action of every nature and description whatsoever, known or unknown, in law or in equity, based on state or federal law, the United States Constitution, or the Michigan Constitution that the Plaintiffs or any other Class Members asserted or could have asserted in the Action against any Defendant, County, or County Related Person in any way relating to or arising from any Eligible Property, the General Property Tax Act, or the forfeiture, foreclosure, or sale of real property relating to the collection of unpaid property taxes.

1.30. "Settlement" means this Settlement Agreement and the resolution of the dispute between the class and the counties contained herein.

1.31. "Settlement Class" means the class of Persons identified in Paragraph 3.1.

1.32. "Settlement Payment" means, as to each County, 80% of the sum of the Surplus Proceeds arising from the sale of all Eligible Properties as to which there is at least one Eligible Claim made during the Claims Period, but excluding those Eligible Properties as to which any Eligible Claimant has submitted a request for exclusion that is accepted by the Court.

1.33. "Settlement Sub-Classes" means the sub-classes identified in Paragraph 3.2.

1.34. "Special Master" means the person appointed by the Court to allocate Surplus Proceeds among Eligible Claims where more than one Eligible Claim has been submitted as to an Eligible Property.

DocuSign Envelope ID: 3D898EE8-431F-4981-8A08-088E04BA5125

1.35. "Summary Notice" refers to the abbreviated version of the Notice to be prepared by the Parties' counsel in consultation with the Claims Administrator to be used in print media.

1.36. "Surplus Proceeds" refers to the difference between an Eligible Property's actual sale price and the Minimum Sale Price. "Surplus Proceeds" do not include interest from the date of the sale.

**2.** __Data from Counties.__ The Counties shall provide information reasonably requested by Lead Counsel to identify Eligible Properties, Potential Claimants including Potential Claimants' last-known addresses, Minimum Sale Prices, and Surplus Proceeds. Where such information is available from the data already provided by the Counties, Lead Counsel shall consult that data first.

**3.** __Settlement Class.__ The parties agree for settlement purposes only that certification of a class is appropriate in the Action. For purposes of this Settlement only, the Parties agree to the certification of a settlement class and subclasses as to each County, pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3) as provided below:

3.1. __Class Definition__. The Settlement Class means:

> All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by a County and which was sold during the Class Period by that County.

3.2. __Sub-Class Definitions__. The parties agree to settlement sub-classes with the following definitions:

3.2.1. *Alger County*: The Alger County Settlement Sub-Class means:

> All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Alger County and which was sold during the Class Period by Alger County.

3.2.2. *Allegan County*: The Allegan County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Allegan County and which was sold during the Class Period by Allegan County.

3.2.3. *Antrim County*: The Antrim County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Antrim County and which was sold during the Class Period by Antrim County.

3.2.4. *Baraga County*: The Baraga County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Baraga County and which was sold during the Class Period by Baraga County.

3.2.5. *Barry County*: The Barry County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Barry County and which was sold during the Class Period by Barry County.

3.2.6. *Benzie County*: The Benzie County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Benzie County and which was sold during the Class Period by Benzie County.

3.2.7. *Berrien County*: The Berrien County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that

DocuSign Envelope ID: 3D898FE8-431F-4984-8A08-088E04BA5125

property was foreclosed by Berrien County and which was sold during the Class Period by Berrien County.

3.2.8.  *Calhoun County*:  The Calhoun County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Calhoun County and which was sold during the Class Period by Calhoun County.

3.2.9.  *Cass County*:  The Cass County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Cass County and which was sold during the Class Period by Cass County.

3.2.10.  *Chippewa County*:  The Chippewa County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Chippewa County and which was sold during the Class Period by Chippewa County.

3.2.11.  *Delta County*:  The Delta County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Delta County and which was sold during the Class Period by Delta County.

3.2.12.  *Dickinson County*:  The Dickinson County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Dickinson County and which was sold during the Class Period by Dickinson County.

8

DocuSign Envelope ID: 2D820EF8-423F-40B4-9A93-098E79BAB125

3.2.13.  *Eaton County*: The Eaton County Settlement Sub-Class means:

> All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Eaton County and which was sold during the Class Period by Eaton County.

3.2.14.  *Emmet County*: The Emmet County Settlement Sub-Class means:

> All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Emmet County and which was sold during the Class Period by Emmet County.

3.2.15.  *Gogebic County*: The Gogebic County Settlement Sub-Class means:

> All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Gogebic County and which was sold during the Class Period by Gogebic County.

3.2.16.  *Grand Traverse County*: The Grand Traverse County Settlement Sub-Class means:

> All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Grand Traverse County and which was sold during the Class Period by Grand Traverse County.

3.2.17.  *Hillsdale County*: The Hillsdale County Settlement Sub-Class means:

> All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Hillsdale County and which was sold during the Class Period by Hillsdale County.

DocuSign Envelope ID: 2D890EE8-4235-4984-9A93-098E59BAB125

3.2.18.  *Houghton County*:  The Houghton County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Houghton County and which was sold during the Class Period by Houghton County.

3.2.19.  *Ingham County*:  The Ingham County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Ingham County and which was sold during the Class Period by Ingham County.

3.2.20.  *Ionia County*:  The Ionia County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Ionia County and which was sold during the Class Period by Ionia County.

3.2.21.  *Iron County*:  The Iron County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Iron County and which was sold during the Class Period by Iron County.

3.2.22.  *Kalamazoo County*:  The Kalamazoo County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Kalamazoo County and which was sold during the Class Period by Kalamazoo County.

DocuSign Envelope ID: 2D890EE8-425F-4984-9A93-098F58BAB125

3.2.23.   *Kalkaska County*: The Kalkaska County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Kalkaska County and which was sold during the Class Period by Kalkaska County.

3.2.24.   *Kent County*:  The Kent County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Kent County and which was sold during the Class Period by Kent County.

3.2.25.   *Lake County*:  The Lake County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Lake County and which was sold during the Class Period by Lake County.

3.2.26.   *Leelanau County*:  The Leelanau County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Leelanau County and which was sold during the Class Period by Leelanau County.

3.2.27.   *Mackinac County*:  The Mackinac County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Mackinac County and which was sold during the Class Period by Mackinac County.

3.2.28.   *Manistee County*: The Manistee County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Manistee County and which was sold during the Class Period by Manistee County.

3.2.29. *Marquette County*: The Marquette County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Marquette County and which was sold during the Class Period by Marquette County.

3.2.30. *Mason County*: The Mason County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Mason County and which was sold during the Class Period by Mason County.

3.2.31. *Menominee County*: The Menominee County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Menominee County and which was sold during the Class Period by Menominee County.

3.2.32. *Missaukee County*: The Missaukee County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Missaukee County and which was sold during the Class Period by Missaukee County.

3.2.33. *Montcalm County*: The Montcalm County Settlement Sub-Class means:

DocuSign Envelope ID: 2D890EE8-425F-4084-9A93-098F59BAB125

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Montcalm County and which was sold during the Class Period by Montcalm County.

3.2.34. *Muskegon County*: The Muskegon County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Muskegon County and which was sold during the Class Period by Muskegon County.

3.2.35. *Newaygo County*: The Newaygo County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Newaygo County and which was sold during the Class Period by Newaygo County.

3.2.36. *Oceana County*: The Oceana County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Oceana County and which was sold during the Class Period by Oceana County.

3.2.37. *Ontonagon County*: The Ontonagon County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Ontonagon County and which was sold during the Class Period by Ontonagon County.

3.2.38. *Osceola County*: The Osceola County Settlement Sub-Class means:

DocuSign Envelope ID: 2D890EE8-4235-4084-9A93-098E59BAB125

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Osceola County and which was sold during the Class Period by Osceola County.

3.2.39.  *Ottawa County*:  The Ottawa County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Ottawa County and which was sold during the Class Period by Ottawa County.

3.2.40.  *Saint Joseph County*:  The St. Joseph County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Saint Joseph County and which was sold during the Class Period by Saint Joseph County.

3.2.41.  *Schoolcraft County*:  The Schoolcraft County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Schoolcraft County and which was sold during the Class Period by Schoolcraft County.

3.2.42.  *Van Buren County*:  The Van Buren County Settlement Sub-Class means:

All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Van Buren County and which was sold during the Class Period by Van Buren County.

3.2.43.  *Wexford County*:  The Wexford County Settlement Sub-Class means:

14

> All Persons, their heirs and successors, who held a non-contingent interest in an Eligible Property at the time that property was foreclosed by Wexford County and which was sold during the Class Period by Wexford County.

3.3. <u>Class Representatives</u>. The parties agree to the appointment of Wayside Church and Henderson Hodgens as the class representatives for the Settlement Class.

3.4. <u>Sub-class Representatives</u>. The parties agree to the appointment of the following as the class representatives for each Settlement Sub-Class:

3.4.1. *Alger County*: John G. Rieckman.

3.4.2. *Allegan County*: Richard E. Jones.

3.4.3. *Antrim County*: Ronald Dubois and Carol Dubois.

3.4.4. *Baraga County*: Diane Kay Speas.

3.4.5. *Barry County*: Randy Martin.

3.4.6. *Benzie County*: Arlene M. Schultz, as personal representative of the Estate of Abraham Olshansky.

3.4.7. *Berrien County*: Michael J. Cap.

3.4.8. *Calhoun County*: Jeremy T. DeShong and Bonita Hightower.

3.4.9. *Cass County*: Chad A. Pence, as Personal Representative of the Estate of Debra Jean Pence.

3.4.10. *Chippewa County*: Carol V. Ballweg.

3.4.11. *Delta County*: Francine K. Baker.

3.4.12. *Dickinson County:* Carl Waite.

3.4.13. *Eaton County*: Brandy Lee Martin.

3.4.14. *Emmet County*: Charles G. Parks, Jr.

3.4.15. *Gogebic County*: Crystal A. Raatz Wuethrich.

DocuSign Envelope ID: 2D890EE8-4235-4984-9A93-098F59BAB125

3.4.16.  *Grand Traverse County*: Ronald Hardman and Julie Hardman.

3.4.17.  *Hillsdale County*: Diane L. Baker.

3.4.18.  *Houghton County*: Dustin Burdett.

3.4.19.  *Ingham County*: Danny Butler.

3.4.20.  *Ionia County*: Collene C. Northrup.

3.4.21.  *Iron County*: Randall Becker.

3.4.22.  *Kalamazoo County*: Craig Sloan.

3.4.23.  *Kalkaska County*: Max Tracey.

3.4.24.  *Kent County*: Justin Burian.

3.4.25.  *Lake County*: Paul Biniak.

3.4.26.  *Leelanau County*: William R. Moore.

3.4.27.  *Mackinac County*: Phyllis A. Pemberton-Miller, as Personal Representative of the Estate of Barbara Pemberton.

3.4.28.  *Manistee County*: Irene Dunham-Thayer.

3.4.29.  *Marquette County*: James P. Haglund.

3.4.30.  *Mason County*: Barbara Bay.

3.4.31.  *Menominee County*: Diane M. Meza.

3.4.32.  *Missaukee County*: Ester M. Burruss.

3.4.33.  *Montcalm County*: Matthew Atkinson and Jolene Atkinson.

3.4.34.  *Muskegon County*: Jaelyn W. Balaskovitz.

3.4.35.  *Newaygo County*: Royce D. Covell.

3.4.36.  *Oceana County*: Darrell Cole.

3.4.37.  *Ontonagon County*: Ruth A. Fors, as Personal Representative of the Estate of Ned J. Fors.

DocuSign Envelope ID: 2D890EE8-4235-4084-9A93-098F68BAB125

3.4.38. *Osceola County*: Jason Gibson.

3.4.39. *Ottawa County*: Melony Boerman, as Personal Representative of the Estate of Tommy Wayne VanDyke.

3.4.40. *Saint Joseph County*: Rick Mitchem, as Personal Representative of the Estate of Spandward Mitchem.

3.4.41. *Schoolcraft County*: John Deroshia.

3.4.42. *Van Buren County*: Wayside Church and Henderson Hodgens.

3.4.43. *Wexford County*: Lori Carlson.

3.5. <u>Exclusions</u>.  The following will be excluded from the Settlement Class and each Settlement Sub-Class:

3.5.1. All governmental units and entities of any type whatsoever including, but not limited to, U.S. Department of Treasury, the Internal Revenue Service, the State of Michigan, and the Michigan Department of Treasury, albeit this provision does not apply to county public administrators appointed in accordance with Mich. Comp. Laws § 720.202 and who are pursuing claims on behalf of a deceased Eligible Claimant's estate;

3.5.2. All former holders of an interest in an Eligible Property as to which any Eligible Claimant has submitted a request to be excluded under Paragraph 7 that is accepted by the Court and which is not timely revoked under Paragraph 7.4;

3.5.3. All Potential Claimants who have released their claim for Surplus Proceeds against a County;

3.5.4. All former holders of an interest in an Eligible Property by reason of a lien to secure payment of a debt or judgment which debt or judgment has since been satisfied or released;

3.5.5. All Potential Claimants who have already resolved their claim for Surplus Proceeds against a County through a settlement agreement or a final judicial judgment as to which there is no appeal pending and/or the time to appeal has expired; and

DocuSign Envelope ID: 2D890EE8-4235-4084-9A93-098E78BAB125

      3.5.6.    As to Cass County only, any former holders of an interest in an Eligible Property who assert any claims for surplus proceeds that are greater than $300,000.

3.6.    <u>Class Counsel</u>.  The parties agree to the appointment of Lead Counsel as counsel to the Settlement Class and the Settlement Sub-Classes.

3.7.    <u>Certification for Settlement Purposes Only</u>. The certification of the Settlement Class shall be binding only with respect to the Settlement of the Action and only if the Judgment contemplated by this Settlement Agreement becomes final and the Effective Date occurs. Nothing in this Settlement Agreement shall serve in any fashion, either directly or indirectly, as evidence of or support for certification of a class, in this Action or any other action, other than for settlement purposes, and the Parties intend that the provisions herein concerning certification of the Settlement Class and Settlement Sub-Classes shall have no effect whatsoever in the event that the Settlement does not become final. Each County expressly reserves the right to contest class certification in the event the Settlement is terminated as to that County, or the Effective Date does not occur as to that County for any other reason.

4.    **No Concessions.**  No Party admits or concedes any point in dispute in this Action, including but not limited to whether a class could be certified; whether Plaintiffs would prevail on the merits; the appropriate statute of limitations for any claims asserted by Plaintiffs; whether the Amended Complaint relates back to the original filing of the Action as to any County; and whether (and how much) Plaintiffs could recover in damages, including as related to "Surplus Proceeds" as that term is defined in Paragraph 1.21, the GPTA, the Michigan Supreme Court's opinion in *Rafaeli v. Oakland Cty.,* 505 Mich. 429 (Mich. 2020), or any related state or federal court action which claims an alternative form of damages. If a settlement is not finally approved, the Parties retain whatever rights they may have to prosecute their claims and defenses.  The Defendants, Counties, and each County individually, expressly reserve their rights to contest class certification, the application of the so-called "juridical link doctrine," the applicable statute of limitations, and the relation-back of any amended pleadings, in the event the Settlement is terminated or the Effective Date does not occur for any other reason.

5.    **Releases and Bar Order.**

18

5.1. Upon the Effective Date, each Class Member including each Plaintiff, for themselves and on behalf of each of their respective spouses, heirs, executors, beneficiaries, administrators, successors, assigns and any other person claiming (now or in the future) through or on behalf of any of them directly or indirectly, shall have released, waived, and discharged each and all of the Released Claims against the Counties (including the County-Related Persons) without regard to whether the Class Member or Plaintiff ever asserts or seeks to assert a Claim. The foregoing release and waiver includes any rights and benefits of § 1542 of the California Civil Code, which the Parties agree was separately bargained for and is a material element of this Settlement of which the release and waiver in this paragraph is a part.

5.2. Upon the Effective Date, each Class Member including each Plaintiff shall have covenanted not to sue the Counties (including the County-Related Persons) with respect to any of the Released Claims.

5.3. Upon the Effective Date, each Class Member (including, without limitation, spouses, heirs, beneficiaries, administrators, successors and assigns) shall be permanently barred, enjoined, and restrained from commencing, asserting, maintaining, prosecuting, or otherwise pursuing, either directly or indirectly, any of the Released Claims against the Counties (including the County-Related Persons) in the Action or in any other action or any proceeding, in any state court, federal court, arbitration, administrative forum, or other forum of any kind.

5.4. The Plaintiffs and the Sub-Class Representatives represent and warrant that they have not assigned, conveyed, transferred, or otherwise granted or given any interest in the Released Claims, or any one of them, to any other Person.

6. **Notice/Claims Administration.** The Claims Administrator shall administer the Settlement Fund and undertake the following actions consistent with any Court orders. The Claims Administrator's actions shall be subject to the jurisdiction of the Court. The Court shall make the final determination as to which procedures will apply.

6.1. Claims Administrator. Subject to the supervision of the Counties and the jurisdiction of the Court, the Claims Administrator shall administer the

19

process of soliciting, receiving, reviewing, approving or denying claims, and distributing funds.

6.2. <u>Administration Costs</u>. Subject to the provisions of the following paragraph, the Counties agree to pay up to $450,000.00 toward the costs of administering the settlement including payment of the costs of the Claims Administrator and the Special Master. Before the Effective Date but no sooner than the date of the Court's entry of the Preliminary Approval Order, Lead Counsel shall be allocated $30,000.00 to fund the reasonable, necessary, and actual costs of providing notice to Class Members.

6.3. <u>Apportionment of Costs Among Counties</u>. The Administration Costs shall be apportioned among the Counties pursuant to the Intercounty Apportionment Agreement. No County shall be liable for any Administrative Costs that, when added to that County's Settlement Payment, exceed that County's Maximum Liability. If any County's share of the Administrative Costs would cause that County's liability to exceed the Maximum Liability, half the excess amount shall be applied to reduce the Attorney Fees awarded to Lead Counsel.

6.4. <u>Class Notice</u>.

6.4.1. Within 45 days following entry of the Preliminary Approval Order or other date set by the Court, the Claims Administrator shall send written notice of the Settlement to each Potential Claimant via regular first-class U.S. mail postage pre-paid, except those Potential Claimants identified in Paragraph 3.5. Lead Counsel shall provide Potential Claimants' addresses to the Claims Administrator based on the last-known addresses reflected in the Counties' records (as provided by Title Check LLC for those Counties for which Title Check has records) and any updated addresses Lead Counsel's investigation shall have discovered. Before sending the notices, the Claims Administrator shall run all addresses provided by Lead Counsel through the National Change of Address database (unless Lead Counsel has already done so). The envelopes containing the notices shall include a notation requesting address correction. The Claims Administrator will forward any notice that is returned with a forwarding address to the forwarding address within fourteen

20

DocuSign Envelope ID: 2DB90EE8-4235-4084-9A93-098E58BAB125

(14) days of receiving the returned mail and shall update the Potential Claimant address list with all forwarding addresses.

6.4.2.  The Claims Administrator will also undertake to provide notice by publication of the Summary Notice pursuant to the terms of the Preliminary Approval Order or whatever other manner might be ordered by the Court.

6.4.3.  The parties will work in good faith to agree to methods of providing Notice to the Class that are reasonably calculated to provide notice to Eligible Claimants. Such methods may include, without limitation, direct mail, broadcast and cable television advertising, radio advertising, publication in newspapers and other print media, digital advertising (including social media), press releases, billboards, and creation and maintenance of a website.

6.4.4.  The obligation to provide the notice to the Settlement Class will be considered fulfilled upon the completion of the steps identified in Sections 6.4.1, 6.4.2, and 6.4.3.

6.5.  <u>Claim Form</u>. The claim form shall be approved by the Court and shall require sufficient information for the Claims Administrator and the parties to assess whether the person submitting the claim is a Class Member. The claim form shall release all of the Released Claims against all Counties.

6.6.  <u>Claims Period</u>.

6.6.1.  Class Members shall have 120 days from the date of the Court's entry of the Preliminary Approval Order or by the date ordered by the Court to submit a completed claims form to the Claims Administrator.

6.6.2.  The deadline for filing claims shall be identified in the Notice and the Summary Notice.

6.6.3.  Any Class Member who fails to submit a Claim by the date identified in the Notice shall be barred from receiving any distribution or payment from the Settlement Fund (unless, by Court order, certain late-submitted claims are accepted), but

21

shall in all other respects be subject to and bound by all of the terms and provisions of this Settlement.

6.6.4.     A Claim shall be deemed to be submitted on the earliest of the date that it is received by the Claims Administrator, or the date when it was posted, if received with a postmark indicated on the envelope and if mailed by first-class mail or other delivery service and properly addressed.

6.6.5.     <u>Claimants Submit to Court's Jurisdiction</u>. Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery by the Parties and the Claims Administrator under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Claimant's status as a Class Member and the validity and amount of the Claimant's Claim. No discovery shall be allowed on the merits of this Action or this Settlement in connection with the processing of Claims. Nor shall discovery be allowed in this action by the holders of Eligible Claims as to the validity of other claims to an Eligible Property.

6.7.   <u>Approved Claimants</u>.

6.7.1.     The Claims Administrator shall receive Claims and process them in accordance with this Settlement Agreement and any applicable Court order. The Parties shall reasonably cooperate with the Claims Administrator to provide information necessary for the Claims Administrator to validate or reject claims. The Claims Administrator shall undertake reasonable efforts to assess whether each Claim is valid pursuant to the terms of this Settlement Agreement and any applicable Court orders. As to each Claim asserting an unrecorded interest in an Eligible Property, the person submitting the claim shall be required to submit an affidavit or declaration setting forth all the factual and legal bases for the asserted unrecorded interest. With regard to claims of an interest in an Eligible Property through adverse possession, the affidavit or declaration shall set forth facts to show all of the elements of adverse possession under Michigan law.

22

DocuSign Envelope ID: 2D820EE8-425F-4084-9A93-098F59BAB125

6.7.2. The Parties may seek a determination from the Court as to the validity and/or amount of any Eligible Claim approved by the Claims Administrator.

6.7.3. The approval and denial of Claims is a matter separate and apart from the Settlement between the Counties and the Plaintiffs, and any decision by the Claims Administrator, the Special Master, the Court, any circuit court in an interpleader action pursuant to Paragraph 8.2.2, or any appellate court concerning the approval or denial of a Claim shall not affect the validity or finality of the Settlement.

6.8. List of Eligible Claims. The Claims Administrator shall maintain and update a list of Eligible Claims and provide the list to Lead Counsel and the Counties within a reasonable period of the deadline for the submission of Claims and thereafter as may be requested by the Counties or Lead Counsel, or ordered by the Court.

6.9. Distributions.

6.9.1. No funds from the Settlement Fund shall be distributed until after the Effective Date.

6.9.2. The Settlement Fund shall be used to pay (i) Eligible Claims as provided in Paragraph 8 (including disbursements to the registry of the appropriate circuit court for any interpleader actions); and (ii) attorney fees as provided by Paragraph 9.

## 7. Requests for Exclusion.

7.1. Time for Requesting Exclusion. Eligible Claimants shall have 120 days from the date of the Court's entry of the Preliminary Approval order or the date ordered by the Court to notify the Court of their request to be excluded from the Class.

7.2. Information Required. Eligible Claimants requesting exclusion from the Class shall be asked to provide the following information to the Claims Administrator in the manner described in the Notice: (i) name; (ii) current mailing address; (iii) telephone number; (iv) address, parcel number, and/or legal description of the Eligible Property; (v) County in which the Eligible Property is located; (vi) year of post-foreclosure sale of Eligible Property;

and (vii) a statement that the Eligible Claimant wishes to be excluded from the Settlement Class. Any request for exclusion must be signed by the person or entity requesting exclusion. Copies of all requests for exclusion received by the Claims Administrator, together with copies of all written revocations, shall be delivered to the Counties and Lead Counsel within three business days of receipt by the Claims Administrator.

7.3. <u>Excluded Claimants Have No Rights Under Settlement Agreement</u>. Eligible Claimants who submit valid and timely requests for exclusion in the manner set forth in the Notice shall have no rights under the Settlement, shall not receive any distribution under the Settlement, and shall not be bound by the Settlement or any final judgment. Unless otherwise ordered by the Court, any Class Member who does not submit a timely written request for exclusion as provided by this Paragraph 7 shall be bound by the terms of this Settlement including, without limitation, all of the releases contained herein.

7.4. <u>Revocation of Exclusion Request</u>. Eligible Claimants may revoke a request for exclusion within the time provided in Paragraph 6.6.1 above. Such revocation shall be in writing and submitted to the Claims Administrator.

8. **Settlement Payment.** In consideration for the Settlement and the release and bar order contained in Paragraph 5, each of the Counties shall pay that County's Settlement Payment into a settlement fund account or accounts to be established by the Claims Administrator.

8.1. <u>Timing</u>. As to each County, the Settlement Payment shall be made within 30 days of the Effective Date.

8.2. <u>Allocation Among Class Members</u>. An amount equal to 80% of the Surplus Proceeds arising from the sale of an Eligible Property as to which at least one Eligible Claim has been submitted during the Claims Period, less the attorney fee identified in Paragraph 9, shall be allocated to all Eligible Claims arising from that Property. Where more than one Eligible Claim has been submitted as to an Eligible Property, the Surplus Proceeds shall be allocated as between the Eligible Claims as follows:

8.2.1. If the holders of all Eligible Claims as to a single Eligible Property consent, the Special Master, as identified in Paragraph 19, will issue a binding, non-appealable decision allocating the Surplus

24

Funds among the Eligible Claims based on considerations of law and equity; or

8.2.2.  If Paragraph 8.2.1 does not apply, the County in which the Eligible Property to which the Surplus Proceeds are attributable is located shall file an interpleader action in the state district or circuit court of that County for the state court to determine the allocation of the Surplus Proceeds among the Class Members' Eligible Claims. The County initiating the interpleader action shall be permitted to seek to recover its actual costs pursuant to Michigan Court Rule 3.603(E). Class Members pursuing claims in an interpleader action pursuant to this Paragraph shall be responsible for prosecuting their claims in state court, including obtaining representation by counsel of their choice. Lead Counsel will not represent Class Members in interpleader actions under this Paragraph. Class Members consent to the jurisdiction of the district and circuit court of the State of Michigan. In the event that the interpleader defendant Class Members fail to prosecute their claims and so are subject to default judgment, the Class Members agree that the interpleaded funds shall revert to the County.

8.3.  <u>Limitation on Claims</u>. Notwithstanding the foregoing Paragraph 8.2, no Class Member shall receive more than 100% of the value of the Class Member's interest in the Eligible Property. For example, if the surplus proceeds from the sale of an Eligible Property are $10,000, and the Eligible Claims submitted as to that property total $4,000, the holders of the Eligible Claims shall not receive more than $4,000.

8.4.  <u>Claims Made</u>.  The parties have agreed to a claims-made settlement; any amount of any of the Counties' Settlement Payment which goes undistributed (*e.g.*, unclaimed amounts and uncashed checks) will revert to the County to which the Settlement Payment is attributable.

## 9.  <u>Attorney Fees</u>.

9.1.  The Plaintiffs' Counsel intend to apply for a fee award equal to 20% of the amount to be paid by Court order to each Eligible Claimant, which amount shall be deducted from each Class Member's distribution.  The Counties will not object to that application.

25

9.2. Failure by the Court to either rule on or approve attorneys' fees and costs in an amount other than that stated in Paragraph 9.1 shall not be grounds for any Party to withdraw from the Settlement, shall not delay the Settlement becoming final, and shall not delay the Effective Date of the releases described above.

9.3. Any attorneys' fees that are awarded by the Court shall be paid to Plaintiffs' Counsel from the Settlement Fund Account, in accordance with any distribution order entered by the Court.

**10.** **Unclaimed Funds.** Any unclaimed funds remaining in the Settlement Fund Account two years after the Effective Date shall revert to the County to which the funds are attributable.

**11.** **Effective Date**. The Settlement shall be effective only when all of the following have occurred:

(1) the Court has entered the Preliminary Approval Order;

(2) the Court has entered a Final Judgment and Order of Dismissal; and

(3) the Final Judgment and Order of Dismissal have become final, meaning that the time for appeal or appellate review of the Judgment and Order (and any interlocutory orders merged into the Judgment) has expired or, if there has been an appeal, (a) that the appeal has been decided without causing a material change in the Judgment or the Order of Dismissal, and (b) the Judgment or Order of Dismissal is no longer subject to appellate review by further appeal or writ of certiorari.

**12.** **Termination**.

12.1. Court Does Not Approve. If the Court (a) enters an order expressly declining to enter the Preliminary Approval Order in any material respect; (b) refuses to approve this Settlement or any material part of it; (c) declines to enter a Judgment that conforms in all respects the material provisions of this Settlement; or (d) enters the Judgment, but after appellate review, the Judgment is vacated or modified or reversed in any material respect, and further appellate review has either been denied or the time for seeking further appeal has expired, then the Parties each shall have the right to terminate their participation in the Settlement within thirty days of the receipt of such ruling by providing written notice to the other Parties of an election to terminate. Any decision with respect to an application for

26

attorneys' fees or the allocation of the Settlement Fund shall not be considered material to the Settlement and shall not be grounds for termination.

12.2. <u>Court-Required Changes to the Settlement Agreement</u>. The preceding paragraph notwithstanding, if the Court conditions its preliminary or final approval of this Settlement on certain changes to the Settlement, the Parties shall consider in good faith such changes and consent to such changes if they do not substantively alter the obligation of the Party. Changes that shall be deemed to substantively change the obligation of a Party include, but are not limited to, changes that affect (a) the requirement that there be a named plaintiff as a class representative for each County defendant; (b) the amount of the Settlement Payment; (c) the scope of the release to be granted; or (d) a provision expressly noted as material in this Settlement. A change shall not be deemed to substantively change the obligation of a Party if it merely alters the wording or appearance of any notice or order or if it reasonably modifies the timing of any contemplated event.

12.3. <u>Exclusion Threshold</u>. Any County may terminate its participation in the settlement if Eligible Claimants, excluding those Eligible Claimants who have other lawsuits claiming Surplus Proceeds that are pending on the Effective Date, who would otherwise be entitled to participate in the settlement opt out thereby causing either (1) 15% of the total number of Eligible Properties to be excluded from the Settlement, or (2) Eligible Properties as to which the attributable Surplus Proceeds equal 30% or more of the total Surplus Proceeds received by the County during the Class Period to be excluded from the Settlement Class.

12.4. <u>Effect of Termination</u>. In the event the Settlement is terminated in whole, or as to any Plaintiff, County, or Defendant:

12.4.1. The Parties (including Sub-Class Representatives) affected by the termination of the Settlement shall be deemed to have reverted to their respective status in this Action as of the date of the filing of the motion for preliminary approval, with all of their respective claims and defenses preserved as they existed on that date;

12.4.2. As to the terminating parties, except as otherwise expressly provided in this Settlement, the terms of this Settlement shall be

27

null and void and shall have no further force or effect, and neither the existence nor the terms of this Settlement nor any acts performed pursuant to, or in furtherance of, this Settlement shall be used in this Action or in any other proceeding for any purpose; and

12.4.3. Any judgment or order entered by the Court in accordance with the terms of this Settlement shall be treated as vacated *nunc pro tunc* as to the terminating parties.

**13.** **Amended Complaint**. By December 19, 2022, the Original Plaintiffs shall file a stipulated motion for leave to file an Amended Complaint naming the Defendant Counties that have approved this Settlement and the Sub-Class Representatives as to those Counties as Plaintiffs.

**14.** **Additional Parties.** Within 35 days of the filing of the stipulated motion in Paragraph 13, the Parties may stipulate to the filing of a revised or further amended complaint naming additional Defendant Counties that approve this Settlement after the filing of the motion in paragraph 13 and Sub-Class Representatives as to those Counties as additional Plaintiffs.

**15.** **Waiver of Service.** The Counties agree to waive service of the Amended Complaint pursuant to Federal Rule of Civil Procedure 4(d). Lead Counsel shall promptly file the waivers of service.

**16.** **Preliminary Approval.** Within 28 days of the filing of the Amended Complaint, the Parties shall jointly move the Court to enter the Preliminary Approval Order giving preliminarily approval to this Settlement; scheduling a hearing for the final approval of this Settlement by the Court; approving the form of notices to the Class; and setting deadlines for requests for exclusion and objections to the Settlement.

**17.** **Litigation Bar**. Concurrently with the motion for preliminary approval, the Parties will jointly move the Court for an order preliminarily enjoining all Class Members and all persons with actual notice of the injunctive order from participating as class members in any lawsuit in any forum, or otherwise filing, intervening in, commencing, prosecuting, continuing and/or litigating any lawsuit in any forum against any County which falls within the scope of the release in Paragraph 5.

**18.** **CAFA Notice**. In addition, within 10 days of the motion for preliminary approval of this Settlement being filed with the Court, the Counties shall ensure that notice is given to the Attorney General of the United States and the Michigan

Attorney General consistent with 28 U.S.C. § 1715. All relevant approval and court filing dates will be scheduled to ensure compliance with the Class Action Fairness Act. Plaintiffs will cooperate reasonably with the Counties to ensure compliance so that the release described herein is fully enforceable.

19. **Appointment of Special Master.** As part of the Class Settlement, the Parties will move the Court for the appointment of a Special Master to assist with administering and facilitating the Settlement. Upon approval of the Court, the Special Master will be empowered to facilitate the resolution of claims among Settlement Class members, including their various interests and entitlement to claims relating to Surplus Proceeds as provided in Paragraph 8.2.1. The intent will be for the court-appointed Special Master to have a function similar to a Michigan Circuit Court Judge under Section 78t of the GPTA.

20. **Terms of the Judgment**. If this Settlement is approved by the Court, the Parties shall request that the Court enter a Judgment that (a) approves the terms of this Settlement as fair, reasonable, and adequate; (b) provides for the implementation of the terms and provisions of the Settlement; (c) finds that the parties have complied with the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1711 *et seq.*; (e) dismisses the claims of the Plaintiffs and the Class with prejudice and without costs; (f) permanently enjoins all Class Members who did not timely and validly exclude themselves from the Class from participating as class members in any lawsuit in any forum, or otherwise filing, intervening in, commencing, prosecuting, continuing and/or litigating any lawsuit in any forum based on the claims released in Paragraph 5; and (g) severs the claims by any Plaintiff and the defenses of any County Defendant as to whom the Settlement has been terminated.

21. **Release of Attorney's Lien.** In consideration of this Settlement, Lead Counsel waive, discharge, and release the Counties, including the County-Related Persons, from any and all claims for attorney's fees, by lien or otherwise, for legal services rendered by Lead Counsel related to this Action.

22. **Publicity and Confidentiality.** Except as provided in this Paragraph, neither the Parties nor their counsel shall initiate any public statement intended to be disseminated through the press, television, radio, or other media that includes an opinion or editorial comment about the effect of the settlement, or make any statement regarding the merits of any party's positions in the Action from which the Settlement arose. The parties will prepare one or more agreed upon statements to release to the media, distribute via social media, publish on the Counties' websites, and/or to respond to media inquiries.

23. **Miscellaneous Provisions**.

23.1. The Parties intend this Settlement to be a final and complete resolution of all of Plaintiffs' Released Claims against all Counties. Except as otherwise provided in this Settlement, each Party shall bear its own costs.

23.2. This Settlement, including the exhibits attached to this Settlement, may not be modified or amended, nor may any of its provisions be waived, except by a writing signed by or on behalf of all Parties. The waiver by any Party of any breach of this Settlement by any other Party shall not be deemed a waiver of that breach by any other Party, nor shall it be deemed a waiver of any other breach of this Settlement by that Party or any other Party.

23.3. Without further order of the Court, the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Settlement.

23.4. The paragraph headings in this Settlement are used for the purpose of convenience only and are not meant to have any legal effect upon the construction or interpretation of any part of this Settlement.

23.5. The administration and consummation of this Settlement shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of implementing and enforcing the Settlement including, without limitation, the Plaintiffs' releases and any awards of attorneys' fees to Lead Counsel.

23.6. The Parties submit to the jurisdiction of the Court for purposes of implementing and enforcing this Settlement.

23.7. This Settlement and its attached exhibits constitute the entire agreement among the Parties concerning this Settlement. No representations, warranties, or inducements have been made by or to any Party concerning this Settlement and its attached exhibits other than those contained and memorialized in the Settlement and its attached exhibits. This Settlement supersedes any and all earlier statements, representations, promises or other agreements, written or oral, with respect to the subject matter of this Settlement.

23.8. It is understood by the Parties that, except for the matters expressly represented herein, the facts or law with respect to which this Settlement is entered into may turn out to be other than or different from the facts and

30

law now known to each Party or believed by such Party to be true. Accordingly, each Party assumes the risk of the facts or law turning out to be different, and agrees that this Settlement shall be in all respects effective and not subject to termination by reason of any such different facts or law except as otherwise expressly provided herein.

23.9. If any provision of this Settlement is held to be unenforceable for any reason, the unenforceability thereof shall not affect any other provisions of this Settlement except as provided in Paragraph 12.

23.10. This Settlement may be executed in one or more original or electronic counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for each Party will maintain their own respective original signature pages. A complete set of executed counterparts shall be filed with the Court.

23.11. This Settlement shall be governed by the laws of the State of Michigan without regard to conflicts of laws except to the extent that federal law requires that federal law govern.

23.12. This Settlement shall not be construed more strictly against any Party than another merely by virtue of the fact that the Settlement, or any part of it, may have been prepared by counsel for the Party.

23.13. All counsel and any other person executing this Settlement and any exhibits attached to this Settlement warrant and represent that they have the full authority to do so and that they have the authority to take the appropriate action required or permitted to be taken pursuant to the Settlement to effectuate its terms.

23.14. The Parties agree to cooperate fully in seeking Court approval of the preliminary approval order and the Settlement, and to use reasonable efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

23.15. If any Party is required to give notice to other Parties under this Settlement, such notice shall be in writing and shall be deemed to be duly given upon receipt by hand delivery or electronic mail. Notice shall be provided to counsel indicated on the signature block below.

31

The Parties have caused this Settlement to be executed by their duly authorized representatives.

Dated: __3/2/2023__

FINK BRESSACK

By: __DAVID FINK__

David Fink, counsel for Plaintiffs on behalf of Wayside Church, Myron Stahl, and Henderson Hodgens

Dated: __2/27/2023__

LEWIS REED & ALLEN, PC

By: __Ronald W. Ryan__

Ronald W. Ryan, counsel for Plaintiffs on behalf of Wayside Church, Myron Stahl, and Henderson Hodgens

Dated: __2/27/2023__

LEWIS REED & ALLEN, PC

By: __Owen Ramey__

Owen Ramey, counsel for Plaintiffs on behalf of Wayside Church, Myron Stahl, and Henderson Hodgens

Dated: __2/27/2023__

By: __James Shek__

James Shek, counsel for Plaintiffs, on behalf of Wayside Church, Myron Stahl, and Henderson Hodgens

Dated: __3/13/2023__

DYKEMA GOSSETT, PLLC

By: __Theodore Seitz__

Theodore W. Seitz, counsel for Defendants Van Buren County and the Van Buren County Treasurer

Dated: __2/27/2023__

SILVER & VAN ESSEN PC

DocuSign Envelope ID: 2DB90EE8-423F-40B4-9A93-098E59BAB125

By: _____
Douglas W. Van Essen, counsel for
Ottawa County and the Ottawa County
Treasurer

Dated: 2/27/2023 _____

CUMMINGS McCLOREY DAVIS &
ACHO, P.L.C.

By: _____
Allan C. Vander Laan, counsel for the
Counties of Ionia, Allegan, Barry,
Montcalm, Muskegon, Benzie,
Manistee, Wexford, Missaukee, Mason,
Lake, Osceola, Oceana, Newaygo,
Berrien, Cass, Kalamazoo, St. Joseph,
Hillsdale, Leelanau, Grand Traverse,
Antrim, Emmet, Kalkaska, Gogebic,
Houghton, Iron, Marquette, Dickinson,
Menominee, Alger, Delta, Schoolcraft,
Mackinac, Chippewa, Ingham, Eaton,
and Calhoun and those Counties'
Treasurers

Dated: 3/10/2023 _____

CLARK HILL PLC

By: _____
Charles Allen Lawler, counsel for the
Counties of Charlevoix, Ontonagon, and
Baraga and those Counties' Treasurers

Dated: 3/2/2023 _____

WARNER NORCROSS + JUDD LLP

By: _____
Matthew T. Nelson, counsel for Kent
County and the Kent County
Treasurer, and co-counsel for Ottawa
County and the Ottawa County
Treasurer

33