UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WAYSIDE CHURCH, an Illinois Not-For-Profit (Ecclesiastical) Corporation, individually and on behalf of a class of all others similarly situated, MYRON W. STAHL, individually and on behalf of a class of all others similarly situated and HENDERSON HODGENS, individually and on behalf of a class of all others similarly situated,

    Plaintiffs,

v.

VAN BUREN COUNTY, in its individual Michigan municipal capacity and on behalf of a class of all other Michigan counties similarly situated and KAREN MAKAY, in her individual official capacity as Treasurer of Van Buren County and on behalf of a class of all other Treasurers of Michigan counties similarly situated.

    Defendants.

_____/

Case No.: 1:14-cv-1274

Hon. PAUL L. MALONEY

**OBJECTORS' REPLY TO PLAINTIFFS' OPPOSITION ON MOTION TO DECERTIFY THE CLASS BASED ON INADEQUACY OF COUNSEL AND/OR DISQUALIFY COUNSEL (REPLY TO ECF NO. 352)**

1

This is no ordinary Class Counsel seeking to provide disinterested communications regarding the terms of a class settlement. Class Counsel have made an intentional and aggressive effort to communicate *ex parte* with represented parties. They say this is permissible because their appointment makes them "co-counsel" to any person eligible to make a claim. ECF No. 352, PageID.7064. This Court has rejected this argument. ECF No. 354, PageID.7248-7249. And with good reason: Class Counsel's argument is unsupported by case law and runs contrary to the most fundamental tenants of legal practice. Class Counsel also factually certifies to this Court that they made great effort to avoid contact with represented parties. But their own court filings and a quickly growing pile of evidence says otherwise. *See* ECF No. 288, PageID.4666, 4667-4668 ("Class Counsel intend to continue to communicate with all class members" and asking for the Court's blessing to do so over counsel's objection); Objection to Proposed Settlement, ECF No. 345-3, PageID.6314-6315, 6319-6321 (objection evidencing additional improper communications, including that "Class Counsel. . .phoned represented persons to solicit. . .claims [and employed a] private investigator [to] improperly solicit[]. . . claims"). Even if Class Counsel has actually made great efforts to avoid such contacts, the efforts have failed spectacularly. In any event, Class Counsel's unethical and abusive communications with potential class claimants prior to conclusion of the opt-out period have caused irremediable spoilation of the class.

2

Objectors' Counsel have long cautioned that Class Counsel's distressed legal position and comparative lack of class action experience would lead to a failed settlement. These concerns have only grown given Class Counsel's recalcitrance to supply data to the Court or counsel regarding the settlement's performance. *See* ECF 364-1, PageID.7361 (unanswered request for claims-rate information). This reluctance alone raises the inference of poor results. The inference has grown as Class Counsel has displayed an apparently desperate willingness to engage in misconduct that seems intended to increase the claims rate at the expense of opt-outs. And then the inference was all but proven when Defendants themselves sought an extension of the claims period. ECF No. 362.

Now, the settlement's failure has been all but established. Buried in Class Counsel's response is just enough data to calculate that, but for those putative class members that have been informed enough to opt out of the settlement, their proposed settlement will ultimately waive about 97% of the class's already established damages. This result is what Objectors and their counsel have feared: the counties will escape almost all of their liability and keep almost all of the illegally seized property; Class Counsel will secure a windfall fee for its willingness to sell out the class; and the victims, on a classwide basis, will receive about three pennies on the dollar. Meanwhile, Class Counsel flouts ethical obligations in a desperate effort to

3

salvage the failed settlement, and with it, Class Counsel's unearned fee. Decertification and disqualification are surely warranted.[1]

**A. It is grossly improper for self-interested Class Counsel to communicate with class members who are individually represented by other counsel.**

Class Counsel's position is clear: "it is proper for Class Counsel to communicate with Class Members who are also represented by other counsel, as Class Counsel has a co-counsel relationship with such counsel." ECF No. 352, PageID.7064.

This position is wrong. As this Court found when it rejected Class Counsel's theory, "if a class member retains his own independent counsel— whether for the purpose of remaining in the class and objecting to the class settlement or for opting out of the class and pursing his own litigation—class counsel no longer represent that class member upon his decision to seek other counsel," and "Class Counsel have provided no authority establishing that they can communicate with class members (and some former class members) who have chosen to retain other counsel." ECF No. 354, PageID.7248-7249 (citations omitted). Therefore, this Court found that "Class Counsel may not communicate with class members they know to be represented by the Vissers or other independent counsel." *Id.* at PageID.7249. *See*

---

[1] This reply is filed as of right because motion to decertify is dispositive under Local Rule 7.2(a). *See also* Local Rule 7.2(c) (reply brief to dispositive motions are allowed as of right).

4

*also Impervious Paint Indus., Inc. v. Ashland Oil*, 508 F. Supp. 720, 722 (W.D. Ky. 1981) ("While class counsel clearly have the duty to represent the interests of the absent class members, it would also appear that contact initiated by class counsel prior to the close of the opt-out period would be unethical as direct solicitation of clients, if the purpose or predictable effect of the contact is to discourage a decision to opt out of the class.").

In response, Class Counsel provides a multipage 14-case string citation that appears intended to rebut this Court's conclusion through brute length. ECF No. 353, PageID.7075-7077. But none of the authority cited by Class Counsel supports their contention that the Court was wrong, and that they actually can engage in *ex parte* communications with otherwise represented class members.

Most of Class Counsel's "authority" stands for the general proposition that a defendant is prohibited from engaging in *ex parte* communications with certified plaintiff class members. See *Bower v. Bunker Hill Co.*, 689 F. Supp. 1032, 1034 (E.D. Wash. 1985); *DaSilva v. Border Transfer of MA, Inc.*, 2018 WL 1567626 (D. Mass. Feb. 1, 2018); *Dodona I, LLC v. Goldman, Sachs & Co.*, 300 F.R.D. 182, 187 (S.D.N.Y. 2014); *Fulco v. Cont'l Cablevision, Inc.*, 789 F. Supp. 45, 47 (D. Mass. 1992); *Harris v. Vector Mktg. Corp.*, 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010); *In re Fed. Skywalk Cases*, 97 F.R.D. 370, 376 (W.D. Mo. 1983), *Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1207 n. 28 (11th Cir. 1985); *McKenzie L. Firm, P.A.*

5

*v. Ruby Receptionists, Inc.*, 2020 WL 2789873, at *2 (D. Or. May 29, 2020); *Resnick v. Am. Dental Ass'n*, 95 F.R.D. 372, 377 (N.D. Ill. 1982); *Velasquez-Monterrosa v. Mi Casita Restaurants*, 2016 WL 7429200, at *2 (E.D.N.C. Sept. 30, 2016). Class Counsel's remaining citations discuss plaintiff class counsel compensation, *Arkansas Tchr. Ret. Sys. v. State St. Bank & Tr. Co.*, 512 F. Supp. 3d 196, 253-54 (D. Mass. 2020) and *Van Gemert v. Boeing Co.*, 590 F.2d 433, 440 n. 15 (2d Cir. 1978), and solicitation of certified class members by outside counsel, *McWilliams v. Advanced Recovery Sys., Inc.*, 176 F. Supp. 3d 635, 642 (S.D. Miss. 2016) and *DaSilva v. Border Transfer of MA, Inc.*, 2018 WL 1567626, at *2 (D. Mass. Feb. 1, 2018).[2]

None of these cases supports Class Counsel's conduct, much less condones it. Instead, their own authority confirms what should be obvious: a lawyer may not intentionally contact another lawyer's client about the legal issues as to which they are represented. *See, e.g., Resnick*, 95 F.R.D. at 377 ("After a court has certified a case as a class action and the time for exclusions has expired, the attorney for the class representative represents all class members *who are otherwise unrepresented by counsel*.") (emphasis added); *In re Fed. Skywalk Cases*, 97 F.R.D. at 376. ("[Upon certification of the class] this Court expressly created an attorney-client relationship

---

[2] Class Counsel also cites to *Hammond v. City of Junction City*, Kan., 126 F. App'x 886 (10th Cir. 2005). In *Hammond*, the Court sanctioned plaintiff's counsel for *ex parte* contacts with defendant's client. *Id.* at 889-90.

between the counsel appointed to represent the class and those class members *who did not have individual attorneys representing them*.") (emphasis added).

Class Counsel also cites multiple treatises for the general point that class counsel has some sort of attorney-client relationship with the class. Again, though, none of the cited language says that they are permitted to contact represented class members without the knowledge or consent of their counsel; to induce class members to make claims pursuant to the settlement rather than opt out or object; to hire a non-lawyer private investigator to engage in the unauthorized practice of law and disparage class members' personal retained attorneys and mislead them into making claims rather than opting out or objecting to the settlement; or to issue unauthorized mailings and telephone solicitations to induce class members to make claims rather than opt out or object, thereby undercutting the Court-approved notice in compliance with Rule 23.

Indeed, the treatises that Class Counsel cites pervasively show that Class Counsel's conduct was improper. Class Counsel quotes NEWBURG AND RUBENSTEIN ON CLASS ACTIONS, § 19:2 for the proposition that "once a class has been certified, the default presumption is that there is an attorney-client relationship between class counsel and the absent class members." ECF No. 352, PageID.7075. But the very next sentence in NEWBURG qualifies Class Counsel's quoted language, saying that is "true in some contexts." 6 William B. Rubenstein, NEWBURG AND RUBENSTEIN ON

7

CLASS ACTIONS, § 19:2 (6th ed. 2022). And earlier within the same section, NEWBURG makes the following point exceedingly clear:

> [A]n attorney seeking to represent, or representing a class will, with equal certainty, *have and not have* an attorney-client relationship with the absent class members *depending upon the context*. Put differently, absent class members are class counsel's clients for some purposes but not for others. **Beware, therefore, of all claims to the contrary**.

*Id.* (italics in original, bolding added). One of the key factors is timing. In § 9:8, NEWBURG discusses Class Counsel's post certification communication with the class. Specifically, it says that during the opt-out period, "the attorney-client relationship may be slightly more amorphous because class members are deciding whether or not to remain in that very relationship." *Id.*, § 9:8. It further notes that as discussed above, this issue "tends to arise when courts consider whether *defendants* can directly contact potential class members during the opt-out period." *Id.* (emphasis in original). In those limited circumstances, it is clear courts consider absent class members "represented parties" to protect the class from opportunistic defendants who would otherwise seek to undermine the class.

Conversely, regarding Class Counsel's communications with the class, courts pervasively agree with this Court that the attorney-client relationship is limited until the opt-out period ends and the class is set. *Id.* at n.8 (collecting cases). Most importantly, so does the Sixth Circuit in *this* case, which found that "[a]bsent class members retain[ed] the right to opt-out until July 22, 2023; until then no one [could]

8

claim an interest in the final make-up of the class." *Wayside Church v. Van Buren Cnty.*, No. 23-1471, slip op. at 4, (6th Cir. July 5, 2023) (ECF No. 315-2, PageID.5236).[3]

The other treatise Class Counsel quotes from notes this limitation as well. 2 MCLAUGLIN ON CLASS ACTIONS, § 11:1 (19th ed., 2022).[4] MCLAUGHLIN states that while many courts have adopted the view that an attorney-client relationship attached upon certification, many "[o]ther courts, and the American Bar Association, have expressed the view that the attorney-client relationship is established only upon expiration of the opt-out period." *Id.* (citing *In re Wells Fargo Wage & Hour Em. Prac. Litig.*, 18 F. Supp. 3d 844, 851 (S.D. Tex. 2014); *Velez v. Novartis Pharm. Corp.*, 2010 WL 339098, at *2 (S.D.N.Y. 2010); *In re Katrina Canal Breaches Consol. Litig.*, 2008 WL 4401970 (E.D. La 2008); ABA Committee on Ethics & Prof'l Responsibility, FORMAL OP. 07-445, at 3 (2007)). At no point in Class Counsel's string of general propositions that some type of attorney-client relationship exists between themselves and absent class members do they offer any consideration of the complexities inherent in the current relationship, the

---

[3] As this Court clarified, the opt-out deadline was actually extended until July 24, 2023, based on Fed.R.Civ.P. 6(a)(1)(c). ECF No. 335, PageID.6188.
[4] Despite Class Counsel's attack on movants for the "mistake" of citing to an older edition of a treatise, ECF No. 352, PageID.7075, n.10, Class Counsel does so themselves, citing to the 12th edition of MCLAUGHLIN when movants themselves cite to the 13th edition in their motion. PageID.7075.

9

permissibility of the precise conduct at issue, or the ethics rules by which they are clearly still bound. NEWBURG, § 19:5. The Court should "[b]eware" their simplistic "claims," *id.* at § 19:2, and decline to revisit its earlier conclusion.[5]

**B. Class Counsel have engaged in an aggressive and unethical campaign to solicit represented persons and cannot now plausibly argue otherwise.**

Class Counsel have openly and aggressively solicited represented class members. Just six weeks ago, they complained to this Court that Visser "demands that Class Counsel refrain from communicating with a list of hundreds of individuals and entities, which Visser purport to represent regarding claims relating to this litigation." ECF No. 288, PageID.4666. They argued that this "demand" was "improper" based upon the unsupported line of argument addressed above. ECF No. 288, PageID.4667. Class Counsel confidently proclaimed that they intended to "continue to communicate with all class members" and sought the Court's ratification of the same. ECF No. 288, PageID.4667-4668. The Court has since flatly rejected their request. ECF No. 354, PageID.7248-7249.

After having argued that they did nothing wrong and asking the Court to bless its continued communications, Class Counsel now implausibly and inconsistently

---

[5] In their response, Class Counsel attack movants for citing earlier editions of Newburg, labeling the mere reference to older versions "disturbing" because, they claim, the most recent version says the law is clear. PageID.7075, at n.10. But as shown throughout, the current Sixth Edition from which Class Counsel selectively quotes strongly supports Objectors and this Court and rejects Class Counsel's argument.

claim that any communications with represented parties was "inadvertent" and that they undertook efforts to avoid such contact. ECF No. 352, PageID.7065. This defense is inherently implausible, amounting to: "our conduct was fine and any suggestion otherwise is 'improper,' but if the Court thinks it was wrong, then we did it on accident."

Even on its own terms, inadvertence is belied by the severity of Class Counsel's misconduct. For instance, Class Counsel went so far as to hire a non-lawyer private investigator to make unsolicited calls to represented class members, disparage the individually represented client's counsel, and wholly misrepresent the relevant law and facts to try to secure a claim. ECF No. 345-15, PageID.6581-6586. As documented throughout the briefing, this is just one example of abusive communications by Class Counsel. *See* ECF Nos. 354-4, 354-10, 354-11, 354-12, 354-13, 354-14, 354-16, and 354-17. Further, when Class Counsel finally sent the Court-approved long form notice on June 26, it sent a misleading and unapproved cover letter to *all* class members, which was carefully worded and framed to induce them to make claims rather than consult with independent counsel to consider opting out or objecting. ECF No. 368, PageID.7378, 7381, 7386-7387; ECF No. 368-16, PageID.7571-7576.

**C. Class Counsel's unethical and abusive communications with potential class claimants prior to conclusion of the opt-out period have irremediably spoiled the class.**

11

"[C]ontact initiated by class counsel prior to the close of the opt-out period [are] unethical as direct solicitation of clients, if the purpose or predictable effect of the contact is to discourage a decision to opt out of the class." *Impervious Paint*, 508 F. Supp. at 722. Such communications must be limited to "objective, neutral information about the nature of the claim and the consequence of proceeding as a class." *Kleiner*, 751 F.2d at 1203.

Here, the scope of the improper communications appears to be staggering. Objectors' Counsel represent slightly over 400 individuals within the class definition. The settlement administrator discloses that 27,932 potential claimants were identified under said definition. ECF No. 352-1, PageID.7087-7088. Thus, Objectors' counsel have only had the opportunity to monitor communications with approximately 1.43% of the class. Taking Class Counsel's word at face value, they have allegedly "undertook a major effort" to avoid contact with that 1.43 percent. Thus, communications with this subset should be very muted compared to the remaining 98.57% of the class. ECF No. 352, PageID.7066.

If communications with the remaining 98.57% are anything like the communications with Objectors' Counsel's clients, then the settlement is irredeemably spoiled. Class Counsel attorney Owen Ramey cold called Joan Nemedi on Sunday, June 25 and identified himself as her lawyer. ECF No. 315-4, PageID.5274. Ramey cold-called Scharla Hughes – lead plaintiff in a related state

12

class action pending since 2020 – twice over a weekend and informed her that he was her lawyer. ECF No. 315-5, PageID.5278. He did the same thing to Nancy Wyman. ECF No. 315-8, PageID.5309. Mr. Clatterbuck contacted Ranee Hooper-Bart repeatedly by phone and text message and made a high-pressure sales pitch in favor of making a claim. ECF No. 315-6, PageID.5296. Mr. Clatterbuck's contact with Heather Sloan, described above, is downright fraudulent, ECF No. 315-7, PageID.5299-5306. He made the same fraudulent pitch to Joann Ellard before providing her a pre-filled claim form by Attorney Ramey and James Shek's office. ECF No. 345-17, PageID.6597-6601. Nobody affiliated with Class Counsel or the administrator ever provided a single one of these class members with the complete court-approved neutral notice at or before targeting them with the decidedly non-neutral contacts.

If this was Class Counsel being circumspect, one can only imagine their dealings with the remaining 98.57% of the class. It is impossible to undo malfeasance of this scale. "A district court is required to monitor class proceedings and 'reassess [its] class rulings as the case develops." *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 261 (2d Cir. 2021). Objectors request that here. "A serious or, equivalently, a 'major' ethical violation. . .should place on class counsel a heavy burden of showing that they [remain] adequate representatives of the class." *Creative Montessori Learning Centers v. Ashford Gear LLC*, 662 F.3d 913, 919 (7th Cir.

13

2011). Here, Class Counsel cannot meet that burden, and their continued service is untenable.

Additionally, because of how this settlement was structured, with no common fund, and Class Counsel requesting 20% of all approved claims, Class Counsel apparently perceives tremendous pressure to use unapproved means to make extra-judicial communications with potential claimants and use unapproved means to process claims. It appears that Class Counsel has employed means and methods where claims are being taken by way of telephone solicitation and then processed by a representative on an electronic claim form that would appear to bypass the claims and signature process.  *See* ECF No. 345-16, PageID.6593-6595 (Declaration of George H. Newell).

**D. Enough data has been revealed to establish that the proposed settlement is a historic injustice.**

Class Counsel boasts of its "robust" notice campaign but fails to directly disclose to the Court whether it has been successful. Yet buried in Class Counsel's exhibits is near-conclusive evidence of what Objectors have warned all along: the settlement is abysmal for the class. The fact that even Defendants' counsel agreed to an extended claims period betrays concern that the settlement is failing. They surely

would not agree to the resulting additional liabilities if the settlement – and with it their bargain-basement release – was not at risk.[6]

The settlement administrator discloses that 27,932 potential claimants were identified under the settlement agreement. ECF No. 352-1, PageID.7096-7097. As of July 21, a mere 1,961 of those potential claimants have submitted claims. *Id.*, at PageID.7097. The settlement administrator further discloses that these claims have not yet been fully reviewed and approved. *Id.* A typical approval rate is 85%. Federal Trade Commission, *Consumers and Class Actions: A Retrospective and Analysis of Settlement Campaigns*, Federal Trade Commission, September 2019, at 22. ECF No. 345-23, PageID.6769. Using these figures, a reasonable estimate is that 1,666 out of 27,932 potential claimants have submitted valid claims. This equates to a claim rate of only 5.9%.

Applying this claims rate to the class's damages, the numbers are dramatically worse. The plaintiff class has brought its constitutional claim for surplus proceeds

---

[6] The settlement agreement states that "the Parties may agree to reasonable extensions of time to carry out any of the provisions of this Settlement." ECF No. 220-2, PageID.3633. It is clear that the county's lawyers view an extension of the claims period as necessary. But the motion did not disclose whether the counties, through their respective boards of commissioners, have also agreed. This omission is troubling; with respect to governmental expenditures, Michigan law long ago abrogated the common law rule of agency permitting an agent with apparent power to bind its principal. *Black v. Common Council of City of Detroit*, 119 Mich. 571, 576-577 (1899).

15

under 42 U.S.C. § 1983. Recovery of these proceeds includes interest and attorney's fees. 42 U.S.C. § 1988 (as to attorney fees); *Knick v. Twp. of Scott, Pennsylvania*, 204 L. Ed. 2d 558, 139 S. Ct. 2162, 2170 (2019) (as to interest). Class Counsel and Defendants have not disclosed the total surplus proceeds owing to the plaintiff class. Regardless, the plaintiff class's percentage recovery can still be reasonably estimated. A reasonable estimate is that, on a classwide basis, interest and attorneys' fees amount to a 40% increase in compensable damages.[7]

Under the settlement, each claimant only gets 0.8 of their surplus proceeds claim before the attorneys' fees or interest they should be receiving. ECF No. 220-2, PageID.3627-3628. Put another way, each claimant should be getting at least 1.4 times their surplus proceeds, but is instead receiving 0.8.

Assuming for ease of calculation that each of the 27,932 potential claimants has an equal claim, 27,932 with an additional 40 percent (i.e., multiplied by 1.4) is 41,904.8.[8] This figure represents an estimated 100 percent class recovery under the

---

[7] And, again, this assumes that damages are limited to surplus proceeds. There is substantial reason to believe that they are not, and that class members are actually entitled to larger damages based on their properties' values. *See* ECF No. 228-2, PageID.3812-13.

[8] Of course, this assumption will not hold – class members have different claims. But the assumption gives Class Counsel the – perhaps unearned – benefit of the doubt that its solicitations have been random with respect to the amount of class member claims. If, instead, Class Counsel have been focusing on class members with large claims, to the exclusion of smaller claimants, that is one more reason that they are inadequate and the settlement has failed. An important purpose of class actions is to vindicate small claims: in crafting Rule 23, "the Advisory Committee

conservative surplus-proceeds damage theory. Meanwhile, there are an estimated 1,666 actual claims. And each such claimant only receives 80 percent of their claim, so 1,666 is actually 1,332.8 (1,666 times 0.8).

In turn, 1,332.8 divided by 41,904.8 is only 0.0318. Therefore, the defendant counties are only paying out about 3.18% of the conservative calculation of the amount that they owe the Class. This is a complete miscarriage of justice.

## CONCLUSION

For the reasons stated above and in the principal motion and brief, Objectors request the Court to grant their motion.

Date: August 1, 2023

Respectfully Submitted,

THE MILLER LAW FIRM, PC

*/s/ E. Powell Miller*
E. Powell Miller (P39487)
Christopher D. Kaye (P61918)
Gregory A. Mitchell (P68723)
950 W University Drive, Ste 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com
cdk@millerlawpc.com
gam@millerlawpc.com

GRONDA, PLC

---

had dominantly in mind vindication of 'the rights of groups of people who individually would be without effective strength to bring their opponents into court at all.'" *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 617 (1997). An effort by Class Counsel to enrich themselves by soliciting large claims is at odds with this purpose.

Matthew E. Gronda (P73693)
4800 Fashion Sq. Blvd., Ste. 200
Saginaw, MI 48604
(989) 233-1639
matt@matthewgronda.com

VISSER AND ASSOCIATES, PLLC
Donald R. Visser (P27961)
Daniel O. Myers (P49250)
2480 44th Street, SE, Suite 150
Kentwood, MI 49512
(616) 531-9860
dan@visserlegal.com

OUTSIDE LEGAL COUNSEL PLC
Philip L. Ellison (P74117)
PO Box 107
Hemlock, MI 48626
(989) 642-0055
pellison@olcplc.com

***Counsel for Objectors***

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3(b)(i)**

Exclusive of the exempted portions pursuant to W.D. Mich. LCivR 7.3(b)(i), the above brief contains three thousand, eight hundred and thirty-seven (3,837) words, in compliance with the four thousand three hundred (4,300) word count limit, as taken from Microsoft Word version 2306.

/s/ *E. Powell Miller*
E. Powell Miller (P39487)
THE MILLER LAW FIRM, PC
950 W. University Dr., Suite 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2023, I electronically filed the foregoing document using the Court's electronic filing system, which will notify all counsel of record authorized to receive such filings.


<u>/s/ *E. Powell Miller*</u>
E. Powell Miller (P39487)
THE MILLER LAW FIRM, PC
950 W. University Dr., Suite 300
Rochester, MI 48307
(248) 841-2200
epm@millerlawpc.com